## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**ADAPTHEALTH CORP.,**<br><br>**Defendant.** | Civil Case No.: |

## CLASS ACTION COMPLAINT

**INTRODUCTION**

1.  This action arises out of Defendant AdaptHealth Corp.'s ("Adapt") practice of placing, through its Aerocare brand, telephone solicitations to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. 227(c) through the regulations found at 47 C.F.R § 64.1200(c).

2.  This action further arises out of Defendant Adapt's continued text messages to Plaintiff and similarly situated persons after those persons asked Defendant to "stop", in violation of the Florida Telephone Solicitation Act ("FTSA"), § 501.059(5).

3.  Finally, Defendant Adapt's use of an automated system for the dialing and messaging of Plaintiff's telephone number without Plaintiff's prior express written consent further violates the FTSA, § 501.059(8)(a).

**JURISDICTION AND VENUE**

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

2.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiff's claims under the TCPA.

3.  The Court has personal jurisdiction over Defendant because Defendant conducts significant business transactions in this District and has committed tortious acts from and directed at this District.

4.  Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District. and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

5. Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida.

6. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923.

8. Defendant AdaptHealth is, and at all times mentioned herein was, a Delaware corporation with its headquarters at 220 W Germantown Pike, Suite 250, Plymouth Meeting, Pennsylvania 19462.

9. With respect to the allegations herein, AdaptHealth operated through its brand Aerocare, which is a Delaware corporation with its headquarters at 3325 Bartlett Boulevard, Orlando, Florida 32811.

## FACTUAL ALLEGATIONS

10. Plaintiff's telephone number is 813-###-9923.

11. Plaintiff's telephone number is and was a cellular telephone number.

12. Plaintiff is the regular user of this telephone number.

13. Plaintiff's telephone number has been on the National Do-Not-Call Registry since November 6, 2015.

14. Plaintiff previously used a Phillips DreamStation CPAP machine which he bought in or about May 2021.

15. This CPAP machine was recalled in June 2021.

16. Plaintiff attempted to get a replacement CPAP machine through the recall process, but after a few months, was unable to obtain one and gave up.

17. While Plaintiff used the CPAP machine, he ordered supplies from Aerocare, which was acquired by and merged into Defendant Adapt in early 2021.

18. Plaintiff received, via email, invitations from Defendant, through its Aerocare brand, to purchase additional CPAP supplies.

19. On or about May 10, 2022 after receiving an email invitation from Defendant to purchase CPAP supplies, Plaintiff finally unsubscribed from these solicitation emails by following the unsubscribe link included with those emails.

20. Rather than stop the solicitations, Defendant instead began soliciting Plaintiff weekly via text message to purchase CPAP supplies.

21. On May 17, Plaintiff received a text message on his cellular telephone number ending in 9923 that said "Reorder your AeroCare PAP supplies" and contained a link that, when clicked, would take Plaintiff to a page where he could purchase CPAP supplies.

22. Specifically, the link, when clicked, would take Plaintiff to the following page (counsel has redacted Plaintiff's previous address):



23.     Plaintiff immediately replied "Stop" to that message and received a follow up text stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

24.     Several hours later, unprompted, Plaintiff received a text that stated "Text STOP if you want to unsubscribe."

25.     Plaintiff again wrote "STOP" and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

26.     Despite these two requests and two confirmations, on May 24, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

27.     On May 31, Plaintiff again received a text message stating "Reorder your AeroCare

4

PAP supplies" with a link to purchase CPAP supplies.

28. Plaintiff replied "Stop" to this May 31 message, and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

29. On June 7, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

30. Plaintiff again replied "Stop" to this message and again received a confirmation.

31. Defendant used short code 91898 to send these solicitations.

32. These text messages were sent through Defendant's Aerocare brand and subsidiary, which is based in Florida.

33. These text message exchanges can be seen in the following screenshots (taken on June 7):



5

34. As a result of Defendant's conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

## LAWS VIOLATED

35. Defendant's conduct described above violates at least two provisions of the FTSA and at least one provision of the TCPA.

36. First, the FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

37. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

38. "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

39. "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes[.]" § 501.059(1)(c).

40. CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

41. Because Defendant's text messages were intended to solicit the sale of CPAP supplies, which are consumer goods or services, these text messages were "telephonic sales calls."

42. Finally, Defendant made the telephonic sales calls, making it a "telephone

solicitor."

43. Therefore, Defendant's continued text messages to Plaintiff after he replied "stop" to Defendant's text messages on May 17 violate § 501.059(5).

44. For violations of § 501.059(5), Plaintiff is entitled to $500 per text message in statutory damages. § 501.059(10)(a).

