## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TYLER DESOUZA,

        Plaintiff,

    v.

AEROCARE HOLDINGS LLC,

        Defendant.

Case No. 6:22-cv-1047-RBD-LHP

## Defendant's Motion to Dismiss Count I of
## Plaintiff's Third Amended Class Action Complaint

Defendant AeroCare Holdings LLC ("AeroCare"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this motion to dismiss Count I of Plaintiff's Third Amended Class Action Complaint ("Amd. Compl.") (Doc. 28). In support, AeroCare states as follows:

## INTRODUCTION

Plaintiff's Third Amended Complaint fails to state a cause of action under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"), because the FTSA suffers from numerous infirmities that render it unconstitutional both facially and as applied to AeroCare.

## <u>ALLEGATIONS OF THIRD AMENDED COMPLAINT[1]</u>

According to the allegations in Plaintiff's Third Amended Complaint, Plaintiff registered his cell phone number on the National Do Not Call Registry on November 6, 2015. Amd. Compl. at ¶¶ 23, 26. Plaintiff purchased a continuous positive airway pressure ("CPAP") machine,[2] a device that keeps an individual's breathing airways open during sleep, in or around May 2021. *Id.* at ¶ 27. Plaintiff bought supplies for the machine from AeroCare. *Id.* at ¶ 30. On or around May 17, 2022, Plaintiff received a text message bearing the AeroCare name that related to reordering CPAP supplies. *Id.* at ¶¶ 34-35. Plaintiff replied "Stop" to the message and received a follow-up text stating that he was unsubscribed from medical supply alerts. *Id.* at 36. Plaintiff alleges that he received several more text messages from AeroCare over the following three weeks, despite replying "Stop" to some of them and receiving confirmation that he was unsubscribed. *Id.* at ¶¶ 37-43. In addition to the text messages, Plaintiff also alleges that he received pre-recorded voice messages indicating that the call was from AeroCare. *Id.* at ¶ 47. The voice messages received on June 9, 14, 15, and 16 came from the phone number 813-915-6996. *Id.* at ¶ 48. The "813" area code is a Florida area code. *Id.* at ¶ 49.

---

[1] Solely for purposes of Fed. R. Civ. P. 12(b)(6) and this motion, AeroCare accepts as true all well-pleaded facts and inferences contained in Plaintiff's Third Amended Complaint.

[2] A CPAP is a Class II medical device that requires a prescription. *See* 21 C.F.R. § 868.5273.

Plaintiff alleges two causes of action individually and on behalf of putative nationwide classes. First, Plaintiff alleges that AeroCare violated FTSA § 501.059(5) by allegedly sending text messages after Plaintiff asked for the messages to stop. Amd. Compl. ¶¶ 106-120. Second, Plaintiff alleges that AeroCare violated TCPA § 227(c) by sending text messages to Plaintiff after he asked for messages to stop and while his phone number was listed on the National Do-Not-Call Registry. *Id.* at ¶¶ 121-132.[3]

## LEGAL STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion questions the legal sufficiency of a pleading. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). A complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level." *Id.*

---

[3] AeroCare is not moving to dismiss Count II, brought under the TCPA.

## ARGUMENT

### I.      Plaintiff Fails to State a Claim Under the FTSA

Count I of Plaintiff's Third Amended Complaint, alleging a violation of

FTSA § 501.059(5) for failing to stop sending messages after Plaintiff texted "stop,"

fails because the FTSA is unconstitutional. First, the FTSA is vague in that it is

impossible for a reasonable person to discern what conduct can be penalized

under the terms of the statute. Second, by impermissibly interfering with interstate

commerce, the FTSA violates the Dormant Commerce Clause. Third, because the

FTSA imposes content-specific prohibitions on speech, it is facially

unconstitutional under the First Amendment. Given the constitutional infirmities

of the FTSA, Plaintiff cannot assert a cause of action under this statute.[4]

