## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated, | Civil Case No.: 22-cv-1047 |
| **Plaintiff,** | |
| v. | **Plaintiff's Opposition to Defendant's Motion to Dismiss** |
| **AEROCARE HOLDINGS LLC,** | |
| **Defendant.** | |

## BACKGROUND AND PROCEDURAL HISTORY

The Florida Telephone Solicitation Act ("FTSA") prohibits a "telephone solicitor" from initiating telephonic sales calls (which includes text messages) to a consumer who has previously asked the solicitor to stop. Fla. Stat. § 501.059(5). Defendant Aerocare Holdings LLC sent text messages to Plaintiff Tyler DeSouza inviting him to order supplies for a CPAP machine he no longer owned. [Third Amended Complaint, Dkt. 28 ("TAC"), ¶¶ 27-45.] On three occasions, Plaintiff replied to these texts with the single word "stop". [TAC, ¶¶ 36-45.] Defendant acknowledged each request, promising that "no more messages will be sent." *Id.* Defendant nevertheless continued to send its solicitations. *Id.*

Defendant's post-"stop" text solicitations violate the aforementioned provision of the FTSA. They also violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), because Plaintiff's telephone number was on the National Do-Not-Call Registry at the time of these solicitations.

Plaintiff filed his initial class action complaint against AdaptHealth Corp. on June 14, 2022. [Dkt. 1.] In response to the Court's *sua sponte* dismissal for shotgun pleading, Plaintiff filed his First Amended Complaint on July 1, 2022, correcting the shotgun pleading and adding a claim under § 501.059(8). [Dkt. 9.] After conferring with Defendant on its intended Motion to Dismiss, Plaintiff filed his Second Amended Complaint on August 15, swapping AdaptHealth Corp. for Defendant Aerocare Holdings, LLC and adding a second claim under § 501.059(8). [Dkt. 15.] On August 29, Defendant moved to dismiss the Second Amended Complaint. [Dkt. 19.] After further conferral, on September 19, Plaintiff filed the operative Third Amended Complaint ("TAC"). [Dkt. 28.] The TAC pleads, on behalf of putative classes, violations of § 501.059(5) and 47 U.S.C . § 227(c) only.

Defendant now moves to dismiss the § 501.059(5) claim on the grounds that the FTSA is unduly vague, impermissibly restricts speech, and violates the dormant Commerce Clause. For the reasons below, Defendant's Motion should be denied.

## DISCUSSION

### I.   Plaintiff's FTSA claim does not require presence on any registry or the use of specific equipment.

Throughout its brief, Defendant mischaracterizes Plaintiff's FTSA claim as being based on texts to a number on the Florida Do-Not-Call Registry. [Def.'s Brief, pp. 10, 16]. This is incorrect. Plaintiff's Count I is pled under § 501.059(5), which, per its plain text, prohibits a telephone solicitor from initiating texts to consumers that

have previously told the solicitor to stop, regardless of presence on any registry. Defendant also throughout its brief makes arguments about the phrase "automated system for the selection or dialing of telephone numbers." [*Id.* at pp. 6-8, 11-12.] This phrase is only relevant to § 501.059(8), which is no longer pled. Section 501.059(5) is equipment and method agnostic.

## II.   <u>The FTSA is not void for vagueness.</u>

Relevantly, section 501.059(5) of the FTSA prohibits a "telephone solicitor"—e.g. a company making "telephonic sales calls" to or from Florida—from continuing such calls after a request to stop. "Telephone sales call" is defined as "a … text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services." Defendant contends that the phrase "soliciting a sale" is too vague.

"Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1301 (11th Cir. 2013). "If persons of reasonable intelligence can derive a core meaning from a statute, then the enactment may validly be applied to conduct within that meaning and the possibility of a valid application necessarily precludes facial invalidity." *Id.* at 1302.

Defendant presents its argument as both facial and as applied.

