## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>**v.**<br><br>**AEROCARE HOLDINGS LLC;**<br>**ADAPTHEALTH CORP.**<br><br>**Defendants.** | Civil Case No.: 22-cv-1047 |

## FOURTH AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION

1.     This action arises out of Defendant AdaptHealth Corp's ("AdaptHealth") continued text messages, on behalf of Defendant AeroCare Holdings LLC ("AeroCare") (collectively, "Defendants" or "AdaptHealth Parties"), to Plaintiff and similarly situated persons after those persons asked Defendants to "stop", in violation of the Florida Telephone Solicitation Act ("FTSA"), § 501.059(5).

2.     This action further arises out AdaptHealth's placement of telephone solicitations, to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. 227(c) through the regulations found at 47 C.F.R § 64.1200(c).

3.     This action further arises out of Defendant AdaptHealth''s placement of telemarketing text messages, to telephone numbers despite not having the proper policies and procedures in place for documenting and honoring do-not-call requests, in violation of the TCPA 47 U.S.C. § 227(c) through the regulations found at 47 C.F.R. § 64.1200(d).

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

5.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiff's claims under the TCPA.

6.     The Court has personal jurisdiction over Defendants because Defendants conduct significant business transactions in this District, have committed tortious acts from and directed at this District, and Defendant AeroCare has its principal place of business in this District.

7.     Venue is proper in this District because Defendants conducts significant amounts of business transactions within this District, because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District, and Defendant AeroCare is headquartered within this District.

## PARTIES

8.     Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida.

9.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10.     Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923.

11.     Defendant AeroCare is, and at all times mentioned herein was, a Delaware corporation headquartered 3325 Bartlett Boulevard, Orlando, Florida 32811.

12.     Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13.     Defendant AdaptHealth is, and at all times mentioned herein was, a Delaware corporation headquartered 220 W Germantown Pike, Suite 250, Plymouth

Meeting, PA 19462.

14.     Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## RELATIONSHIP OF DEFENDANTS

15.     On December 1, 2020, AdaptHealth Corp. announced its acquisition of Aerocare Holdings, Inc. for approximately $2 billion.[1]

16.     On February 2, 2021, Aerocare Holdings, Inc. announced the completion of this acquisition.[2]

17.     In this February 2, 2021 press release, AeroCare Holdings, Inc. described this transaction as "$1.1 billion in cash and 31 million shares of AdaptHealth stock."

18.     This transaction was a merger between AeroCare Holdings, Inc. and certain subsidiaries of AdaptHealth created for the purposes of the merger, resulting in the creation of Defendant Aerocare Holdings LLC.

19.     Specifically, AdaptHealth created two subsidiaries ("Merger Sub I" and "Merger Sub II").

20.     AeroCare Holdings, Inc. and Merger Sub I merged, with AeroCare Holdings, Inc. as the surviving entity ("First Merger").

21.     The new AeroCare Holdings, Inc created as a result of the First Merger then merged into Merger Sub II, with company Merger Sub II surviving ("Second

---

[1] https://adapthealth.com/wp-content/uploads/2020/11/AHCOAC_Press-Release_vF.pdf, last accessed August 10, 2022.
[2] https://www.prnewswire.com/news-releases/aerocare-announces-completion-of-acquisition-by-adapthealth-301219622.html

Merger").

22.     Merger Sub II subsequently changed its name to AeroCare Holdings LLC—the Defendant here.

23.     Through these mergers, AeroCare Holdings LLC expressly assumed the liabilities of AeroCare Holdings, Inc.[3]

24.     While the texts to Plaintiff occurred after the completion of this merger, the start date of the proposed class is before, making this tour through the merger necessary to establish continuity of liability.

## FACTUAL ALLEGATIONS

25.     Plaintiff's telephone number is 813-###-9923.

26.     Plaintiff's telephone number is and was a cellular telephone number.

27.     Plaintiff is the regular user of this telephone number.

28.     Plaintiff's telephone number has been on the National Do-Not-Call Registry since November 6, 2015.

29.     Plaintiff placed his telephone number ending in 813-###-9923 on the National Do-Not-Call Registry on November 6, 2015.

30.     Plaintiff's subscribes to his number in his individual capacity; it is not subscribed to a business.

31.     Plaintiff previously used a Phillips DreamStation CPAP machine which

---

[3]

https://www.sec.gov/Archives/edgar/data/1725255/000110465920132574/tm2037721d1_ex10-1.htm, § 2.1(a).

he bought in or about May 2021.

