4/6/2023 2:01:12 PM

## Compare Results

| Old File: | | New File: |
|---|---|---|
| **Third Amended Complaint - Clean.pdf** | | **Clean Fourth Amended Complaint.pdf** |
| **32 pages (495 KB)** | versus | **24 pages (486 KB)** |
| 9/9/2022 10:19:03 AM | | 4/6/2023 2:00:25 PM |

**Total Changes**

# 367

Text only comparison

**Content**

128   Replacements

76   Insertions

163   Deletions

**Styling and Annotations**

0   Styling

0   Annotations

[ Go to First Change (page 1) ]

Summary of Comments on A910geulw_12y1ci5_63g.tmp



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TYLER DESOUZA, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

AEROCARE HOLDINGS LLC;
ADAPTHEALTH CORP.

Defendants.

Civil Case No.: 22-cv-1047

FOURTH AMENDED CLASS ACTION COMPLAINT

Page: 1

Text Inserted
"Civil Case No.: 22-cv-1047"

Text Replaced
[Old]: "LLC,"
[New]: "LLC; ADAPTHEALTH CORP. Defendants. FOURTH"

Font "CenturySchoolbook-Bold" changed to "CalisMTBol".

Text Deleted
"Defendant. THIRD"

Text Deleted
"Civil Case No.: 22-cv-1047"

**INTRODUCTION**

1. This action arises out of Defendant AdaptHealth Corp's ("AdaptHealth") continued text messages, on behalf of Defendant AeroCare Holdings LLC ("AeroCare") (collectively, "Defendants" or "AdaptHealth Parties"), to Plaintiff and similarly situated persons after those persons asked Defendants to "stop", in violation of the Florida Telephone Solicitation Act ("FTSA"), § 501.059(5).

2. This action further arises out AdaptHealth's placement of telephone solicitations, to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. 227(c) through the regulations found at 47 C.F.R § 64.1200(c).

3. This action further arises out of Defendant AdaptHealth 's placement of telemarketing text messages, to telephone numbers despite not having the proper policies and procedures in place for documenting and honoring do-not-call requests, in violation of the TCPA 47 U.S.C. § 227(c) through the regulations found at 47 C.F.R. § 64.1200(d).

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiff's claims under the TCPA.

1

Page: 2

Text Replaced
[Old]: "AeroCare Holdings LLC ("AeroCare") continued text messages to Plaintiff and similarly situated persons after those persons asked Defendant"
[New]: "AdaptHealth Corp's ("AdaptHealth") continued text messages, on behalf of Defendant AeroCare Holdings LLC ("AeroCare") (collectively, "Defendants" or "AdaptHealth Parties"), to Plaintiff and similarly situated persons after those persons asked Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "of Defendant AeroCare's use of an automated system for placing telephonic sales text messages to Plaintiff's telephone number without Plaintiff's prior express written consent, in violation of the FTSA, § 501.059(8)(a)."
[New]: "AdaptHealth's placement of telephone solicitations, to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C."

Text Inserted
"227(c) through the regulations found at 47 C.F.R.1200(c)."

Text Replaced
[Old]: "Aerocare's"
[New]: "AdaptHealth"s"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"4."

Text Replaced
[Old]: "recorded message telephonic sales calls to Plaintiff's telephone number without prior express written consent, in violation of the FTSA, § 501.059(8)(a)."
[New]: "telemarketing text messages, to"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "Finally, this action arises out Defendant AeroCare placement of telephone solicitations to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C."
[New]: "telephone numbers despite not having the proper policies and procedures in place for documenting and honoring do-not-call requests, in violation of the TCPA 47 U.S.C. § 227(c) through the regulations found at 47 C.F.R. § 64.1200(d)."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"227(c) through the regulations found at 47 C.F.R § 64.1200(c)."

Text Replaced
[Old]: "5."
[New]: "4."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "6."

Comments from page 2 continued on next page

[New]: "5."

Font "CenturySchoolbook" changed to "CalistoMT".

## INTRODUCTION

1.    This action arises out of Defendant AdaptHealth Corp's ("AdaptHealth") continued text messages, on behalf of Defendant AeroCare Holdings LLC ("AeroCare") (collectively, "Defendants" or "AdaptHealth Parties"), to Plaintiff and similarly situated persons after those persons asked Defendants to "stop", in violation of the Florida Telephone Solicitation Act ("FTSA"), § 501.059(5).

2.    This action further arises out AdaptHealth's placement of telephone solicitations, to telephone numbers on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. 227(c) through the regulations found at 47 C.F.R § 64.1200(c).

3.    This action further arises out of Defendant AdaptHealth''s placement of telemarketing text messages, to telephone numbers despite not having the proper policies and procedures in place for documenting and honoring do-not-call requests, in violation of the TCPA 47 U.S.C. § 227(c) through the regulations found at 47 C.F.R. § 64.1200(d).

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

5.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiff's claims under the TCPA.

1

6. The Court has personal jurisdiction over Defendants because Defendants conduct significant business transactions in this District, have committed tortious acts from and directed at this District, and Defendant AeroCare has its principal place of business in this District.

7. Venue is proper in this District because Defendants conducts significant amounts of business transactions within this District, because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District, and Defendant AeroCare is headquartered within this District.

### PARTIES

8. Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida.

9. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923.

11. Defendant AeroCare is, and at all times mentioned herein was, a Delaware corporation headquartered 3325 Bartlett Boulevard, Orlando, Florida 32811.

12. Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant AdaptHealth is, and at all times mentioned herein was, a Delaware corporation headquartered 220 W Germantown Pike, Suite 250, Plymouth

2



Page: 3

Text Deleted
"7."

Text Replaced
[Old]: "Defendant because Defendant conducts"
[New]: "Defendants because Defendants conduct"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"6."

Text Replaced
[Old]: "has"
[New]: "have"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"Defendant AeroCare"

Text Replaced
[Old]: "8."
[New]: "7."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "Defendant"
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"Defendant AeroCare"

Text Inserted
"8. Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida."

Text Deleted
"Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida. 10."

Text Inserted
"10. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923."

Text Replaced
[Old]: "Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923."
[New]: "Defendant AeroCare is, and at all times mentioned herein was, a Delaware corporation headquartered 3325 Bartlett Boulevard, Orlando, Florida 32811."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"Defendant AeroCare is, and at all times mentioned herein was, a Delaware corporation headquartered 3325 Bartlett Boulevard, Orlando, Florida 32811."

Text Inserted

Comments from page 3 continued on next page

6. The Court has personal jurisdiction over Defendants because Defendants conduct significant business transactions in this District, have committed tortious acts from and directed at this District, and Defendant AeroCare has its principal place of business in this District.

7. Venue is proper in this District because Defendants conducts significant amounts of business transactions within this District, because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District, and Defendant AeroCare is headquartered within this District.

## PARTIES

8. Plaintiff is, and at all relevant times herein was, a resident of Tampa, Florida.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 813-###-9923.

11. Defendant AeroCare is, and at all times mentioned herein was, a Delaware corporation headquartered 3325 Bartlett Boulevard, Orlando, Florida 32811.

12. Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant AdaptHealth is, and at all times mentioned herein was, a Delaware corporation headquartered 220 W Germantown Pike, Suite 250, Plymouth

2

"Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39)."

Text Inserted
"Defendant AdaptHealth is, and at all times mentioned herein was, a 2 Delaware corporation headquartered 220 W Germantown Pike, Suite 250, Plymouth"



Meeting, PA 19462.