45. Plaintiff is entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

46. Second, the FTSA also prohibits a person from making "a telephonic sales call" if such call "involves an automated system for the selection or dialing of telephone numbers … without the prior express written consent of the called party." § 501.059(8)(a).

47. "Prior express written consent" means a written agreement that "clearly authorizes the person making or allowing the placement of a telephonic sales call by … text message … to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers[.]" § 501.059(1)(g).

48. Defendant's text messages use an automated system for the selection and dialing of telephone numbers.

49. First, text messages from short codes, like Defendant's here, overwhelmingly, if not exclusively, use automated systems to make calls and send messages.

50. Second, Defendant's messages were sent exactly 1 week apart, on four separate occasions, all within 1 hour of each other (2:36 PM, 3:24 PM, 2:52 PM, 2:53 PM).

51. This regularity suggests an automated scheduled process where numbers would be queued up (e.g. dialed) by the system weekly during an automated "batch" process set to run that day.

52. Third, the platform Defendant used for its text messages—SnapWorx—provides a patient management platform that "makes complex decisions with AI", including "queuing eligible patients, those most likely to order, and the highest priority to call next."[1]

53. Defendant did not obtain prior express written consent for such messages, and even if it had, it lost that consent when the recipient replied "stop."

54. For violations of the FTSA, § 501.059(8)(a), Plaintiff is entitled to $500 per text messages in statutory damages. § 501.059(10)(a).

55. Plaintiff is entitled to $1,500 should the Court find the violations willful. § 501.059(10)(b).

56. Finally, the TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

57. These regulations are codified at 47 CFR 64.1200(c)(1-2).

58. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

59. A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

---

[1] https://www.snapworxllc.com/products/snap

8

60. A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

61. A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

62. As noted, Plaintiff's telephone number has been on the National Do-Not-Call Registry since 2015.

63. Plaintiff also asked Defendant to "stop" sending its text message solicitations.

64. Plaintiff received three telephone solicitations in a 12-month period.

65. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call.

66. If the Court finds these violations to have been willful, Plaintiff is entitled to $1500 per call.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of three Classes:

Since July 1, 2021, Plaintiff and all persons to whose cellular telephone number Defendant sent, or had sent on its behalf, a text message inviting the recipient to order medical supplies, after the recipient had replied "stop" to one of Defendant's text messages.

("Stop Class")

Since July 1, 2021, Plaintiff and all persons to whose cellular telephone number Defendant sent, or had sent on its behalf, a text message using the SnapWorx platform and inviting the recipient to order medical supplies, after the recipient had replied "stop" to one of Defendant's text messages.

("Automated Class")

9

> Since June 14, 2018, Plaintiff and all persons to whose telephone number Defendant sent, or had sent on its behalf, more than one text message in a 12-month period inviting the recipient to order medical supplies, after the recipient had replied "stop" to one of Defendant's text messages and the recipient telephone number was on the National Do-Not-Call Registry at the time of the calls.

("Registry Class")

68. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

### Numerosity and Ascertainability

69. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

70. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants maintains written and electronically stored data showing:

    a. The time period(s) during which Defendant sent the text messages;

    b. The telephone numbers to which Defendant sent the text messages;

    c. Inbound requests that Defendant "stop" sending the text messages.

71. For purposes of the Registry Class, a list of telephone numbers on the Do-Not-Call Registry is maintained by (and obtainable from) the FTC.

72. The Classes are comprised of hundreds, if not thousands, of individuals nationwide.

73. Plaintiff DeSouza is a member of the Stop Class because Defendant sent him a text message inviting him to order CPAP supplies after he asked Defendant to stop.

74. Plaintiff DeSouza is a member of the Automated Class because Defendant sent him a text message using the SnapWorx Platform and inviting him to order CPAP supplies after he asked Defendant to stop.

10

75. Plaintiff DeSouza is a member of the Registry Class because Defendant sent him more than one text message in a 12-month period inviting him to order CPAP supplies after he asked Defendant to stop, and his number was on the National Do-Not-Call Registry at the time of the messages.

**Commonality**

76. There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

   a. Whether Defendant sent text messages after being asked to stop;

   b. Whether Defendant had any processes or protocols in place to stop texts to persons who asked that the messages stop;

   c. Whether Defendant's messages constitute telephone solicitations (under the TCPA) or "telephonic sales calls" under the FTSA;

   d. Whether Defendant had any processes in place to prevent messages to persons on the National Do-Not-Call Registry;

   e. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

   f. Whether Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

77. Plaintiff's claims are typical of the claims of members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories.

78. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

79. On information and belief, Plaintiff avers that Defendant treated him in same manner as they have treated hundreds, if not thousands of individuals.

### Adequacy of Representation

80. Plaintiff will thoroughly and adequately protect the interests of the Classes, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Classes; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

### Superiority

81. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Class.

82. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

83. A class action provides a fair and efficient method for adjudication of the controversy.

84. Common questions will predominate, and there will be no unusual manageability issues.

85. The prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct and may also prove dispositive of the interests of other members not parties.

86. There does not appear to be any litigation already commenced by or against members of the class involving the same issues.

87. The forum is appropriate, as discussed above.

88. The expense of individual litigation and the limited recovery in individual litigation justify a class action.

**FIRST CAUSE OF ACTION**
**Violations of the FTSA, § 501.059(5)**
**(On Behalf of Plaintiff and the Stop Class)**

89. Plaintiff and the proposed Stop Class incorporate the foregoing allegations as if fully set forth herein.

90. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

91. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

92. "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

93. "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes[.]" § 501.059(1)(c).

94. CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

95. Because Defendant's text messages were intended to solicit the sale of CPAP supplies, these text messages were "telephonic sales calls."

96. Finally, Defendant made the telephonic sales calls, making it a "telephone

13

solicitor."

97. Defendant sent the messages from, or directed the messages to be sent from, Florida.

98. Plaintiff and putative Stop Class members replied "stop" to Defendant's telephonic sales text messages, but they continued.

99. Defendant's continued text messages to Plaintiff and putative Stop Class Members after they replied "stop" to Defendant's text messages violate § 501.059(5).

100. For violations of § 501.059(5), Plaintiff and putative Stop Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

101. Plaintiff and putative Stop Class Members are entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

**SECOND CAUSE OF ACTION**
**Violations of the FTSA, § 501.059(8)(a)**
**(On Behalf of Plaintiff and the Automated Class)**

102. Plaintiff and the proposed Automated Class incorporate the foregoing allegations as if fully set forth herein.

103. The FTSA prohibits a person from making "a telephonic sales call" if such call "involves an automated system for the selection or dialing of telephone numbers … without the prior express written consent of the called party." § 501.059(8)(a).

104. "Prior express written consent" means a written agreement that "clearly authorizes the person making or allowing the placement of a telephonic sales call by … text message … to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers[.]" § 501.059(1)(g).

105. Defendant's text messages through the SnapWorx platform use an automated

14

system for the selection and dialing of telephone numbers.

106. Defendant sent the messages from, or directed the messages to be sent from, Florida.

107. While Defendant did not obtain "prior express written consent", even if it had, it lost such consent when Plaintiff and putative Automated Class Members asked Defendant to "stop".

108. Thus, Defendant's text messages using the SnapWorx platform after Plaintiff and putative Automated Class Members asked Defendant to stop violate the FTSA, § 501.059(8)(a).

109. For violations of the FTSA, § 501.059(8)(a), Plaintiff and putative Automated Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

110. Plaintiff and putative Automated Class Members are entitled to $1,500 should the Court find the violations willful. § 501.059(10)(b).

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Registry Class)

111. Plaintiff and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

112. The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

113. These regulations are codified at 47 CFR 64.1200(c)(1-2).

114. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal

Government." 47 CFR 64.1200(c)(2).

115. A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

116. A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

117. A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

118. Plaintiff and putative Registry Class Members asked Defendant to "stop" sending its text message solicitations, terminating any established business relationship and any prior express invitation.

119. Plaintiff and putative Registry Class Members telephone number were on the National Do-Not-Call Registry at the time of the calls.

120. Plaintiff and putative Registry Class Members thereafter received more than one call soliciting the purchase of medical supplies in a 12-month period.

121. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff and putative Registry Class Members are entitled to $500 per call.

122. If the Court finds these violations to have been willful, Plaintiff and putative Registry Class Members are entitled to $1500 per call.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff DeSouza, individually and on behalf of the proposed Classes, prays for the following relief:

    A.    An order certifying the Classes as defined above, appointing Plaintiff DeSouza as the representative of the Classes and appointing his counsel as Class Counsel;

    B.    An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(c); § 501.059(5); and § 501.059(8)(a).

    C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    D.    An award of statutory damages for violations of 47 U.S.C. § 227(c); § 501.059(5); and § 501.059(8)(a).

    E.    An award of treble damages;

    F.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

[Signature Blocks on Following Page]

Dated: June 14, 2022

        s/ Bradford R. Sohn
Bradford R. Sohn
Fla. Bar. No. 98788
**THE BRAD SOHN LAW FIRM PLLC**
1600 Ponce DeLeon Boulevard, Suite 1205
Coral Gables, Florida 33134
Tel: 786.708.9750
Fax: 305.397.0650
brad@sohn.com

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com
(*Pro Hac Vice* forthcoming)

***Counsel for Plaintiff and the Class***