#### A.      The FSTA Is Unconstitutionally Vague

The FTSA's failure to define "automated system for the selection or dialing

of telephone numbers," § 501.059(8)(a), and "telephonic sales call," § 501.059(1)(i),

---

[4] AeroCare is aware that some (but not all) of these arguments were recently addressed by the United States District Court for the Southern District of Florida in *Turizo v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 21-civ-61493-RAR, 2022 WL 2919260 (S.D. Fla. May 18, 2022), and the United States District Court for the Middle District of Florida in *Pariseau v. Built USA, LLC,* No. 8:21-cv-2902, 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022).  These decisions are not binding, and AeroCare respectfully submits that those courts erred in failing to dismiss the complaint in that action. Moreover, the court in *Pariseau* did not address any arguments relating to (1) the vague meaning of the term "telephonic sales" call; (2)  the Commerce Cause concerns raised by the FTSA; or (3) the implications under the First Amendment if intermediate scrutiny applies.

renders the FTSA unconstitutionally vague both facially and as applied to AeroCare.

### 1. *Legal Standard*

Vagueness challenges to state laws are brought under the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *Wollschlaeger v. Governor, Fla.*, 848 F. 3d 1293, 1301, 1323 (11th Cir. 2017). "A law is impermissibly vague if it does not 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly,' or does not provide sufficiently explicit standards for those who will apply it, thereby encouraging 'arbitrary and discriminatory enforcement.'" *U.S. v. Single Fam. Residence & Real Prop.*, 803 F.2d 625, 630 (11th Cir. 1986). All persons "are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). "The void for vagueness doctrine addresses at least two . . . due process concerns: first, that the regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A law is also unconstitutionally overbroad to the extent it can reasonably be read to "authorize the punishment of constitutionally protected conduct." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (while city had constitutional power to prohibit some "annoying" conduct, an

ordinance prohibiting people from "conduct[ing] themselves in a manner annoying to persons passing by" was unconstitutionally vague and overbroad).

The fact that the challenged statute regulates commercial speech does not impact the level of scrutiny applied by the Court in assessing vagueness. *Jacobs v. The Fla. Bar*, 50 F.3d 901, 907 (11th Cir. 1995). Where, as here, the challenged statute raises First Amendment concerns as discussed further in Section I.C, *infra*, "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations*, 567 U.S. at 253-54.

2.    *The Meaning of "Automated System for the Selection or Dialing of Telephone Numbers" Is Impossible to Discern*

Section 8(a) of the FTSA regulates speech (*i.e.*, "telephonic sales calls") when that speech is made using an "automated system for the selection or dialing of telephone numbers." However, neither Section 8(a) nor any other provision of the statute defines what constitutes an "automated system for the selection or dialing of telephone numbers."

The legislative history of the FTSA provides no further illumination. At no point in time did Florida's legislators discuss the meaning of what they intended to mean by the phrase "automated system for the selection or dialing of telephone numbers" or define the term. *See, generally*, March 25, 2021 Bill Analysis and Fiscal Impact Statement, *available at* https://www.flsenate.gov/Session/Bill/2021/ 1120/Analyses/2021s01120.ri.PDF; April 19, 2021 Bill Analysis and Fiscal Impact

Statement, *available    at*   https://www.flsenate.gov/Session/Bill/2021/1120/ Analyses/2021s01120.pre.rc.PDF. Instead, the legislators referred generally to "autodialers" and to the TCPA's "automatic telephone dialing system" ("ATDS") language. March 25, 2021 Bill Analysis and Fiscal Impact Statement; April 19, 2021 Bill Analysis and Fiscal Impact Statement.