### a.  **Defendant cannot succeed on a facial challenge.**

"A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v.*

*Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Such principle "makes no exception for conduct in the form of speech." *Id*. "[F]or a facial challenge to a legislative enactment to succeed, 'the challenger must establish ***that no set of circumstances*** exists under which the Act would be valid." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001). This is a "'***heavy burden***,'" which "makes such an attack '***the most difficult challenge*** to mount successfully' against an enactment." *Horton*, 272 F.3d at 1329. "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid …." *Id.*

While Defendant suggests "telephonic sales call"[1] is vague in *all* applications because the phrase "soliciting a sale" is undefined, a legislature is "not required to define each and every word in a piece of legislation to express clearly its will." *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1301 (11th Cir. 2021). Persons of common intelligence can derive meaning from "soliciting a sale". *Indigo Room*, 170 F.3d at 1302.

The remainder of its vagueness argument hinges on whether the FTSA incorporate a healthcare exception from the TCPA. This is insufficient for a facial challenge as it is inapplicable to other clearly covered, non-healthcare sales calls.

### b.   "Telephonic sales call" is not vague as applied to Defendant.

"To state a void-for-vagueness claim, the language of the ordinance itself must

---

[1] Defendant also argues that the phrase "automated system for the selection or dialing of telephone numbers" is vague. This is relevant only to § 501.059(8), which is not plead in the operative complaint.

be vague[.]" *Indigo Room*, 710 F.3d at 1302. Defendant does not and cannot argue that the statute, *as written*, would not apply to its conduct. The text messages involved reordering supplies for a CPAP machine. CPAP machines are indisputably "tangible … personal property" used for "personal … purposes", as are supplies for these machines. Text messages selling such supplies thus are "telephonic sales calls." Under the law as written, Plaintiff has stated a claim for Defendant's violations of § 501.059(5). This should be the end of the inquiry.

To avoid this conclusion, Defendant asks the Court to import into the FTSA a partial exception to the TCPA. Defendant first points to an April 19, 2021 "Bill Analysis", which it contends "looked favorably" on the use of robocalls by a doctor's office to remind one of an upcoming appointment. Defendant then points out that the Bill Analysis cited to an FCC order that contained *other* examples of valid uses of robocalls *not* mentioned in the Analysis itself. Defendant then claims that this is conclusive that the Florida Legislature intended that *all* such examples found in the FCC order be exempt from the FTSA. Therefore, Defendant's text messages, which it incorrectly claims are like those examples, must be exempt.

But no matter how favorably Defendant contends that the Florida Legislature looked at certain TCPA exceptions, that favorability fell short of codifying those exceptions. Courts do not consider legislative history when the text is clear. *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016). The FTSA clearly does

not contain any exception that would cover Defendant's texts. It is not "impossible to determine" whether Defendant's text messages are covered. They are. An otherwise clear statute is not vague because Defendant wishes an exception existed.

Even assuming *arguendo* that the FTSA imported an exception coterminous with the TCPA's healthcare exception, Defendant's text messages do not qualify for it. This exception covers calls that are "strictly limited" to the following purposes:

> appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions[.]

47 C.F.R. § 64.1200(a)(9)(iv)(C). Defendant's texts do not fall under these categories.

Furthermore, the exception is limited to calls that do "not include any telemarketing, solicitation, or advertising." 47 C.F.R. § 64.1200(a)(9)(iv)(D). The FTSA too is inapplicable to calls and texts that do not contain such sales content. Defendant's text messages were solicitations, however, which takes them *out* of the TCPA's exception and place them squarely *into* the FTSA's purview.[2]

Finally, Defendant failed to comply with other aspects of the TCPA's exception. Most relevantly, for a text to qualify under the exigent healthcare exception, the caller "must honor opt-out requests immediately." 47 C.F.R. § 64.1200(a)(9)(iv)(H). Defendant failed to honor opt-out requests *at all*.

---

[2] Significantly, the example cited in the Bill Analysis *and* the examples cited in the FCC order are largely covered by the Florida Legislature's decision to limit the FTSA to *sales* calls. Defendant's issue is more with *how* the Legislature drew the line rather than whether it did or intended to do so.