32.     This CPAP machine was recalled in June 2021.

33.     Plaintiff attempted to obtain a replacement CPAP machine through the recall process, but after a few months, was unable to obtain one and gave up.

34.     While Plaintiff used the CPAP machine, he ordered supplies from Defendant AeroCare.

35.     Plaintiff received, via email (and also via phone) invitations from Defendant AeroCare to purchase additional CPAP supplies.

36.     On or about May 10, 2022 after receiving an email invitation from Defendant AeroCare to purchase CPAP supplies, Plaintiff unsubscribed from these solicitation emails by following the unsubscribe link included with those emails.

37.     Shortly thereafter, Defendant AdaptHealth began soliciting Plaintiff weekly via text message to purchase CPAP supplies from Defendant AeroCare.

38.     On May 17, Plaintiff received a text message on his cellular telephone number ending in 9923 that said "Reorder your AeroCare PAP supplies" and contained a link that, when clicked, would take Plaintiff to a page where he could purchase CPAP supplies.

39.     Specifically, the link, when clicked, would take Plaintiff to the following page:[4]

---

[4] Counsel has redacted Plaintiff's address.



40.     Plaintiff immediately replied "Stop" to that message and received a follow up text stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

41.     Several hours later, unprompted, Plaintiff received a text that stated "Text STOP if you want to unsubscribe."

42.     Plaintiff again wrote "STOP" and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

43.     Despite these two requests and two confirmations, on May 24, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

44.     On May 31, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

45.     Plaintiff replied "Stop" to this May 31 message, and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

46.     On June 7, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

47.     Plaintiff again replied "Stop" to this message and again received a confirmation.

48.     Defendant AdaptHealth used short code 91898 to send these solicitations.

49.     These text message exchanges can be seen in the following screenshots (taken on June 7):



50.     These text messages were sent by Defendant AdaptHealth for the benefit of and with the knowledge of Defendant AeroCare.

51.     As a result of Defendants' conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

52.     Specifically, with respect to waste of time and nuisance, Plaintiff took the time to respond "stop", only to continue to receive messages he did not want and made known he did not want through his "stop" message.

## LAWS VIOLATED

53.     The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

54.     "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

55.     "Telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

56.     "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household

purposes[.]" § 501.059(1)(c).

57.    CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

58.    Because Defendants' text messages were for the purpose of soliciting the sale of CPAP supplies, which are consumer goods or services, these text messages were "telephonic sales calls."

59.    Finally, Defendants' sent or caused to be sent the telephonic sales text messages, making it a "telephone solicitor."

60.    Therefore, Defendants' continued text messages to Plaintiff after he replied "stop" on May 17 violate § 501.059(5).

61.    For violations of § 501.059(5), Plaintiff is entitled to $500 per text message in statutory damages. § 501.059(10)(a).

62.    Plaintiff is entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

63.    Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

64.    The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

65.    One set of such regulations are codified at 47 CFR 64.1200(c)(1-2).

66.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

67.     A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

68.     A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

69.     A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

70.     As noted, Plaintiff's telephone number has been on the National Do-Not-Call Registry since 2015.

71.     Plaintiff also asked Defendants' to "stop" sending its text message solicitations, thereby terminating consent and any established business relationship under the statute.

72.     Plaintiff received three subsequent text message solicitations in a 12-

month period.

73. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call.

74. If the Court finds these violations to have been willful, Plaintiff is entitled to $1500 per call.

75. Finally, in another set of regulations, the TCPA requires companies to implement certain minimum policies and procedures prior to making any telemarketing call.

76. These regulations are codified at 47 C.F.R 64.1200(d)(1-6).

77. Specifically, a company may not initiate any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d).

78. No presence on any registry is required under 47 C.F.R. § 64.1200(d).

79. Furthermore, while 47 C.F.R. § 64.1200(c) applies to "telephone solicitations", which excludes calls with consent or with an established business relationship, 47 C.F.R. § 64.1200(d) applies to the much broader "telemarketing", making no exception for whether the call was initially made with consent.

80. The protections of 47 C.F.R. § 64.1200(d) cover cellular telephones. 47 C.F.R. § 64.1200(e).

81. Defendants sent the telemarketing texts without implementing several of these policies and procedures.

82. Defendants do not have a written policy, available upon demand, for

maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

83.    Plaintiff is aware of this fact not only because Defendants continued to text Plaintiff after he asked Defendants to stop, but because Plaintiff requested a copy of this policy on multiple occasions and to date nothing has been produced.