14.     Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §153(39).

## RELATIONSHIP OF DEFENDANTS

15.     On December 1, 2020, AdaptHealth Corp. announced its acquisition of Aerocare Holdings, Inc. for approximately $2 billion.[1]

16.     On February 2, 2021, Aerocare Holdings, Inc. announced the completion of this acquisition.[2]

17.     In this February 2, 2021 press release, AeroCare Holdings, Inc. described this transaction as "$1.1 billion in cash and 31 million shares of AdaptHealth stock."

18.     This transaction was a merger between AeroCare Holdings, Inc. and certain subsidiaries of AdaptHealth created for the purposes of the merger, resulting in the creation of Defendant Aerocare Holdings LLC.

19.     Specifically, AdaptHealth created two subsidiaries ("Merger Sub I" and "Merger Sub II").

20.     AeroCare Holdings, Inc. and Merger Sub I merged, with AeroCare Holdings, Inc. as the surviving entity ("First Merger").

21.     The new AeroCare Holdings, Inc created as a result of the First Merger then merged into Merger Sub II, with company Merger Sub II surviving ("Second

---

[1] https://adapthealth.com/wp-content/uploads/2020/11/AHCOAC_Press-Release_vF.pdf, last accessed August 10, 2022.
[2] https://www.prnewswire.com/news-releases/aerocare-announces-completion-of-acquisition-by-adapthealth-301219622.html

Page: 4

Text Inserted
"Meeting, PA 19462."

Text Inserted
"AdaptHealth"

Text Inserted
"14."

Text Deleted
"2"

Text Replaced
[Old]: "RELEVANT NON-PARTIES 14."
[New]: "RELATIONSHIP OF DEFENDANTS"

Text Inserted
"15."

Text Replaced
[Old]: "15."
[New]: "16."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "16."
[New]: "17."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "17."
[New]: "18."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "18."
[New]: "19."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "19."
[New]: "20."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "20."
[New]: "21."

Font "CenturySchoolbook" changed to "CalistoMT".

Comments from page 4 continued on next page

Meeting, PA 19462.

14. Defendant AdaptHealth is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**RELATIONSHIP OF DEFENDANTS**

15. On December 1, 2020, AdaptHealth Corp. announced its acquisition of Aerocare Holdings, Inc. for approximately $2 billion.[1]

16. On February 2, 2021, Aerocare Holdings, Inc. announced the completion of this acquisition.[2]

17. In this February 2, 2021 press release, AeroCare Holdings, Inc. described this transaction as "$1.1 billion in cash and 31 million shares of AdaptHealth stock."

18. This transaction was a merger between AeroCare Holdings, Inc. and certain subsidiaries of AdaptHealth created for the purposes of the merger, resulting in the creation of Defendant Aerocare Holdings LLC.

19. Specifically, AdaptHealth created two subsidiaries ("Merger Sub I" and "Merger Sub II").

20. AeroCare Holdings, Inc. and Merger Sub I merged, with AeroCare Holdings, Inc. as the surviving entity ("First Merger").

21. The new AeroCare Holdings, Inc created as a result of the First Merger then merged into Merger Sub II, with company Merger Sub II surviving ("Second

---

[1] https://adapthealth.com/wp-content/uploads/2020/11/AHCOAC_Press-Release_vF.pdf, last accessed August 10, 2022.
[2] https://www.prnewswire.com/news-releases/aerocare-announces-completion-of-acquisition-by-adapthealth-301219622.html

3

Page: 5

Merger").

22. Merger Sub II subsequently changed its name to AeroCare Holdings LLC—the Defendant here.

23. Through these mergers, AeroCare Holdings LLC expressly assumed the liabilities of AeroCare Holdings, Inc.[3]

24. While the texts to Plaintiff occurred after the completion of this merger, the start date of the proposed class is before, making this tour through the merger necessary to establish continuity of liability.

### FACTUAL ALLEGATIONS

25. Plaintiff's telephone number is 813-###-9923.

26. Plaintiff's telephone number is and was a cellular telephone number.

27. Plaintiff is the regular user of this telephone number.

28. Plaintiff's telephone number has been on the National Do-Not-Call Registry since November 6, 2015.

29. Plaintiff placed his telephone number ending in 813-###-9923 on the National Do-Not-Call Registry on November 6, 2015.

30. Plaintiff's subscribes to his number in his individual capacity; it is not subscribed to a business.

31. Plaintiff previously used a Phillips DreamStation CPAP machine which

---

[3]
https://www.sec.gov/Archives/edgar/data/1725255/000110465920132574/tm2037721d1_ex10-1.htm, § 2.1(a).

4

---

Text Deleted
"surviving ("Second"

Text Deleted
"21."

Text Inserted
"22."

Text Replaced
[Old]: "22."
[New]: "23."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"23."

Text Deleted
"calls and"

Text Inserted
"24."

Text Replaced
[Old]: "and three of Plaintiff's classes begin after this merger, one (the TCPA class) begins"
[New]: "the start date of the proposed class is"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"28."

Text Inserted
"29."

Text Inserted
"30. Plaintiff's subscribes to his number in his individual capacity; it is not subscribed to a business. 31."

Text Deleted
"29."

Text Inserted
"which"

he bought in or about May 2021.

32. This CPAP machine was recalled in June 2021.

33. Plaintiff attempted to obtain a replacement CPAP machine through the recall process, but after a few months, was unable to obtain one and gave up.

34. While Plaintiff used the CPAP machine, he ordered supplies from Defendant AeroCare.

35. Plaintiff received, via email (and also via phone) invitations from Defendant AeroCare to purchase additional CPAP supplies.

36. On or about May 10, 2022 after receiving an email invitation from Defendant AeroCare to purchase CPAP supplies, Plaintiff unsubscribed from these solicitation emails by following the unsubscribe link included with those emails.

37. Shortly thereafter, Defendant AdaptHealth began soliciting Plaintiff weekly via text message to purchase CPAP supplies from Defendant AeroCare.

38. On May 17, Plaintiff received a text message on his cellular telephone number ending in 9923 that said "Reorder your AeroCare PAP supplies" and contained a link that, when clicked, would take Plaintiff to a page where he could purchase CPAP supplies.

39. Specifically, the link, when clicked, would take Plaintiff to the following page:[4]

---
[4] Counsel has redacted Plaintiff's address.

5

Page: 6

Text Deleted
"which"

Text Deleted
"32."

Text Inserted
"34."

Text Deleted
"33."

Text Replaced
[Old]: "phone, discussed later), invitations from Defendant"
[New]: "phone) invitations from Defendant AeroCare"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"35."

Text Replaced
[Old]: "34."
[New]: "36."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"AeroCare"

Text Replaced
[Old]: "Rather than stop the written email solicitations, Defendant instead"
[New]: "Shortly thereafter, Defendant AdaptHealth"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "35."
[New]: "37."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "supplies."
[New]: "supplies from Defendant AeroCare."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "36."
[New]: "38."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced



Comments from page 6 continued on next page

he bought in or about May 2021.

32. This CPAP machine was recalled in June 2021.

33. Plaintiff attempted to obtain a replacement CPAP machine through the recall process, but after a few months, was unable to obtain one and gave up.

34. While Plaintiff used the CPAP machine, he ordered supplies from Defendant AeroCare.

35. Plaintiff received, via email (and also via phone) invitations from Defendant AeroCare to purchase additional CPAP supplies.