That means that either the use of the phrase "automated system for the selection or dialing of telephone numbers" is coterminous with the phrase "ATDS" in the TCPA, or that the term has some other undefined meaning. If the term "automated system for the selection or dialing of telephone numbers" is coterminous with the TCPA then the term must conform to the Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), which clarified and narrowed the definition of an ATDS. Under *Facebook*, a device is an ATDS only if it dials telephone numbers that were "produced or stored" "using a random or sequential number generator." *Facebook, Inc.*, 141 S.Ct. at 1170. This definition necessarily excludes equipment such as automated systems that make calls to specific individuals "whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer." *Samataro v. Keller Williams Realty, Inc.*, No. 1:21-cv-76-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) (dismissing claims relating to the use of an ATDS with prejudice post-*Facebook*).

If, however, the term is *not* coterminous with the TCPA then the term "automated system" could be interpreted to encompass essentially all modern telephone technology, or some undefined subset of it. For example, any text message or call relating to a consumer good or product placed using the voice assisted technology on one's cellphone could fall within the scope of an "automated system." Thus, it is entirely unclear what type of device the FTSA covers when it refers to an "automated system" and defendants, as a consequence, do not have fair notice of what is prohibited under the terms of the statute. The speaker has no way to discern whether the technology on which it is relying is prohibited by the FTSA or not (nor does a judge or jury). As a result, constitutionally protected speech is necessarily chilled.

### 3.    The Meaning of "Telephonic Sales Call" Is Unclear

The FTSA generally prohibits "unsolicited telephonic sales calls." Fla. Stat. 501.059. While the term "telephonic sales call," unlike the "automated system" discussed above, is defined in the statute, its definition provides little insight into what is actually prohibited. "Telephonic sales call" is defined as a "telephone call [or] text message . . . to a consumer for the purpose of *soliciting a sale* of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j) (emphasis added). The phrase "soliciting a sale" is undefined; and thus, the ordinary person is left with no guidance about what – if anything – falls outside of the scope of "soliciting a sale."

313468765.3

The legislative history's discussion of "automated systems" creates more confusion. In discussing unsolicited sales calls, the Florida legislature looked favorably towards federal law and the Federal Trade Commission's and FCC's guidance regarding what constitutes a "legitimate and legal use" of telemarketing technology. April 19, 2021 Bill Analysis and Fiscal Impact Statement. To illustrate this, the legislative history explains that "a doctor's office may legally use a robocall to remind one of an upcoming appointment." *Id.* As support for that proposition, the Florida Legislature cited to the Federal Communication Commission, Consumer and Governmental Affairs Bureau, Report on Robocalls (Feb. 2019), CG Docket No. 17-59, which stated that "[m]any legitimate businesses and institutions use robocalls to convey information their customers want in a cost-effective manner," and including prescription refills as an example of such legitimate messages. The Florida Legislature's example suggests that they intended to incorporate the FCC's 2015 Order that created an exemption under the TCPA for calls that have

> a healthcare treatment purpose, specifically: appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions.

*Id.*; *see also Jackson v. Safeway, Inc.*, Case No. 15-cv-04419, 2016 WL 5907917 (N.D. Cal. Oct. 11, 2016) (holding that automated flu shot reminders did not constitute a

solicitation under the healthcare exemption). It is therefore unclear whether the FTSA was intended to include healthcare-related calls within the definition of "telephone solicitation." As a result, a reasonable caller cannot discern whether text messages regarding CPAP equipment resupply, which is not meaningfully different from prescription refills or vaccine availability, fall within or outside of this definition.  The vagueness of this definition requires dismissal of Count I of Plaintiff's Complaint, which arises under FTSA Section 5's prohibition against certain calls made by "telephone solicitor[s]" (i.e., those who place "telephonic sales call[s]") made to phone numbers on Florida's do-not-call registry.[5]

### B.      The FSTA Violates the Dormant Commerce Clause

The FTSA is also barred by the Dormant Commerce Clause, which limits the authority of the states to enact legislation that impacts interstate commerce. *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989). There are two ways that a statute can run afoul of the Dormant Commerce Clause: "(1) by discriminating against interstate commerce or (2) by unduly burdening interstate commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1244 (11th Cir. 2012). This is because the Commerce Clause "protects against inconsistent legislation arising from the