In short, had Defendant's text messages complied the TCPA's exception—that is, if the text messages contained no solicitation *and* if Defendant honored opt-out requests—it would also not be liable under the FTSA. As it stands, Defendant is liable under the statute as written *and* under the statute with its proposed exception.

Accordingly, the FTSA is neither facially vague nor vague as applied.

### III.   The FTSA does not constitute an unconstitutional restriction on speech.

#### a.  Defendant's argument relies on a definition not at issue.

As noted, the FTSA § 501.059(5) prohibits a "telephone solicitor" from initiating "telephonic sales call" to a consumer who previously asked it to stop. The definition of "telephonic sales call" contains no exceptions. The exceptions to which Defendant cites at page 15 (i.e. debt collection calls or newspaper calls) in arguing the regulation is content-based are exceptions to the separately defined term "unsolicited telephonic sales call".[3] § 501.059(1)(k). This term is irrelevant to § 501.059(5).

#### b.  Section 501.059(5) is subject to intermediate scrutiny.

Construing Defendant's argument more broadly as an attack on the limitation of § 501.059(5) to calls soliciting the sale of consumer goods or services, it must still be rejected. Intermediate scrutiny applies to the FTSA.

"Certain types of speech receive either less protection or no protection under the First Amendment." *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020).

---

[3] This term is only used in § 501.059(4) dealing with calls to a number on the Florida DNC Registry.

As Defendant correctly notes, the FTSA only restricts commercial speech. [Def.'s Brief, pp. 15-17.] Consistent with Supreme Court precedent, the Eleventh Circuit has held that a restriction on commercial speech—even if content-based—is subject to the more flexible, yet still searching, standard of intermediate scrutiny." *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1246 (11th Cir. 2015) (citing *Central Hudson Gas & Electric Corp. v. Public Service Commission*. 447 U.S. 557, 564 (1980) (describing the test for commercial speech)). Defendant's position to the contrary is based on a widely-rejected interpretation of three Supreme Court cases: *Sorrell*,[4] *Reed*,[5] and *Barr*.[6]

*Sorrell*. In *Sorrell*, the Supreme Court considered a Vermont statute that prohibited the use of certain information for marketing. The Court found the restriction at issue to be content-based and required "heightened scrutiny." *Sorrell*, 564 U.S. at 570-71. Addressing Vermont's arguments that this "heightened scrutiny" should be intermediate scrutiny because the statute burdened only commercial speech, the Court punted, finding that "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Id* at 571. It then cited and applied the *Central Hudson* intermediate scrutiny test. *See id.* at 571-72.

While it is true *Sorrell* used the phrase "heightened scrutiny", "heightened scrutiny" is relative to the lowest level of scrutiny, i.e. rational basis review. *See Retail*

---

[4] *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)
[5] *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).
[6] *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020).

*Digital Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017) (noting that *Sorrell* used "heightened scrutiny" to mean the scrutiny applied to speech regulations—intermediate or strict—rather than the rational basis review applied to non-speech regulations). The Supreme Court has often referred to intermediate scrutiny as "heightened scrutiny". *See, e.g. Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 640-41 (1994) (rejecting rational basis review, and concluding that "some measure of heightened First Amendment scrutiny is demanded"); *Clark v. Jeter*, 486 U.S. 456 (1988) (referring to intermediate scrutiny as "heightened scrutiny").

*Reed*. *Reed* did not address the commercial speech standard relative to the content-based standard. In *Reed*, the Court considered a municipal sign ordinance that imposed different requirements on church signs than it did on political and ideological signs. As such, *Reed* was tasked with analyzing "speech at the heart of the First Amendment." *Recht v. Morrisey*, 32 F.4th 398, 409 (4th Cir. 2022). Accordingly, the Court found the ordinance discriminated on content *between commercial and non-commercial speech* and applied strict scrutiny. "Rather than overruling long-settled precedent, *Reed* simply concerned a totally different context; it cannot be distorted to so unsettle the *Central Hudson* regime." *Id.* The FTSA targets *only* commercial speech.