84.    Defendants were also required to honor do-not-call requests, 47 C.F.R. § 64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6).

85.    Because Defendants sent telemarketing texts *after* Plaintiff asked it to stop, Defendants did not comply with these requirements.

86.    Notably, if do-not-call requests "are recorded or maintained by a party other than person or entity on whose behalf the telemarketing [text] is made, the person or entity on whose behalf the telemarketing [text] is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(d)(3).

87.    Accordingly, both Defendant AdaptHealth (as the sender) and Defendant AeroCare (as the party on whose behalf the messages were sent) are liable for any failure to honor Plaintiff's stop requests.

88.    Plaintiff received three telemarketing text messages in a 12-month period after asking Defendant to stop.

89.    As such, Defendant has violated 47 U.S.C. § 227(c)(5) through the regulations found at 47 C.F.R. § 64.1200(d).

90.    For such violations, Plaintiff is entitled to $500 per text. 47 U.S.C § 227(c)(5).

91.    If the Court finds these violations to have been willful, Plaintiff is entitled

to $1500 per text.

## CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class

defined as:

> Since November 23, 2018, all persons to whose telephone number
> the AdaptHealth Parties initiated, or had initiated on their behalf,
> more than one text message in a 12-month period for the purpose
> of inviting the recipient to order CPAP supplies, after the recipient
> had replied "stop" or its equivalent to one of the AdaptHealth
> Parties' text messages.

93.     Excluded from the Class are Defendants and any entities in which

Defendants have a controlling interest; Defendant's agents and employees; any Judge

and Magistrate Judge to whom this action is assigned and any member of their staffs

and immediate families; and any claims for personal injury, wrongful death, and/or

emotional distress.

### Numerosity and Ascertainability

94.     The putative members of the Class for whose benefit this action is

brought are so numerous that joinder of all members is impracticable.

95.     The exact number and identities of the persons who fit within the Classes

are ascertainable in that Defendants maintain written and electronically stored data

showing:

a.  The dates and times Defendants sent the text messages;

b.  The telephone numbers to which Defendants sent the text messages;

c.  The addresses associated with such telephone numbers;

    d. Inbound requests that Defendants "stop" sending the text messages.

96. For purposes of the National Do-Not-Call Registry, a list of telephone numbers on the Do-Not-Call Registry is maintained by (and obtainable from) the FTC.

97. The Classes are comprised of tens of thousands of individuals nationwide.

98. Plaintiff DeSouza is a member of the Class because Defendants sent him more than one text message inviting him to order CPAP supplies after he asked Defendants to stop.

## Commonality

99. There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

    a. Whether Defendants sent text messages after being asked to stop;

    b. Whether Defendants had any processes or protocols in place to stop texts to persons who asked that the messages stop;

    c. Whether Defendants had the required policies and procedures in place to honor do-not-call requests;

    d. Whether Defendants did honor such requests;

    e. Whether Defendants' messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls";

    f. Whether Defendants had any processes in place to prevent messages to persons on the National Do-Not-Call Registry;

    g. Whether Plaintiff and the Class were damaged thereby, and the extent of

damages for such violations; and

h.   Whether Defendants should be enjoined from engaging in such conduct in the future.

## Typicality

100.   Plaintiff's claims are typical of the claims of members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories.

101.   Plaintiff has no interests antagonistic to, or in conflict with, the Class.

102.   On information and belief, Plaintiff avers that Defendants treated him in same manner as they have treated hundreds, if not thousands of individuals.

## Adequacy of Representation

103.   Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

## Superiority

104.   Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

105.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

106.   A class action provides a fair and efficient method for adjudication of the controversy.

107.   Common questions will predominate, and there will be no unusual manageability issues.

108.   The prosecution of separate actions would risk confronting Defendants with incompatible standards of conduct and may also prove dispositive of the interests of other members not parties.

109.   There does not appear to be any litigation already commenced by or against members of the class involving the same issues.

110.   The forum is appropriate, as discussed above.

111.   The expense of individual litigation and the limited recovery in individual litigation justify a class action.

## FIRST CAUSE OF ACTION
### Violations of the FTSA, § 501.059(5)

112.   The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

113.   "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

114.   "Telephonic sales call" is defined as a "…text message … to a consumer

for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

115.   "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes[.]" § 501.059(1)(c).

116.   Defendants sent text messages to Plaintiff and putative Class Members intended to solicit the sale of CPAP supplies.