36. On or about May 10, 2022 after receiving an email invitation from Defendant AeroCare to purchase CPAP supplies, Plaintiff unsubscribed from these solicitation emails by following the unsubscribe link included with those emails.

37. Shortly thereafter, Defendant AdaptHealth began soliciting Plaintiff weekly via text message to purchase CPAP supplies from Defendant AeroCare.

38. On May 17, Plaintiff received a text message on his cellular telephone number ending in 9923 that said "Reorder your AeroCare PAP supplies" and contained a link that, when clicked, would take Plaintiff to a page where he could purchase CPAP supplies

39. Specifically, the link, when clicked, would take Plaintiff to the following page:[4]

---

[4] Counsel has redacted Plaintiff's address.

Page: 7



**Text Deleted**
"38."

**Text Inserted**
"40."

**Text Deleted**
"39."

**Text Inserted**
"41."

**Text Replaced**
[Old]: "40."
[New]: "42."

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "41."
[New]: "43."

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Deleted**
"4 Counsel has redacted Plaintiff's address."

**Text Deleted**
"42."

**Text Inserted**
"44."

40.     Plaintiff immediately replied "Stop" to that message and received a follow up text stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

41.     Several hours later, unprompted, Plaintiff received a text that stated "Text STOP if you want to unsubscribe."

42.     Plaintiff again wrote "STOP" and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

43.     Despite these two requests and two confirmations, on May 24, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

44.     On May 31, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

6

Page: 8

45. Plaintiff replied "Stop" to this May 31 message, and again received a confirmation message stating "You are unsubscribed from medical supply alerts. No more messages will be sent. Reply HELP for help."

46. On June 7, Plaintiff again received a text message stating "Reorder your AeroCare PAP supplies" with a link to purchase CPAP supplies.

47. Plaintiff again replied "Stop" to this message and again received a confirmation.

48. Defendant AdaptHealth used short code 91898 to send these solicitations.

49. These text message exchanges can be seen in the following screenshots (taken on June 7):



Text Deleted
"43."

Text Inserted
"45."

Text Deleted
"44."

Text Inserted
"46."

Text Deleted
"45."

Text Inserted
"47."

Text Replaced
[Old]: "46. Defendant"
[New]: "Defendant AdaptHealth"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"48."

Text Inserted
"49. These text message exchanges can be seen in the following screenshots (taken on June 7):"

Page: 9

50. These text messages were sent ~~by Defendant Adapt~~Health for the benefit of and with the knowledge of Defendant AeroCare.

51. As a result of ~~Defendants'~~ conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

52. Specifically, with respect to waste of time and nuisance, Plaintiff took the time to respond "stop", only to continue to receive messages he did not want and made known he did not want through his "stop" message.

**LAWS VIOLATED**

53. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

54. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

55. "Telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

56. "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household

8

**Comments (right margin):**

Text Deleted
"47."

Text Replaced
[Old]: "by, at the direction of, and with knowledge of Defendant AeroCare, which is based in Florida, from Florida."
[New]: "by Defendant AdaptHealth for the benefit of and with the knowledge of Defendant AeroCare."

Font "CenturySchoolbook" changed to "CalistoMT."

Text Inserted
"50."

Text Deleted
"49."

Text Replaced
[Old]: "48. These text message exchanges can be seen in the following screenshots (taken on June 7):"
[New]: "51."

Font "CenturySchoolbook" changed to "CalistoMT."

Text Replaced
[Old]: "Defendant's"
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT."

Text Replaced
[Old]: "50."
[New]: "52."

Font "CenturySchoolbook" changed to "CalistoMT."

Text Deleted
"8"

Text Deleted
"51. In addition to these text messages, Defendant has placed and continued to place—including after he asked Defendant to "stop" and after this lawsuit was filed—calls to Plaintiff's telephone number. 52. On these calls, Defendant leaves a pre-recorded voice message. 53. Plaintiff was alerted to these voice messages when he received a"

Text Deleted
"recipient."

Text Deleted
"63."

Text Deleted
"62."

Text Deleted
"61."

Text Deleted
"60."

Text Deleted
"59."

Text Deleted

Comments from page 9 continued on next page

50. These text messages were sent by Defendant AdaptHealth for the benefit of and with the knowledge of Defendant AeroCare.

51. As a result of Defendants' conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

52. Specifically, with respect to waste of time and nuisance, Plaintiff took the time to respond "stop", only to continue to receive messages he did not want and made known he did not want through his "stop" message.

## LAWS VIOLATED

53. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

54. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

55. "Telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

56. "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household

"58."

Text Deleted
"813-915-6996 June 16, 2022 877-202-5298 June 16, 2022 877-202-5298 June 16, 2022 813-915-6996 June 15, 2022 877-202-5298 June 15, 2022 813-915-6996 June 14, 2022 877-202-5298 June 14, 2022 877-202-5298 June 10, 2022 813-915-6996 June 9, 2022 877-202-5298 June 9, 2022 877-202-5298 June 8, 2022 877-202-5298 June 6, 2022 877-202-5298 June 3, 2022 877-202-5298 June 1, 2022 877-202-5298 May 26, 2022 877-202-5298 May 23, 2022 877-202-5298 May 19, 2022 877-202-5298 May 16, 2022 877-202-5298 May 13, 2022 877-202-5298 May 11, 2022"

Text Deleted
"57."

Text Deleted
"55."

Text Deleted
"54."

Text Deleted
"notification on his phone that his voicemail was full or nearly full."

Text Deleted
"As a result of Defendant's conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending the unwanted recorded message calls."

Text Deleted
"64."

Text Deleted
"Each voicemail, by its nature, takes up storage space on a device, and each connected recorded message call necessarily wastes of the time of the"

Text Deleted
"When Plaintiff checked his voicemail, he found at least 28 recorded message voicemails from Aerocare."

Text Deleted
"Some of these voicemails stated, using a recorded message, "Hello this is Aerocare, an AdaptHealth company, your respiratory supplier. We have a message for you. Please call us back at 877-202-5298. Again, this is Aerocare, an AdaptHealth Company, your respiratory supplier. Please call us back at 877-202-5298." 56. Other of these calls stated, using a recorded message, "Hello this is Aerocare, an AdaptHealth company, your respiratory supplier. We have an urgent message for you. It is imperative you call us back at 877-202-5298. Again, this is Aerocare, an AdaptHealth Company, your respiratory supplier. Please call us back at 877-202-5298.""

Text Deleted
"These voicemails include the following: From number Date and time 877-202-5298 July 1, 2022 877-202-5298 June 30, 2022 877-202-5298 June 24, 2022 877-202-5298 June 23, 2022 877-202-5298 June 22, 2022"

Text Deleted
"877-202-5298 May 9, 2022 877-202-5298 May 5, 2022"

Text Deleted
"As of July 5, 2022, both telephone numbers used (877-202-5298 and 813-915-6996) rang back to Defendant AeroCare."

Text Deleted
"As evidenced by the calls using an 813 (Florida) area code, these calls were placed by, at the direction of, and with knowledge of Defendant AeroCare, which is based in Florida, from Florida."

Text Deleted
"When the numbers are called back and Plaintiff verifies his identity, Defendant's representative indicates that the calls were intended to have Plaintiff place his next order for CPAP supplies."

Text Deleted
"In addition, Plaintiff's only interaction with Defendant had been to purchase CPAP supplies and about re-ordering those supplies, making it most likely these calls were intended for the same purpose."