---

[5] Even if this vagueness does not render Section 5 facially invalid, it is invalid as applied to AeroCare, because it is impossible for AeroCare to determine if its text messages regarding CPAP resupply fall within the definition of an "unsolicited telephonic sales call."  *See Int'l Soc. For Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 832 (holding that it a measure is vague as applied, and thus unconstitutional, if enforced in a way that could not have been reasonably foreseen).

projection of one state regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 336-37. Thus, in assessing whether a statute violates the Dormant Commerce Clause, a court weighs whether the benefit of the statute "clearly exceeds the local benefits." *Id.* at 1245. The inquiry boils down to an assessment of what would be "the practical effect of the statute . . . if not one, but many or every, State adopted similar legislation." *Id.*

Here, the FTSA violates the Dormant Commerce Clause in two ways: (1) it regulates conduct that takes place entirely outside of the state of Florida and (2) it unduly burdens interstate commerce.

### 1.    *The FTSA Regulates Conduct With No Connection to Florida*

The FTSA regulates extraterritorial commerce in violation of the Commerce Clause because it restricts *all* "telephonic sales calls" throughout the United States regardless of where the call is made or received. Specifically Section 8(a) applies to any "person" who makes (or allows or causes) any "telephonic sales call" without any geographic limitation on where the call originates or where the call is received. *See* Fla. Stat. § 501.059(1)(j) & (8)(a).[6]

---

[6] Other provisions of the FTSA provide geographic limitations.  The definition of a "telephone solicitor" is limited to those "doing business in this state," which is defined as "conduct[ing] telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." Fla. Stat. § 501.059(1)(e).  However, those provisions are not incorporated into Section 8(a), leaving it applicable, on its face, to calls with no Florida nexus.

Even if the FTSA's scope is limited to calls placed to persons located in Florida, the FTSA creates two significant issues. First, because the statute creates a rebuttable presumption that a call made to a Florida area code is a Florida resident, §501.059(8)(d), a resident of a state other than Florida who sends a text message (or makes a call) to a person presently residing in a state other than Florida (who happens to use a cell phone with a Florida area code) would violate the FTSA. Thus, the FTSA violates the dormant Commerce Clause because it applies to "commerce" (here, telephone solicitation calls) "that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336. The Florida Legislature recognized this as a potential issue, yet failed to take any steps to mitigate it. *See* March 8, 2021 Bill Analysis and Fiscal Impact Statement, available at https://www.flsenate.gov/Session/ Bill/2021/1120/Analyses/2021s01120.pre.cm.PDF ("It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders.").

Second, a resident of a state other than Florida who sends a message (or makes a call) to another individual with a non-Florida area code who happens to be located in Florida at the time would also violate Section 8 of the FTSA, despite the caller's inability to know that fact. Faced with a similar statute, the Southern District

of Florida concluded that Florida's anti-spoofing law violated the Commerce Clause. *TelTech Sys., Inc. v. McCollum*, No. 08-61664, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009). The court reasoned that because a "New York business would be criminally liable . . . when they called the Ohio telephone number" of a person who happened to be located in Florida, the statute made it "impossible" for the caller to know whether the recipient of their call was a Florida resident. *Id.* The court concluded that "[t]he logical consequence of this impossibility is that Plaintiffs are unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.*[7]

### 2.    *The FTSA Unduly Burdens Interstate Commerce*

Assuming *arguendo* that the definition of an "automated system for selecting and dialing" numbers does ***not*** have the same meaning as applies under the TCPA, *see* Section I.A.2 *supra*, then the FTSA unduly burdens interstate commerce by subjecting national sales calls using "automated" phone systems to inconsistent regulations across the United States. If the FTSA's definition of an "automated system" is not coterminous with the TCPA's definition, then a national sales company would be required to implement different practices for calling Florida customers versus customers elsewhere in the United States. Or, a national

---

[7] The Florida Legislature specifically acknowledged *Teltech* in concluding that the FTSA posed a significant constitutionality question, and did not present any argument why the reasoning in *Teltech* would not apply to the FTSA. *See* April 19, 2021 Bill Analysis and Fiscal Impact Statement.

company with operations in Florida would be forced to fundamentally alter its national practices in order to comply with Florida's requirements.