*Barr*. *Barr* also did not address the commercial speech standard relative to the content-based standard. In *Barr*, a plurality of the Supreme Court applied strict scrutiny to a 2015 amendment to the TCPA which exempted from liability robocalls to collect

government debt. Under this exemption, the collector of a government debt could robocall with impunity, but a political group could not. This had the effect of favoring commercial speech over political and other non-commercial speech. The *opposite* is true here: the FTSA imposes heightened requirements (e.g. honoring a request to stop) only on commercial speech, while calls and texts containing non-commercial speech are not actionable even after being asked to stop. Tellingly, the Supreme Court explicitly held that its *Barr* "decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity." 140 S. Ct. at 2347.

Earlier this year the Supreme Court reiterated that intermediate scrutiny still applies to content-based commercial speech regulations, writing:

> The Court of Appeals further considered the possibility that the code provisions regulated only commercial speech, such that only intermediate scrutiny would apply even if the provisions were content based….

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464, 1471 n.3 (2022); *see also id.* at 1482, n.10 (The Court "ha[s] … declined to apply strict scrutiny to … content-based restrictions … targeting commercial speech.") (Thomas, J., dissenting).

The Eleventh Circuit has also continued to apply intermediate scrutiny to commercial speech restrictions. *See Otto*, 981 F.3d at 865; *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1235 (11th Cir. 2017) ("Challenges to restrictions on commercial speech are evaluated according to the rubric set forth by the Court in *Central Hudson*[.]"); *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298

10

(11th Cir. 2017) ("The law is clear that commercial speech is afforded lesser protections than those traditionally given to noncommercial speech."); *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1246 (11th Cir. 2015). Courts throughout the country have done the same, rejecting "that *Reed* altered *Central Hudson*'s longstanding intermediate scrutiny framework." *Contest Promotions, LLC v. City & Cty. of S.F.*, 874 F.3d 597, 601 (9th Cir. 2017); *see also Reagan Nat'l Advertising of Austin, Inc. v. City of Austin*, 972 F.3d 696, 709 (5th Cir. 2020).

In the specific FTSA context, at the time of this brief, three federal courts and one state court have thoroughly rejected Defendant's argument and each has found that 1) intermediate scrutiny applies to the FTSA and 2) the FTSA satisfies intermediate scrutiny. *See Borges v. Smiledirectclub, LLC*, Case No. 21-cv-23011, 2022 U.S. Dist. LEXIS 167007, *10-21 (S.D. Fla. Sept. 15, 2022) (finding the FTSA is subject to, and satisfies, intermediate scrutiny); *Pariseau v. Built USA, LLC*, 21-cv-2902, 2022 U.S. Dist. LEXIS 139321, *7-14 (M.D. Fla. Aug. 5, 2022) (same) (Merryday, J.); *Turzio v. Subway Franchisee Adver. Fund Trust Ltd.*, Case No. 21-CV-61493, 2022 U.S. Dist. LEXIS 89622, *27-31 (S.D. Fla. May 18, 2022) (same); *Redding v. Sarasota 500, LLC*, Case No. 2022-CA-001051-NC (Cir. Ct. 12th Cir., Oct. 10, 2022). The same goes for the TCPA, which, for several provisions, limits its applicability to calls and texts encouraging the purchase of property, goods, or services. *See, e.g. Wilson v. PH Phase One Operations L.P.*, 422 F. Supp. 3d 971, 984-85 (D. Md. 2019) (finding the definition

of "telephone solicitation" content neutral); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205 (W.D. Mo. 2019) (same); *Weister v. Vantage point AI, LLC*, 2022 U.S. Dist. LEXIS 139642, *17-21 (M.D. Fla. Aug. 3, 2022).

In sum, intermediate scrutiny applies to the FTSA.

### c. The FTSA satisfies Intermediate Scrutiny.

Under the *Central Hudson* test, a regulation on commercial speech will survive if (1) "the government has a substantial interest in restricting the speech"; (2) "the regulation directly advances the asserted government interest"; and (3) "the regulation 'is not more extensive than is necessary to serve that interest.'" *FF Cosms. FL, Inc.*, 866 F.3d at 1298 (citing *Cent. Hudson Gas*, 447 U.S. at 566).