117.   CPAP supplies, meant to work with a CPAP machine, qualify as "personal property" used for personal, family, or household purposes.

118.   Accordingly, CPAP supplies are "consumer goods or services."

119.   Defendants' text messages intended to solicit the sale of CPAP supplies were therefore "telephonic sales calls."

120.   Defendants, as the entities placing the telephonic sales calls or causing them to be made, were therefore a "telephone solicitor."

121.   Plaintiff and putative Class Members replied "stop" to Defendants' telephonic sales text messages, but they continued.

122.   Defendants' continued text messages to Plaintiff and putative Class Members after they replied "stop" to Defendants' text messages therefore violate § 501.059(5).

123.   Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to be sent text messages, invading their privacy, wasting their time, and constituting a

nuisance.

124.   For violations of § 501.059(5), Plaintiff and putative Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

125.   Plaintiff and putative Class Members are entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)

126.   The TCPA establishes a National Do-Not-Call Registry of numbers not to be called or messaged with telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

127.   These regulations are codified at 47 CFR 64.1200(c)(1-2).

128.   Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

129.   A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

130. A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

131. A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

132. Plaintiff and putative Class Members asked Defendant to "stop" sending its text message solicitations, terminating any established business relationship and any prior express invitation.

133. Plaintiff and some Class Members telephone numbers were on the National Do-Not-Call Registry at the time of the calls.

134. Plaintiff and Class Members thereafter received more than one text message soliciting the purchase of medical supplies in a 12-month period.

135. Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance.

136. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff and putative Class Members are entitled to $500 per text.

137. If the Court finds these violations to have been willful, Plaintiff and putative Class Members are entitled to $1500 per text.

## THIRD CAUSE OF ACTION
## Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d)

138.   The TCPA requires companies to implement certain minimum policies and procedures prior to making any telemarketing call.

139.   These regulations are codified at 47 C.F.R 64.1200(d)(1-6).

140.   Specifically, a company may not initiate any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d).

141.   No presence on any registry is required under 47 C.F.R. § 64.1200(d).

142.   Defendants sent telemarketing texts without implementing several of these policies and procedures.

143.   Defendants do not have a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

144.   Plaintiff requested such a policy in August 2022 and it has yet to be provided making it, at minimum, not available upon demand.

145.   Defendants were also required to honor do-not-call requests, 47 C.F.R. § 64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6).

146.   Because Defendants sent telemarketing texts to Plaintiff and putative Class Members *after* they asked Defendant to stop, it did not comply with these requirements.

147.   Plaintiff received three telemarketing text messages in a 12-month period after asking Defendants to stop, and each putative Class Member received at least two.

148.    A violation of 47 C.F.R. § 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(d)).

149.    For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d), Plaintiff and each putative Class Member is entitled to $500 per text.

150.    If the Court finds these violations to have been willful, Plaintiff and each putative Class Member is entitled to $1500 per text.

151.    Each member of the putative Class Member has Article III standing as, by definition, each member took the time to ask Defendants to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance.

152.    This injury is also fairly traceable as its violation of the law (e.g. failure to maintain a do-not-call policy or honor opt-out requests) led to the injury suffered here (e.g. continued texts after being asked to stop, thereby invading Class Member privacy).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff DeSouza, individually and on behalf of the proposed Class, prays for the following relief:

A.    An order certifying the Class as defined above, appointing Plaintiff DeSouza as the representative of the Class, and appointing his counsel as Class Counsel;

B.      An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(c) and § 501.059(5).

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages for violations of 47 U.S.C. § 227(c) and § 501.059(5).

E.      An award of treble damages;

F.      Such other and further relief that the Court deems just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: April 6, 2023          s/ Jeremy M. Glapion
                              Jeremy M. Glapion
                              **THE GLAPION LAW FIRM, LLC**
                              1704 Maxwell Drive
                              Wall, New Jersey 07719
                              Tel: 732-455-9737
                              Fax: 732-965-8006
                              jmg@glapionlaw.com
                              (*Pro Hac Vice*)

                              Bradford R. Sohn
                              Fla. Bar. No. 98788
                              **THE BRAD SOHN LAW FIRM PLLC**
                              1600 Ponce DeLeon Boulevard, Suite 1205
                              Coral Gables, Florida 33134
                              Tel: 786.708.9750
                              Fax: 305.397.0650
                              brad@sohn.com

                              *Counsel for Plaintiff and the Putative Classes*