Text Deleted
"Plaintiff never gave Defendant prior express written consent to place recorded message telephone solicitations to his telephone number."

Text Deleted
"65."

Text Deleted
"66."

Text Deleted

Comments from page 9 continued on next page

50.   These text messages were sent by Defendant AdaptHealth for the benefit of and with the knowledge of Defendant AeroCare.

51.   As a result of Defendants' conduct, Plaintiff suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

52.   Specifically, with respect to waste of time and nuisance, Plaintiff took the time to respond "stop", only to continue to receive messages he did not want and made known he did not want through his "stop" message.

**LAWS VIOLATED**

53.   The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.] § 501.059(5).

54.   "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

55.   "Telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

56.   "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household

8

"Defendant's conduct described above violates at least two provisions of the FTSA and at least one provision of the TCPA."

Text Deleted
"First, the"

Text Inserted
"53. The"

Text Deleted
"67."

Text Inserted
"54."

Text Deleted
"68."

Text Inserted
"55."

Text Deleted
"69."

Text Inserted
"56."

Text Inserted
"8"

purposes[.]" § 501.059(1)(c).

57.   CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

58.   Because Defendants' text messages were for the purpose of soliciting the sale of CPAP supplies, which are consumer goods or services, these text messages were "telephonic sales calls."

59.   Finally, Defendants' sent or caused to be sent the telephonic sales text messages, making it a "telephone solicitor."

60.   Therefore, Defendants' continued text messages to Plaintiff after he replied "stop" on May 17 violate § 501.059(5).

61.   For violations of § 501.059(5), Plaintiff is entitled to $500 per text message in statutory damages. § 501.059(10)(a).

62.   Plaintiff is entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

63.   Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

64.   The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

65.   One set of such regulations are codified at 47 CFR 64.1200(c)(1-2).

9



Page: 10

Text Deleted
"70."

Text Inserted
"57."

Text Deleted
"12"

Text Deleted
"71."

Text Inserted
"58."

Text Replaced
[Old]: "Defendant's"
[New]: "Defendants'"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"72."

Text Inserted
"59."

Text Replaced
[Old]: "Defendant"
[New]: "Defendants' sent or caused to be"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"73."

Text Inserted
"60."

Text Replaced
[Old]: "Defendant's"
[New]: "Defendants'"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"74."

Text Inserted
"61."

Text Deleted
"75."

Text Inserted
"62."

Text Replaced
[Old]: "76. Second, the FTSA prohibits a person from making "a telephonic sales call" if such call "involves an automated system for the selection or dialing of telephone numbers ... without the prior express written consent of the called party." § 501.059(8)(a). 77. "Prior express written consent" means: a written agreement that clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated

Comments from page 10 continued on next page

purposes[.]" § 501.059(1)(c).

57.   CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

58.   Because Defendants' text messages were for the purpose of soliciting the sale of CPAP supplies, which are consumer goods or services, these text messages were "telephonic sales calls."

59.   Finally, Defendants' sent or caused to be sent the telephonic sales text messages, making it a "telephone solicitor."

60.   Therefore, Defendants' continued text messages to Plaintiff after he replied "stop" on May 17 violate § 501.059(5).

61.   For violations of § 501.059(5), Plaintiff is entitled to $500 per text message in statutory damages. § 501.059(10)(a).

62.   Plaintiff is entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

63.   Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

64.   The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

65.   One set of such regulations are codified at 47 CFR 64.1200(c)(1-2).

9

---

system for the selection or dialing of telephone numbers, the transmission of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail[.]"
[New]: "63. Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one"

**Text Deleted**
"Second, Defendant's messages were sent exactly 1 week apart, on four separate occasions, all within 1 hour of each other (2:36 PM, 3:24 PM, 2:52 PM, 2:53 PM). 81. This regularity suggests an automated scheduled process where numbers would be queued up (e.g. dialed) by the system weekly during an automated "batch" process set to run that day."

**Text Deleted**
"501.059(1)(g). 78. Defendant's text messages use an automated system for the selection and dialing of telephone numbers. 79. First, text messages from short codes, like Defendant's here, overwhelmingly, if not exclusively, use automated systems to make calls and send messages."

**Text Deleted**
"9"

**Text Deleted**
"80."

**Text Deleted**
"82."

**Text Deleted**
"87."

**Text Deleted**
"As explained above, Defendant's phone calls used a recorded voice and left recorded voicemail messages."

**Text Deleted**
"89."

**Text Deleted**
"Defendant did not obtain prior express written consent for such prerecorded calls."

**Text Deleted**
"85."

**Text Replaced**
[Old]: "For violations of the FTSA, § 501.059(8)(a), Plaintiff is entitled to $500 per call and text message in statutory damages. § 501.059(10)(a)."
[New]: "of rules and regulations prescribed under 47 U.S.C. § 227(c). 64. The"

**Font "CenturySchoolbook" changed to "CalistoMT".**

**Text Replaced**
[Old]: "In addition, the FTSA prohibits making "a telephonic sales call" if such call "involves ... the playing of a recorded message when a connection is completed to a number called without the prior express consent of the called party." § 501.059(8)(a)."
[New]: "a 12-month period"

**Font "CenturySchoolbook" changed to "CalistoMT".**

**Text Replaced**
[Old]: "Third, the platform Defendant used for its text messages— SnapWorx—provides a patient management platform that "makes complex decisions with AI", including "queuing eligible patients, those most likely to order, and the highest priority to call next." 5"
[New]: "call in"

**Font "CenturySchoolbook" changed to "CalistoMT".**

**Text Replaced**
[Old]: "Plaintiff is aware that these telephone calls used a recorded message because of his familiarity with normal human interaction, intonation, manners of speaking, and because the voicemails were often identical in substance, intonation, and inflection to one another."
[New]: "in violation"

Comments from page 10 continued on next page

purposes[.]" § 501.059(1)(c).

57.    CPAP supplies, meant to work with a CPAP machine, undoubtedly qualify as "personal property" used for personal, family, or household purposes, making such supplies "consumer goods or services."

58.    Because Defendants' text messages were for the purpose of soliciting the sale of CPAP supplies, which are consumer goods or services, these text messages were "telephonic sales calls."

59.    Finally, Defendants' sent or caused to be sent the telephonic sales text messages, making it a "telephone solicitor."

60.    Therefore, Defendants' continued text messages to Plaintiff after he replied "stop" on May 17 violate § 501.059(5).

61.    For violations of § 501.059(5), Plaintiff is entitled to $500 per text message in statutory damages. § 501.059(10)(a).

62.    Plaintiff is entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b)

63.    Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

64.    The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

65.    One set of such regulations are codified at 47 CFR 64.1200(c)(1-2).

9

---

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"13"

Text Deleted
"Even if it had, it lost that consent when Plaintiff replied "stop". 5 https://www.snapworxllc.com/products/snap"

Text Deleted
"Defendant did not obtain prior express written consent for such automated text messages."

Text Deleted
"83."

Text Deleted
"84."

Text Deleted
"88."

Text Deleted
"86."

Text Deleted
"91."

Text Deleted
"Plaintiff is entitled to $1,500 should the Court find the violations willful. § 501.059(10)(b)."

Text Deleted
"Finally, the"

Text Deleted
"90."

Text Replaced
[Old]: "92. These"
[New]: "65. One set of such"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "15"
[New]: "9"

Page: 11



66.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.  4/ CFR 64.1200(c)(2).