Where ensuring compliance with a state statute would impose unreasonable expense on out-of-state companies, that state statute places an unjustifiable burden on interstate commerce that cannot withstand scrutiny under the Dormant Commerce Clause. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 140 (1970) (holding that state statute that would require an out-of-state company to incur $200,000 in additional expense was an unjustifiable burden). Here, the Florida legislature made no attempt to provide any articulated local purpose that would justify the burdens created by the FTSA. While the Florida Legislature expressed the general concern that "[c]onsumers are often inundated with unwanted calls," citing 293,071 complaints from Florida consumers to the FTC, nothing in the legislative history suggests that unwanted telemarketing calls are unique to Floridians. *See* Fl. Comm. Report on CS/SB 1120, 2021 FL S.B. 1120 (NS), at 2 (Mar. 25, 2021). In the absence of any such justification, the FTSA fails under any balancing test.

### C.   The FSTA Is An Unconstitutional Speech Restriction

#### 1.   *The FSTA Fails Strict Scrutiny*

Finally, Section 5 of the FTSA violates the First Amendment because it imposes a content-based restriction on speech. Specifically Section 5 applies only to a "telephone solicitor," meaning someone who makes "telephonic sales calls,"

which are defined as a ". . . text message . . . to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" 501.059(1)(j). But the statute expressly does not apply to commercial speech unrelated to consumer goods or services, such as debt collection phone calls or calls made by a newspaper publisher to solicit advertisements, for example. *See* 501.059(1)(k). In other words, the prohibitions of Section 5 apply ***only*** to certain types of commercial speech.[8] As such, there is no question that the FTSA is not content neutral. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2352 (2020) ("A law is content-based if a regulation of speech 'on its face' draws distinctions based on speaker message.").

Content-based regulations of speech are subject to strict scrutiny, meaning that any such restriction is "presumptively unconstitutional" unless the State can show that the restriction "directly advances a substantial government interest and that the measure is drawn to achieve that interest." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565-66, 571-72 (2011) (applying strict scrutiny standard to statute governing certain types of commercial speech). The Supreme Court has explained that a state can carry its burden by showing either that the law has a "neutral justification" or was intended to "prevent false or misleading speech." *Id.* at 579.

---

[8] Restrictions on commercial speech are not entitled to a lower level of scrutiny than other types of content-based regulations. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565-66 (2011).

Here, neither safe harbor applies. As noted above, the Florida legislature explained that its purpose in enacting the FTSA was to address the concern that "consumers are inundated with unwanted calls." *See* Fl. Comm. Report on CS/SB 1120, 2021 FL S.B. 1120 (NS), at 2 (Mar. 25, 2021). But there is nothing in the legislative history to suggest that these "unwanted calls" are exclusively – or even primarily – telemarketing such that restricting only this type of speech is warranted. Nor is there any suggestion that commercial sales calls made using an "automated system for the selection or dialing of telephone numbers" is somehow more misleading than non-commercial sales calls (for example, calls soliciting charitable donations or debt collection calls) made without an automated dialer or otherwise. As a result, the content-based restriction that forms the crux of Section 8(a)'s prohibitions is unconstitutional under the First Amendment.  To the extent Plaintiff attempts to argue that Section 5 does not prohibit commercial speech, but merely imposes certain restrictions (i.e., checking against the national or Florida do-not-call registries) and thus cannot violate the First Amendment, that argument is without merit. The Supreme Court has on multiple occasions found improper restrictions on speech that imposed added burdens on such speech. As the Supreme Court put it, "[l]awmakers may no more silence unwanted speech by burdening its utterance than by censoring its content." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566, 131 S. Ct. 2653, 2664 (2011); see also Reed, 576 U.S. at 169 (evaluating a law that