Substantial Interest. As Defendant notes, the FTSA was amended to address the fact that "consumers are inundated with unwanted calls." [Def.'s Brief, p. 16]. The FTC received 293,071 complaints from Florida consumers in 2020 alone. *See* April 19, 2021 Bill Analysis.[7] Consumer privacy and tranquility, as well as the regulation of commercial transactions, are routinely found to be substantial government interests. *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 793 (N.D.W. Va. 2017); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (the State has a "particularly strong" interest in "protecting consumers and regulating commercial transactions."); *Carey v. Brown*, 447 U.S. 455, 471 (1980) ("The State's interest in protecting the well-being,

---

[7] https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.pre.rc.PDF

tranquility, and privacy of the home is certainly of the highest order in a free and civilized society"). As observed by the Supreme Court, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr*, 140 S. Ct. at 2343. Florida thus has a substantial interest in regulating continued calls, especially *after the caller is asked to stop.*

      <u>Direct Advancement</u>. The FTSA directly advances the above interest by limiting the prohibition in § 501.059(5) to continued texts *after* being asked to stop. There is a strong fit between the legislature's ends—preventing unwanted calls/texts— and the means chosen—prohibiting calls/texts after being asked to stop. *See Fla. Bar*, 515 U.S. at 632; *Mey*, 245 F. Supp. 3d at 793; *see also Went for It*, 515 U.S. at 626 ("the harms . . . are real and" the Act "will in fact alleviate them to a material degree.").

      <u>Appropriately tailored</u>. The "least restrictive means test has no role in the commercial speech context." *Went For It*, 515 U.S. at 632. All that is required "is a 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Id*. This "fit" need not be "necessarily perfect, but reasonable"; it need not necessarily represent "the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Id*. This prong of the *Central Hudson* test may simply be satisfied by "history, consensus, and 'simple common sense.'" *Id.* at 628 (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)). There is clearly a fit

between reducing the number of unwanted calls/texts and requiring companies stop placing sales calls after being asked to stop placing such calls/texts.

While Defendant may believe the fit is not perfect because it is theoretically underinclusive, the legislature was not required to come up with the best solution to the problem, but rather a proportionate one. *See Went For It*, 515 U.S. at 632. "[T]he First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). A state should not be punished "for leaving open more, rather than fewer, avenues of expression, especially when there is no indication that the selective restriction of speech reflects a pretextual motive." *Id.* at 452. As such, Defendant cannot complain that the FTSA regulates "too little" speech. Not even strict scrutiny imposes such an "all-or-nothing" test. *Id.*

In addition, the FTSA leaves companies like Defendant with various options should they wish to engage consumers with commercial speech. There is no outright prohibition on telephonic sales calls, but only on those texts made *after being asked to stop*. This limits any burden on speech "while protecting the interests of the recipient." *Mey*, 245 F. Supp. 3d at 793. Even for consumers who request that texts stop, "[Defendant] has ample other means with which to deliver its message, including … mailings. [Defendant] is not entitled to its first or best choice or even one that provides the same audience." *Id.*; *see also Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014), *aff'd*, 136 s. Ct. 663 (2016) ("[T]he protection of privacy is a significant

interest, the restriction of automated calling is narrowly tailored to further that interest, and the law allows for many alternative channels of communication.")

In light of the above, the FTSA satisfies intermediate scrutiny.[8]

## IV.   The FTSA does not violate the Dormant Commerce Clause

### a.  Congress authorized States to regulate telemarketing.

"Where a state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Mass. Council of Constr. Emplrs*, 460 U.S. 204, 213 (1983). The TCPA expressly states that "nothing in this section or in the regulations prescribed under this section shall preempt any State law … which prohibits … the making of telephone solicitations." 47 U.S.C. § 227(f)(1)(D). *See Turzio*, 2022 U.S. Dist. LEXIS at *20-21; *United States v. Dish Network, L.L.C.*, 667 F. Supp. 2d 952, 963-64 (C.D. ill. 2009). As such, Congress explicitly allowed states to prohibit telemarketing calls without consent, as Florida did here.