67.     A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

68.     A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

69.     A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

70.     As noted, Plaintiff's telephone number has been on the National Do-Not-Call Registry since 2015.

71.     Plaintiff also asked Defendants' to "stop" sending its text message solicitations, thereby terminating consent and any established business relationship under the statute.

72.     Plaintiff received three subsequent text message solicitations in a 12-

10

Text Replaced
[Old]: "93."
[New]: "66."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"94."

Text Inserted
"67."

Text Deleted
"95."

Text Inserted
"68."

Text Deleted
"96."

Text Inserted
"69."

Text Deleted
"97."

Text Inserted
"70."

Text Deleted
"98."

Text Inserted
"71."

Text Replaced
[Old]: "Defendant"
[New]: "Defendants'"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "solicitations."
[New]: "solicitations, thereby terminating consent and any established business relationship under the statute. 72."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"99."

Text Replaced
[Old]: "12-month"
[New]: "12"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "16"
[New]: "10"

Comments from page 11 continued on next page

66.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

67.     A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

68.     A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

69.     A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

70.     As noted, Plaintiff's telephone number has been on the National Do-Not-Call Registry since 2015.

71.     Plaintiff also asked Defendants' to "stop" sending its text message solicitations, thereby terminating consent and any established business relationship under the statute.

72.     Plaintiff received three subsequent text message solicitations in a 12-

Page: 12

month period.

73.     For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call.

74.     If the Court finds these violations to have been willful, Plaintiff is entitled to $1500 per call.

75.     Finally, in another set of regulations, the TCPA requires companies to implement certain minimum policies and procedures prior to making any telemarketing call.

76.     These regulations are codified at 47 C.F.R 64.1200(d)(1-6).

77.     Specifically, a company may not initiate any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d).

78.     No presence on any registry is required under 47 C.F.R. § 64.1200(d).

79.     Furthermore, while 47 C.F.R. § 64.1200(c) applies to "telephone solicitations", which excludes calls with consent or with an established business relationship, 47 C.F.R. § 64.1200(d) applies to the much broader "telemarketing", making no exception for whether the call was initially made with consent.

80.     The protections of 47 C.F.R. § 64.1200(d) cover cellular telephones. 47 C.F.R. § 64.1200(e).

81.     Defendants sent the telemarketing texts without implementing several of these policies and procedures.

82.     Defendants do not have a written policy, available upon demand, for

11

maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

83.     Plaintiff is aware of this fact not only because Defendants continued to text Plaintiff after he asked Defendants to stop, but because Plaintiff requested a copy of this policy on multiple occasions and to date nothing has been produced.

84.     Defendants were also required to honor do-not-call requests, 47 C.F.R. § 64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6).

85.     Because Defendants sent telemarketing texts *after* Plaintiff asked it to stop, Defendants did not comply with these requirements.

86.     Notably, if do-not-call requests "are recorded or maintained by a party other than person or entity on whose behalf the telemarketing [text] is made, the person or entity on whose behalf the telemarketing [text] is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(d)(3).

87.     Accordingly, both Defendant AdaptHealth (as the sender) and Defendant AeroCare (as the party on whose behalf the messages were sent) are liable for any failure to honor Plaintiff's stop requests.

88.     Plaintiff received three telemarketing text messages in a 12-month period after asking Defendant to stop.

89.     As such, Defendant has violated 47 U.S.C. § 227(c)(5) through the regulations found at 47 C.F.R. § 64.1200(d).

90.     For such violations, Plaintiff is entitled to $500 per text. 47 U.S.C § 227(c)(5).

91.     If the Court finds these violations to have been willful, Plaintiff is entitled

12

**Text Replaced**
[Old]: "to order CPAP supplies, after the recipient had replied "stop" to one of Defendant's text messages. ("Stop Class") Since July 1, 2021,"
[New]: "maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1). 83. Plaintiff is aware of this fact not only because Defendants continued to text Plaintiff after he asked Defendants to stop, but because Plaintiff requested a copy of this policy on multiple occasions and to date nothing has been produced. 84. Defendants were also required to honor do-not-call requests, 47 C.F.R."

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Inserted**
"§"

**Text Replaced**
[Old]: "Plaintiff and all persons to whose telephone number Defendant sent, or allowed to be sent, a text message using the SnapWorx platform inviting the recipient to order CPAP supplies, after the recipient had previously replied "stop" to one of Defendant's text messages. ("Automated Class") Since July 1, 2021, Plaintiff and all persons to whose telephone number Defendant placed more than one connected call using a recorded message, including by leaving a recorded voicemail, for the purpose of inviting the recipient"
[New]: "64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6). 85. Because Defendants sent telemarketing texts after Plaintiff asked it to stop, Defendants did not comply with these requirements. 86. Notably, if do-not-call requests "are recorded or maintained by a party other than person or entity on whose behalf the telemarketing [text] is made, the person or entity on whose behalf the telemarketing [text] is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(d)(3). 87. Accordingly, both Defendant AdaptHealth (as the sender) and Defendant AeroCare (as the party on whose behalf the messages were sent) are liable for any failure to honor Plaintiff's stop requests. 88. Plaintiff received three telemarketing text messages in a 12-month period after asking Defendant to stop. 89. As such, Defendant has violated 47 U.S.C. § 227(c)(5) through the regulations found at 47 C.F.R. § 64.1200(d). 90. For such violations, Plaintiff is entitled to $500 per text. 47 U.S.C § 227(c)(5). 91. If the Court finds these violations to have been willful, Plaintiff is entitled"

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "17"
[New]: "12"

Page: 14

to $1500 per text.

## CLASS ACTION ALLEGATIONS

92.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class defined as:

Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

93.    Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

### Numerosity and Ascertainability

94.    The putative members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

95.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants maintain written and electronically stored data showing:

 a.  The dates and times Defendants sent the text messages;

 b.  The telephone numbers to which Defendants sent the text messages;

 c.  The addresses associated with such telephone numbers;

13

**Comments column:**

Text Replaced
[Old]: "order CPAP supplies. ("Prerecord Class")"
[New]: "$1500 per text."

Font "CenturySchoolbook" changed to "CalistoMT".
Text Inserted
"CLASS ACTION ALLEGATIONS"

Text Replaced
[Old]: "Since June 14, 2018, Plaintiff and all persons to whose telephone number Defendant sent, or had sent on its"
[New]: "23 on behalf of a class defined as: Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their"

Font "CenturySchoolbook" changed to "CalistoMT".
Text Inserted
"92."

Text Inserted
"Plaintiff brings this action under Fed. R. Civ. P."

Text Replaced
[Old]: "to one of Defendant's text messages and the recipient's telephone number was on the National Do-Not-Call Registry at the time of the calls. ("Registry Class")"
[New]: "or its equivalent to one of the AdaptHealth Parties' text messages. 93."

Text Deleted
"103."

Text Replaced
[Old]: "Classes are Defendant"
[New]: "Class are Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".
Text Replaced
[Old]: "Defendant has"
[New]: "Defendants have"

Font "CenturySchoolbook" changed to "CalistoMT".
Text Deleted
"104."

Text Inserted
"94."

Text Replaced
[Old]: "Classes"
[New]: "Class"

Font "CenturySchoolbook" changed to "CalistoMT".
Text Deleted
"105."

Comments from page 14 continued on next page

to $1500 per text.