imposed certain burdens on certain types of signage as a content-based restriction on speech); *Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, -- F. Supp. 3d --, 2021 WL 3471585, at *10 (S.D. Fla. Aug. 8, 2021) ("Defendant wrongly suggests that a law only regulates speech if it 'forbids' or 'prohibits' a form of speech. . . . It is well-established that a law may constitute a speech-based restriction by burdening or limiting speech on a particular topic, even if it does not outright ban a form of speech.").

### 2.      *Even if Intermediate Scrutiny Applies, the FTSA is Unconstitutional*

Even if the FTSA were not subject to strict scrutiny, it would still violate the First Amendment under the less stringent intermediate scrutiny analysis. Under intermediate scrutiny, the state still must show that there is "a fit between the legislature's ends and the means chosen to accomplish those ends. . . . [T]hese standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message."  *Sorrell*, 564 U.S. at 572. The FTSA still fails under the intermediate scrutiny standard because the Florida legislature only identified a generalized interest in consumer privacy/freedom, which is "too abstract[] to provide a meaningful benchmark for weighing the [Autodialer Provision] against the State's purported interest." *Dana's R.R.*, 807 F.3d at 1249 (rejecting generalized interest in consumer protection to justify content-based commercial speech limits).

Significantly, despite recognizing the First Amendment concerns evident in the FTSA. The Florida legislature failed to consider – or even discuss – less restrictive options. Fl. Comm. Report on CS/SB 1120, 2021 FL S.B. 1120 (NS), at 2 (Mar. 25, 2021). Thus, the FTSA is unconstitutional under the First Amendment.[9]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant AeroCare respectfully requests that this Court (1) dismiss Count I the Third Amended Class Action Complaint, and (2) grant any and all other such relief that this Court may deem just and proper.

---

[9] Here, the FTSA does not contain a severability clause.  *See generally* Fla. Stat. 501.059.  Because the FTSA does not contain a severability clause and because the unconstitutional "telephonic sales call" phrase impacts most of the statute, the unconstitutional provision cannot be easily severed thereby permitting the court to eliminate only the unconstitutional provision while leaving the remainder of the statute intact.  *See State v. Catalano*, 104 So.3d 1069, 1080 (Fla. 2012).

Dated:  October 3, 2022

Respectfully submitted,

K&L GATES LLP


By:  */s/ Jonathan B Morton*
     Jonathan B. Morton
     Florida Bar No. 956872
     jonathan.morton@klgates.com
     Southeast Financial Center
     200 South Biscayne Boulevard
     Suite 3900
     Miami, Florida 33131
     Telephone: 305-539-3300
     Facsimile: 305-358-7095

     Joseph C. Wylie
     (admitted *pro hac vice*)
     joseph.wylie@klgates.com
     Lead Counsel
     Nicole C. Mueller
     (admitted *pro hac vice*)
     nicole.Mueller@klgates.com
     70 W. Madison St.
     Suite 3100
     Chicago, Illinois 60602
     Telephone: 312-372-1121
     Facsimile: 312-827-8000

     *Attorneys for AeroCare Holdings LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)</u>

I certify that, pursuant to Local Rule 3.01(g), undersigned counsel for Defendant AeroCare conferred telephonically with Jeremy Galpion, counsel for Plaintiff Tyler DeSouza. Plaintiff's counsel will contest all aspects of the present motion, and intends to file a memorandum in opposition stating his position.

*/s/ Jonathan B Morton*
Jonathan B. Morton

313468765.3

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served via CM/ECF on all counsel of record on this 3rd day of October 2022.

*/s/ Jonathan B Morton*
Jonathan B. Morton