### b.  The FTSA does not violate the Commerce Clause as applied.

If the Court is inclined to engage with Defendant's Commerce Clause arguments, it should reject them. In the Eleventh Circuit, courts considering a challenge under the Dormant Commerce Clause analyze (i) whether the state law

---

[8] § 501.059(5) would also satisfy strict scrutiny, which requires a statute be "narrowly tailored" to "achieve [a compelling] interest". *Reed*, 576 U.S. at 171. The FTSA furthers the compelling government interest of protecting consumer privacy. To do so, the FTSA simply requires that when a call recipient asks a solicitor to stop, the solicitor must stop. This is as narrowly tailored as it gets.

"directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests" and (ii) whether the state law "unduly burden[s] interstate commerce." *Fla. Transp. Servs., Inc. v. Miami-Date Cnty.*, 703 F.3d 1230, 1243 (11th Cir. 2012). Commerce Clause challenges are subject to the same "as-applied" versus "facial" distinctions discussed previously.

In the FTSA context, the only court to have considered a commerce clause challenge to the FTSA rejected it outright. *Turzio*, 2022 U.S. Dist. LEXIS at *25-27.

1. There is no direct regulation of interstate commerce here.

Defendant argues that the FTSA regulates wholly extraterritorial conduct, but most of its arguments focus on § 501.059(8)'s prohibition on "a person" making certain calls. Section 501.059(5), however, applies to "telephone solicitors", which is limited to those doing business in Florida. Defendant acknowledges this is appropriately geographically-limited. [Def.'s Brief, p. 11 n.6.] As pled, Defendant acted from Florida. [TAC, ¶¶ 46-60.] In addition, while Defendant's actions from Florida are sufficient, Plaintiff pleads that he was using a Florida area code, was a Florida resident, and that Defendant knew his address at the time of its messages. [*Id.* at ¶¶ 7, 26, 35].

2. There is no impermissible "practical effect" on interstate commerce.

Defendant does broadly express a concern that a resident of a state other than Florida who sends a post-stop message to an individual with a non-Florida area code who happens to be in Florida would violate the FTSA, despite having no way of

knowing that the recipient was in Florida, thus having the practical effect of regulating out-of-state conduct.[9] This concern is inapplicable here, but even if it were, it does not provide a basis for finding the FTSA runs afoul of the Commerce Clause.

First, Defendant's argument relies on an incorrect application of the extraterritoriality doctrine that would find invalid a state law with any effect of regulating commerce occurring wholly outside a state's borders. *See TelTech Sys. v. McCollum*, 2009 U.S. Dist. LEXIS 131954, *26 (S.D. Fla. July 16, 2009) (citing *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 332 (1989)). But this doctrine, which Justice Gorsuch has described as "the most dormant doctrine in dormant commerce clause jurisprudence", is "not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices." *Energy & Env't Legal inst. v. Epel*, 793 F.3d 1169, 1174-75 (10th Cir. 2015); *see also Pharm. Research & Mfrs. Of Am. v. Walsh*, 538 U.S. 644, 669 (2003). The *TelTech* court adopted an interpretation "so sweeping that most commentators have assumed that [the cases *TelTech* relied upon] cannot mean what they appear to say." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1027-28 (9th Cir. 2021) (citing commentary and cases). The FTSA is not a price statute, so the "practical effect" doctrine has no applicability.

---

[9] Defendant also briefly argues that the "rebuttable presumption" that a Florida area code belongs to a Florida resident risks regulating calls wholly out-of-state (e.g. if a person with a Florida area code does not actually reside in Florida). This is inapplicable here. Defendant knows the addresses of its call recipients. In addition, a rebuttable presumption is just that: rebuttable. Shifting the evidentiary burden does not violate the Commerce Clause, *Turzio*, 2022 U.S. Dist. LEXIS at *25.