## CLASS ACTION ALLEGATIONS

92.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class

defined as:

Since November 23, 2018, all persons to whose telephone number
the AdaptHealth Parties initiated, or had initiated on their behalf,
more than one text message in a 12-month period for the purpose
of inviting the recipient to order CPAP supplies, after the recipient
had replied "stop" or its equivalent to one of the AdaptHealth
Parties' text messages.

93.    Excluded from the Class are Defendants and any entities in which

Defendants have a controlling interest; Defendant's agents and employees; any Judge

and Magistrate Judge to whom this action is assigned and any member of their staffs

and immediate families; and any claims for personal injury, wrongful death, and/or

emotional distress.

### Numerosity and Ascertainability

94.    The putative members of the Class for whose benefit this action is

brought are so numerous that joinder of all members is impracticable.

95.    The exact number and identities of the persons who fit within the Classes

are ascertainable in that Defendants maintain written and electronically stored data

showing:

a. The dates and times Defendants sent the text messages;

b. The telephone numbers to which Defendants sent the text messages;

c. The addresses associated with such telephone numbers;

d. Inbound requests that Defendants "stop" sending the text messages.

96. For purposes of the National Do-Not-Call Registry, a list of telephone numbers on the Do-Not-Call Registry is maintained by (and obtainable from) the FTC.

97. The Classes are comprised of tens of thousands of individuals nationwide.

98. Plaintiff DeSouza is a member of the Class because Defendants sent him more than one text message inviting him to order CPAP supplies after he asked Defendants to stop.

**Commonality**

99. There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

a. Whether Defendants sent text messages after being asked to stop;

b. Whether Defendants had any processes or protocols in place to stop texts to persons who asked that the messages stop;

c. Whether Defendants had the required policies and procedures in place to honor do-not-call requests;

d. Whether Defendants did honor such requests;

e. Whether Defendants' messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls";

f. Whether Defendants had any processes in place to prevent messages to persons on the National Do-Not-Call Registry;

g. Whether Plaintiff and the Class were damaged thereby, and the extent of

14

---

Page: 15

Text Replaced
[Old]: "Defendant"
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"106."

Text Inserted
"96."

Text Replaced
[Old]: "Registry Class,"
[New]: "National Do-Not-Call Registry."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"107."

Text Replaced
[Old]: "of hundreds, if not thousands, of individuals nationwide."
[New]: "of tens of thousands of individuals nationwide. 98."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Inserted
"97."

Text Deleted
"108."

Text Deleted
"109."

Text Deleted
"Stop"

Text Replaced
[Old]: "Plaintiff DeSouza is a member of the Automated Class because Defendant sent him a text message using the SnapWorx Platform inviting him to order CPAP supplies after he had replied "stop". 110. Plaintiff DeSouza is a member of the Prerecord Class because Defendant placed more than one recorded message call to him, and/or left more than one recorded message voicemail, for the purpose of inviting him to order CPAP supplies. 111. Plaintiff DeSouza is a member of the Registry Class because Defendant sent him more than one text message in a 12-month period inviting him to order CPAP supplies after he asked Defendant to stop, and his number was on the National Do-Not-Call Registry at the time of the messages."
[New]: "sent him more than one text message inviting him to order CPAP supplies after he asked Defendants to stop."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "Defendant sent him a text message inviting him to order CPAP supplies after he asked Defendant to stop."
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted

Comments from page 15 continued on next page

    d. Inbound requests that Defendants "stop" sending the text messages.

96.   For purposes of the National Do-Not-Call Registry, a list of telephone numbers on the Do-Not-Call Registry is maintained by (and obtainable from) the FTC.

97.   The Classes are comprised of tens of thousands of individuals nationwide.

98.   Plaintiff DeSouza is a member of the Class because Defendants sent him more than one text message inviting him to order CPAP supplies after he asked Defendants to stop.

**Commonality**

99.   There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

    a. Whether Defendants sent text messages after being asked to stop;

    b. Whether Defendants had any processes or protocols in place to stop texts to persons who asked that the messages stop;

    c. Whether Defendants had the required policies and procedures in place to honor do-not-call requests;

    d. Whether Defendants did honor such requests;

    e. Whether Defendants' messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls";

    f. Whether Defendants had any processes in place to prevent messages to persons on the National Do-Not-Call Registry;

    g. Whether Plaintiff and the Class were damaged thereby, and the extent of

damages for such violations; and

h. Whether Defendants should be enjoined from engaging in such conduct

in the future.

**Typicality**

100. Plaintiff's claims are typical of the claims of members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories.

101. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

102. On information and belief, Plaintiff avers that Defendants treated him in same manner as they have treated hundreds, if not thousands of individuals.

**Adequacy of Representation**

103. Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

**Superiority**

104. Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

105. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

106. A class action provides a fair and efficient method for adjudication of the controversy.

15



Page: 16

Text Replaced
[Old]: "Defendant"
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "113."
[New]: "100."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "Classes"
[New]: "Class"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"114."

Text Inserted
"101."

Text Replaced
[Old]: "Classes."
[New]: "Class. 102."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"115."

Text Replaced
[Old]: "Defendant"
[New]: "Defendants"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"116."

Text Inserted
"103."

Text Replaced
[Old]: "Classes,"
[New]: "Class,"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "Classes;"
[New]: "Class;"

Comments from page 16 continued on next page

damages for such violations; and

h.  Whether Defendants should be enjoined from engaging in such conduct in the future.

## Typicality

100.  Plaintiff's claims are typical of the claims of members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories.

101.  Plaintiff has no interests antagonistic to, or in conflict with, the Class.

102.  On information and belief, Plaintiff avers that Defendant treated him in same manner as they have treated hundreds, if not thousands of individuals.

## Adequacy of Representation

103.  Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

## Superiority

104.  Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

105.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

106.  A class action provides a fair and efficient method for adjudication of the controversy.

15

Page: 17

107.   Common questions will predominate, and there will be no unusual manageability issues.

108.   The prosecution of separate actions would risk confronting Defendants with incompatible standards of conduct and may also prove dispositive of the interests of other members not parties.

109.   There does not appear to be any litigation already commenced by or against members of the class involving the same issues.

110.   The forum is appropriate, as discussed above.

111.   The expense of individual litigation and the limited recovery in individual litigation justify a class action.

**FIRST CAUSE OF ACTION**
**Violations of the FTSA, § 501.059(5)**

112.   The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

113.   "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" § 501.059(1)(i).

114.   "Telephonic sales call" is defined as a "…text message … to a consumer

16

for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

115. "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes[.]" § 501.059(1)(c).

116. Defendants sent text messages to Plaintiff and putative Class Members intended to solicit the sale of CPAP supplies.

117. CPAP supplies, meant to work with a CPAP machine, qualify as "personal property" used for personal, family, or household purposes.

118. Accordingly, CPAP supplies are "consumer goods or services."

119. Defendants' text messages intended to solicit the sale of CPAP supplies were therefore "telephonic sales calls."

120. Defendants, as the entities placing the telephonic sales calls or causing them to be made, were therefore a "telephone solicitor."

121. Plaintiff and putative Class Members replied "stop" to Defendants' telephonic sales text messages, but they continued.

122. Defendants' continued text messages to Plaintiff and putative Class Members after they replied "stop" to Defendants' text messages therefore violate § 501.059(5).

123. Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to be sent text messages, invading their privacy, wasting their time, and constituting a

17

---

Text Replaced
[Old]: "128."
[New]: "115."

Font "CenturySchoolbook" changed to "CalistoMT."

Text Deleted
"Defendant"

Text Deleted
"129."