Second, Defendant's ties to Florida (sending the texts both to and from Florida) mean that there is no extraterritorial application of the FTSA here.

Third, that a company may not have known the recipient was in Florida does not mean the statute violates the Commerce Clause. There is still a nexus to Florida. Defendant does not explain what impermissible extraterritorial burden arises in its hypothetical. When a statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). In *TelTech*, the case Defendant cites, the court analyzed a ban caller ID spoofing to Florida residents and found that because it was impossible for TelTech to know whether a person was in Florida, TelTech was effectively banned from offering caller ID spoofing anywhere in the country. *TelTech Sys.*, 2009 U.S. Dist. LEXIS 131954. There is no equivalent "ban" here. To the contrary, not only is it not a burden on commerce to stop texts when asked to stop, but it *facilitates* commerce. *Cf. Beyond Sys. v. Keynetics, Inc.*, 422 F. Supp. 2d 523 (D. Md. 2006) ("[T]he only burden the Act placed on the spammers was 'the requirement of truthfulness, a requirement that does not burden commerce at all but actually facilitates it by eliminating fraud and deception'").

Further, Defendant has both the telephone numbers *and* addresses of all persons to which it sent its texts. If Defendant insists on sending post-"stop" text messages,

Defendant could easily weed out all Florida addresses and area codes.

Indeed, as one court found in rejecting a similar commerce clause challenge to CIPA, a privacy statute intended to protect California customers, CIPA

> regulates only calls with a nexus to California and has the purpose of preventing privacy harms to Californians, even if it might create incentives for Omni to alter its behavior nationwide. That Omni may find it more convenient to warn all callers that their calls may be recorded, rather than attempt to differentiate between callers … does not create a constitutional violation.

*Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1014-15 (C.D. Cal. 2014). Similarly, the FTSA only regulates communications that have a nexus to Florida, and the purpose of the statute is to protect the privacy rights of Florida residents. That the FTSA might cause Defendant to stop texting consumers regardless of location after receiving a stop request from that consumer does not create a constitutional violation.

Accordingly, Defendant has failed to show that "'the burden on interstate commerce clearly exceeds the local benefits.'" *Fla. Transp. Servs.*, 703 F. 3d at 1245.

### 3. The FTSA does not unduly burden interstate commerce.

Defendant's only other argument about undue burden relates to the definition of "automated system for selecting and dialing numbers". That is not relevant here. Nevertheless, broadly interpreting Defendant's concerns about the nationwide burden of complying with the FTSA in the context of § 501.059(5) does not help it. For the reasons set forth previously, any burden is minimal or non-existent in relation to the legitimate public interest of protecting consumer privacy. *See Mey*, 245 F. Supp. 3d at 793; *see also Ohralik*, 436 U.S. at 460; *Carey*, 447 U.S. at 471; *Barr*, 140 S. Ct. at 2343.

Importantly, Defendant specifically invited Plaintiff to "text STOP" to unsubscribe. [TAC at ¶ 45.] Defendant cannot now complain that the FTSA imposes too great of a burden on it in requiring it to honor its already-implemented process.

### c.  Defendant's facial Commerce Clause challenge fails.

A facial challenge to a statute as a violation of the Dormant Commerce Clause requires the challenger to establish that no set of circumstances exists under which the Act would be valid. *See, e.g. United States v. Lopez*, 215 Fed. Appx. 863, 864 n.3 (11th Cir. Jan. 26, 2007); *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) Because the FTSA does not violate the Commerce Clause as applied to Defendant, it cannot meet the facial-challenge standard. *See Lopez*, 215 Fed. Appx. At 864 n.3 ("[B]ecause we [previously] rejected an as-applied [Commerce Clause] challenge … [a] facial challenge to [the statute] necessarily fails[.]")

### CONCLUSION

For the foregoing reasons, Defendant's Motion must be denied.

**Dated:** October 24, 2022

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com

Signing counsel hereby certifies that I filed the foregoing using the CM/ECF system, which will send a notify all counsel of record.