Text Inserted
"116. Defendants"

Text Replaced
[Old]: "Stop Class members"
[New]: "Class Members"

Font "CenturySchoolbook" changed to "CalistoMT."

Text Deleted
"130."

Text Inserted
"117."

Text Replaced
[Old]: "Defendant's"
[New]: "Defendants'"

Font "CenturySchoolbook" changed to "CalistoMT."

Text Deleted
"Defendant,"

Text Deleted
"133."

Text Replaced
[Old]: "calls, was therefore a "telephone solicitor.""
[New]: "calls or causing them to be made, were therefore a "telephone solicitor." 121."

Font "CenturySchoolbook" changed to "CalistoMT."

Text Inserted
"120. Defendants,"

Text Replaced
[Old]: "entity"
[New]: "entities"

Font "CenturySchoolbook" changed to "CalistoMT."

Text Deleted
"135."

Comments from page 18 continued on next page

for the purpose of soliciting a sale of any consumer goods or services[.]" § 501.059(1)(j).

115.  "Consumer goods or services" means "real property or tangible or intangible personal property that is normally used for personal, family, or household purposes[.]" § 501.059(1)(c).

116.  Defendants sent text messages to Plaintiff and putative Class Members intended to solicit the sale of CPAP supplies.

117.  CPAP supplies, meant to work with a CPAP machine, qualify as "personal property" used for personal, family, or household purposes.

118.  Accordingly, CPAP supplies are "consumer goods or services."

119.  Defendants' text messages intended to solicit the sale of CPAP supplies were therefore "telephonic sales calls."

120.  Defendants, as the entities placing the telephonic sales calls or causing them to be made, were therefore a "telephone solicitor."

121.  Plaintiff and putative Class Members replied "stop" to Defendants' telephonic sales text messages, but they continued.

122.  Defendants' continued text messages to Plaintiff and putative Class Members after they replied "stop" to Defendants' text messages therefore violate § 501.059(5).

123.  Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to be sent text messages, invading their privacy, wasting their time, and constituting a



nuisance.

124.   For violations of § 501.059(5), Plaintiff and putative Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

125.   Plaintiff and putative Class Members are entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)**

126.   The TCPA establishes a National Do-Not-Call Registry of numbers not to be called or messaged with telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

127.   These regulations are codified at 47 CFR 64.1200(c)(1-2).

128.   Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

129.   A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

18

---

Text Deleted
"138."

Text Deleted
"Stop"

Text Inserted
"124."

Text Deleted
"Stop"

Text Replaced
[Old]: "139."
[New]: "125."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"152."

Text Deleted
"151."

Text Deleted
"150."

Text Deleted
"Defendant did not obtain the required "prior express written"

Text Deleted
""Prior express written consent" means a written agreement that "clearly authorizes the person making or allowing the placement of a telephonic "sales call by … text message … to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers[.]" § 501.059(1)(g)."

Text Deleted
"This regularity suggests an automated scheduled process where numbers would be queued up (e.g. dialed) by the system weekly during an automated process set to run that day."

Text Deleted
"Finally, Defendant's messages were sent exactly 1 week apart, on four separate occasions, all within 1 hour of each other (2:36 PM, 3:24 PM, 2:52 PM, 2:53 PM)."

Text Deleted
"Further, text messages from short codes, like Defendant's here, overwhelmingly, if not exclusively, use automated systems to make calls and send messages."

Text Deleted
"SnapWorx provides to Defendant a patient management platform that "makes complex decisions with AI"—short for Artificial Intelligence—including "queuing eligible patients, those most likely to order, and the highest priority to call next.""

Text Deleted
"Defendant's text messages through the SnapWorx platform used an automated system for the selection and dialing of telephone numbers."

Text Deleted
"143."

Text Deleted
"Each member of the putative Automated Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to receive automated messages, invading their privacy, wasting their time, and constituting a nuisance. 153. The use of an automated system to process and send these messages directly resulted in the "stop" requests of putative Automated Class being ignored in a way they likely would not have been with a human or manual review or process to send the messages. 154. For violations of the FTSA, § 501.059(8)(a), Plaintiff and putative Automated Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a). 155. Plaintiff and putative Automated Class Members are entitled to $1,500 should the Court find the violations willful. § 501.059(10)(b). THIRD CAUSE OF ACTION Violations of the FTSA, § 501.059(8)(a) (On Behalf of Plaintiff and the Prerecord Class)"

Comments from page 19 continued on next page

nuisance.

124.   For violations of § 501.059(5), Plaintiff and putative Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

125.   Plaintiff and putative Class Members are entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)**

126.   The TCPA establishes a National Do-Not-Call Registry of numbers not to be called or messaged with telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

127.   These regulations are codified at 47 CFR 64.1200(c)(1-2).

128.   Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

129.   A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

---

**Text Deleted**
"156. The FTSA prohibits a person from making "a telephonic sales call" if such call "involves … the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." § 501.059(8)(a). 157. "Prior express written consent" means a written agreement that "clearly authorizes the person making or allowing the placement of a telephonic sales call by … text message … to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers[.]" § 501.059(1)(g). 158. As discussed, Defendant placed prerecorded message calls to Plaintiff and putative Prerecord Class Members. 159. These calls were for the purpose of soliciting the sale of CPAP supplies, i.e. consumer goods or services. 160. Defendant placed the calls from, or directed the calls be placed from, Florida. 161. Defendant did not obtain the required "prior express written consent." 162. Thus, Defendant's prerecorded message calls violate the FTSA, § 501.059(8)(a). 163. Each member of the putative Prerecord Class by definition"

**Text Deleted**
"144."

**Text Deleted**
"145."

**Text Deleted**
"146."

**Text Deleted**
"147."

**Text Deleted**
"148."

**Text Deleted**
"149."

**Text Deleted**
"consent.""

**Text Deleted**
"Even if it had, it lost such consent when Plaintiff and putative Automated Class Members asked Defendant to "stop"."

**Text Deleted**
"Thus, Defendant's CPAP-supply text messages using the SnapWorx platform after Plaintiff and putative Automated Class Members asked Defendant to stop violate the FTSA, § 501.059(8)(a)."

**Text Deleted**
[Old]: "received more than one unwanted connected recorded message call, which is sufficient for Article III standing under 11th Circuit precedent. 164. For violations of the FTSA, § 501.059(8)(a), Plaintiff and putative Prerecord Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a). 165. Plaintiff and putative Prerecord Class Members are entitled to $1,500 should the Court find the violations willful. § 501.059(10)(b). FOURTH CAUSE OF ACTION Violations of the TCPA, 47 U.S.C. § 227(c) (On Behalf of Plaintiff and the Registry Class) 166."
[New]: "CAUSE OF ACTION Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c) 126."

Font "CenturySchoolbook" changed to "CalisMTBol".

**Text Deleted**
"24"

**Text Deleted**
"CAUSE OF ACTION Violations of the FTSA, § 501.059(8)(a) (On Behalf of Plaintiff and the Automated Class) 140. The FTSA prohibits a person from making "a telephonic sales call" if such call "involves an automated system for the selection or dialing of telephone numbers … without the prior express written consent of the called party." § 501.059(8)(a). 141. As discussed, Defendant's CPAP-supply text messages qualify as "telephonic sales calls", as the term includes text messages and Defendant's CPAP-supply text messages were intended to solicit the sale of consumer goods or services. 142. Defendant sent the messages from, or directed the messages to be sent from, Florida."

**Text Replaced**
[Old]: "169."
[New]: "129."

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "28"
[New]: "18"

Comments from page 19 continued on next page

nuisance.

124.  For violations of § 501.059(5), Plaintiff and putative Class Members are entitled to $500 per text message in statutory damages. § 501.059(10)(a).

125.  Plaintiff and putative Class Members are entitled to $1,500 per text message should the Court find the violations willful. § 501.059(10)(b).

### SECOND CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)**

126.  The TCPA establishes a National Do-Not-Call Registry of numbers not to be called or messaged with telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

127.  These regulations are codified at 47 CFR 64.1200(c)(1-2).

128.  Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

129.  A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

18

130.   A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

131.   A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

132.   Plaintiff and putative Class Members asked Defendant to "stop" sending its text message solicitations, terminating any established business relationship and any prior express invitation.

133.   Plaintiff and some Class Members telephone numbers were on the National Do-Not-Call Registry at the time of the calls.

134.   Plaintiff and Class Members thereafter received more than one text message soliciting the purchase of medical supplies in a 12-month period.

135.   Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance.

136.   For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff and putative Class Members are entitled to $500 per text.

137.   If the Court finds these violations to have been willful, Plaintiff and putative Class Members are entitled to $1500 per text.

19



Page: 20

Text Replaced
[Old]: "170."
[New]: "130."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "171."
[New]: "131."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"Registry"

Text Replaced
[Old]: "172."
[New]: "132."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "173."
[New]: "133."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced
[Old]: "putative Registry"
[New]: "some"

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"putative Registry"

Text Replaced
[Old]: "174."
[New]: "134."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Deleted
"Registry"

Text Replaced
[Old]: "175."
[New]: "135."

Font "CenturySchoolbook" changed to "CalistoMT".

Text Replaced

Comments from page 20 continued on next page

130.   A do-not-call request terminates an established business relationship for the purposes of telephone solicitations. 47 C.F.R. § 64.1200(f)(5).

131.   A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

132.   Plaintiff and putative Class Members asked Defendant to "stop" sending its text message solicitations, terminating any established business relationship and any prior express invitation.

133.   Plaintiff and some Class Members telephone numbers were on the National Do-Not-Call Registry at the time of the calls.

134.   Plaintiff and Class Members thereafter received more than one text message soliciting the purchase of medical supplies in a 12-month period.

135.   Each member of the putative Class has Article III standing as, by definition, each member took the time to ask Defendant to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance.

136.   For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff and putative Class Members are entitled to $500 per text.

137.   If the Court finds these violations to have been willful, Plaintiff and putative Class Members are entitled to $1500 per text.

### THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d)

138.   The TCPA requires companies to implement certain minimum policies and procedures prior to making any telemarketing call.

139.   These regulations are codified at 47 C.F.R 64.1200(d)(1-6).

140.   Specifically, a company may not initiate any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d).

141.   No presence on any registry is required under 47 C.F.R. § 64.1200(d).

142.   Defendants sent telemarketing texts without implementing several of these policies and procedures.

143.   Defendants do not have a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

144.   Plaintiff requested such a policy in August 2022 and it has yet to be provided making it, at minimum, not available upon demand.

145.   Defendants were also required to honor do-not-call requests, 47 C.F.R. § 64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6).

146.   Because Defendants sent telemarketing texts to Plaintiff and putative Class Members *after* they asked Defendant to stop, it did not comply with these requirements.

147.   Plaintiff received three telemarketing text messages in a 12-month period after asking Defendants to stop, and each putative Class Member received at least two.

20

Text Inserted
"THIRD CAUSE OF ACTION Violations of the TCPA, 47 U.S.C § 227(c) through 47 C.F.R. § 64.1200(d) 138. The TCPA requires companies to implement certain minimum policies and procedures prior to making any telemarketing call. 139. These regulations are codified at 47 C.F.R 64.1200(d)(1-6). 140. Specifically, a company may not initiate any call for "telemarketing purposes" to a residential telephone subscriber unless it has instituted certain minimum procedures. 47 C.F.R § 64.1200(d). 141. No presence on any registry is required under 47 C.F.R. § 64.1200(d). 142. Defendants sent telemarketing texts without implementing several of these policies and procedures. 143. Defendants do not have a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1). 144. Plaintiff requested such a policy in August 2022 and it has yet to be provided making it, at minimum, not available upon demand. 145. Defendants were also required to honor do-not-call requests, 47 C.F.R. § 64.1200(3), and to do so for 5 years, 47 C.F.R. § 64.1200(d)(6). 146. Because Defendants sent telemarketing texts to Plaintiff and putative Class Members after they asked Defendant to stop, it did not comply with these requirements. 147. Plaintiff received three telemarketing text messages in a 12-month period after asking Defendants to stop, and each putative Class Member received at least two."

Text Inserted
"20"

148.   A violation of 47 C.F.R. § 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(d)).

149.   For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d), Plaintiff and each putative Class Member is entitled to $500 per text.

150.   If the Court finds these violations to have been willful, Plaintiff and each putative Class Member is entitled to $1500 per text.

151.   Each member of the putative Class Member has Article III standing as, by definition, each member took the time to ask Defendants to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance.

152.   This injury is also fairly traceable as its violation of the law (e.g. failure to maintain a do-not-call policy or honor opt-out requests) led to the injury suffered here (e.g. continued texts after being asked to stop, thereby invading Class Member privacy).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff DeSouza, individually and on behalf of the proposed Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff DeSouza as the representative of the Class, and appointing his counsel as Class Counsel;

21

---

**Text Inserted**
"148. A violation of 47 C.F.R. § 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(d)). 149. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d), Plaintiff and each putative Class Member is entitled to $500 per text. 150. If the Court finds these violations to have been willful, Plaintiff and each putative Class Member is entitled to $1500 per text. 151. Each member of the putative Class Member has Article III standing as, by definition, each member took the time to ask Defendants to "stop" and continued to receive messages, invading their privacy, wasting their time, and constituting a nuisance. 152. This injury is also fairly traceable as its violation of the law (e.g. failure to maintain a do-not-call policy or honor opt-out requests) led to the injury suffered here (e.g. continued texts after being asked to stop, thereby invading Class Member privacy)."

**Text Replaced**
[Old]: "Classes,"
[New]: "Class,"

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "Classes"
[New]: "Class"

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "Classes"
[New]: "Class,"

Font "CenturySchoolbook" changed to "CalistoMT".

**Text Replaced**
[Old]: "30"
[New]: "21"

Page: 23



B.    An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(c) and § 501.059(5).

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages for violations of 47 U.S.C. § 227(c) and § 501.059(5).

E.    An award of treble damages;

F.    Such other and further relief that the Court deems just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: April 6, 2023      s/ Jeremy M. Glapion
                Jeremy M. Glapion
                **THE GLAPION LAW FIRM, LLC**
                1704 Maxwell Drive
                Wall, New Jersey 07719
                Tel: 732-455-9737
                Fax: 732-965-8006
                jmg@glapionlaw.com
                (*Pro Hac Vice*)

                Bradford R. Sohn
                Fla. Bar. No. 98788
                **THE BRAD SOHN LAW FIRM PLLC**
                1600 Ponce DeLeon Boulevard, Suite 1205
                Coral Gables, Florida 33134
                Tel: 786.708.9750
                Fax: 305.397.0650
                brad@sohn.com

                *Counsel for Plaintiff and the Putative Classes*

22