# EXHIBIT A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated, | Civil Case No.: 22-cv-1047 |
| **Plaintiff,** | |
| **v.** | **Class Action Settlement Agreement and Release** |
| **AEROCARE HOLDINGS LLC,** | |
| **Defendant.** | |

This Settlement Agreement and Release is entered into between and among Plaintiff Tyler DeSouza, on behalf of himself and all Settlement Class Members as defined herein, on the one hand, and Defendants AeroCare Holdings LLC ("AeroCare") and AdaptHealth Corp. ("AdaptHealth", and collectively with AeroCare, the "AdaptHealth Parties") on the other (collectively "Parties" or "Settling Parties").

1. **RECITALS**

WHEREAS, the above-captioned lawsuit is comprised of the Parties and claims alleged or that could have been alleged regarding the AdaptHealth Parties' alleged violations of the Telephone Consumer Protection Act ("TCPA"), Florida Telephone Solicitation Act ("FTSA"), and other federal and state laws (the "Litigation").

WHEREAS, Plaintiff has asserted statutory and injunctive claims, on his own behalf and on behalf of a Class of persons similarly situated, seeking monetary damages and other relief on behalf classes of persons who allegedly received telemarketing text messages from AeroCare after sending AeroCare a message saying "stop" ("Post-Stop Messages").

WHEREAS the AdaptHealth Parties deny all allegations of wrongful conduct and damages, denies liability to Plaintiff or the classes, asserts that its conduct and practices are lawful and proper, and asserts numerous procedural and substantive defenses to Plaintiff's claims, and the AdaptHealth Parties further deny that the Litigation satisfies the requirements to be tried as a class action under the applicable Federal Rules of Civil Procedure.

WHEREAS, the Parties have engaged in extensive arm's length negotiations concerning the claims alleged, the defenses presented, and the potential risk and uncertain outcomes of continued litigation for all Parties, as part of a mediation conducted by Rodney Max of Upchurch Watson White & Max, who possesses extensive experience in dispute resolution.

WHEREAS, Plaintiff has conducted a thorough investigation of the facts and claims alleged herein through litigation and discovery and as part of the settlement process and has taken into account the sharply contested issues involved in this litigation, the risks and costs to the Settlement Class of continued litigation, intervening changes in the law, the uncertain outcomes

of continued litigation and attendant appeals, and the substantial relief to be provided to the Settlement Class pursuant to this Settlement Agreement. Plaintiff believes a settlement on the terms set forth in this Settlement Agreement is fair, equitable, and in the best interests of the Settlement Class, and has thus agreed to settle this Litigation on the terms set forth herein as reached with the assistance of Rodney Max.

WHEREAS, the AdaptHealth Parties, though expressly disclaiming any liability or wrongful conduct, but nonetheless recognizing the uncertainty of continued litigation and appeals, desire to resolve this Litigation to avoid further expense, to eliminate risk, and to resolve all claims brought by Plaintiff on his own behalf and on behalf of the Settlement Class on the terms set forth in this Settlement Agreement, as reached with the assistance of Rodney Max, and have thus agreed to settle this Litigation.

WHEREAS, Plaintiff and the AdaptHealth Parties have agreed to settle and fully and finally resolve their disagreements on a claims-made basis for an amount equal to $160.00 for each Settlement Class Member who submits a valid claim consistent with the terms set forth herein, which shall include a full and complete release of the AdaptHealth Parties and Released Parties.

WHEREAS, the AdaptHealth Parties acknowledge that Plaintiff's and Class Counsels' actions made the AdaptHealth Parties aware of the issue causing the text messages at issue in this litigation and, as a result of these

actions, the AdaptHealth Parties fixed this issue, thereby preventing others from being sent Post-Stop Messages.

WHEREAS, the Parties stipulate that Plaintiff will file a Conditional Fourth Amended Complaint ("CFAC") along with their motion for preliminary approval of the Settlement and Notice Plan. The CFAC will contain causes of action against the AdaptHealth Parties substantially similar to those contained in the Third Amended Complaint against AeroCare.

2. **DEFINITIONS**

As used herein, the following terms have the meanings set forth below.

2.1. "Action" or "Litigation" means the action currently styled as *Tyler DeSouza v. AeroCare Holdings, LLC,* Case No. 22-cv-1047, U.S. District Court for the Middle District of Florida.

2.2. "Administrative Expenses" shall mean the costs of administering this Settlement Agreement from the date of execution through the completion of distribution of funds to the Settlement Class, including all amounts paid the Settlement Administrator, all costs of notice, and all costs of allocation and distribution of funds.

2.3. "AdaptHealth" means AdaptHealth Corp.

2.4. "AeroCare" means defendant AeroCare Holdings LLC.

- 4 -

2.5.   "Approved Claim" means a Claim submitted by a Settlement Class Member for a Cash Award that is timely and submitted in accordance with the terms of this Settlement Agreement.

2.6.   "Attorneys' Fees and Costs" means such funds as may be awarded to Class Counsel by the Court to compensate them for their reasonable attorneys' fees, costs and other litigation expenses incurred by Plaintiff or Class Counsel in connection with the Litigation and Settlement.

2.7.   "CAFA Notice" means the notice the AdaptHealth Parties must provide pursuant to 28 U.S.C. Section 1715(b).

2.8.   "Cash Award" means payment in the amount of $160.00 to a Settlement Class Member who submits an Approved Claim.

2.9.   "Claim" means a written request for Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form in a form substantially similar to the document attached as **Exhibit 1** to this Settlement Agreement or in the form as ultimately approved by the Court.

2.10.  "Claim Form" means a set of documents in a form substantially similar to **Exhibit 1** attached to this Settlement Agreement, or in the form as ultimately approved by the Court.

2.11.  "Claimant" means any Settlement Class Member who submits an Approved Claim confirming that they were a user of the Telephone Number to

which Post-Stop Messages were sent and recalls receiving such Post-Stop Messages.

2.12. "Class Counsel" means the law firms of Glapion Law Firm and The Brad Sohn Law Firm PLLC.

2.13. "Class Notice" means the program of notice described in Section 6 of this Settlement Agreement to be provided to potential Settlement Class Members, including the Mail Notice, Email Notice, and Website Notice on the Settlement Website, which will notify potential Settlement Class Members about, among other things, their rights to opt out or object to the Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.14. "Class Period" means November 23, 2018 through the date notice is provided to the settlement class.

2.15. "Class Representatives" means Plaintiff Tyler DeSouza.

2.16. "Court" shall mean the United States District Court for the Middle District of Florida and the U.S. District Judge to which this Action assigned.

2.17. "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Settlement Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included. Further, when computing any period of time prescribed or allowed by this Settlement Agreement, the last day of the period

so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.

2.18. "Deadlines." As used herein, the Parties agree to the following deadlines, subject to Court approval:

2.18.1. "Notice Deadline" means the last day for the Settlement Administrator to send Mail Notice and Email Notice to potential Settlement Class Members. Mail and Email Notice shall be sent no later than thirty (30) Days after the Court's Preliminary Approval Order, such date being subject to approval or modification by the Court.

2.18.2. "Fee Motion Deadline" means the last day for Plaintiff to file a motion for an award of Attorneys' Fees and Costs. The Fee Motion shall be filed twenty-five (25) days after the Notice Deadline, such date being subject to approval or modification by the Court.

2.18.3. "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Settlement Agreement in order to qualify them to be able to object to the Settlement. The Objection Deadline shall be sixty (60) days after the Notice Deadline, such date being subject to approval or modification by the Court.

2.18.4. "Opt Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Settlement Agreement in order for a potential Settlement Class Member to be excluded from the Settlement Class. The Opt-Out Deadline shall be sixty (60) Days after the Notice Deadline, such date being subject to approval or modification by the Court.

2.18.5. "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member must be postmarked or submitted electronically, which will be sixty (60) Days after the Notice Deadline, such date being subject to approval or modification by the Court. All Claims postmarked or submitted electronically at the Settlement Website on or before the Claim Deadline shall be timely, and all Claims postmarked or submitted electronically at the Settlement Website after the Claim Deadline shall be untimely and barred from entitlement to any Settlement Relief.

2.18.6. "Final Approval Motion Deadline" means the date by which Class Counsel shall file the motion seeking final approval of the Settlement. The Final Approval Motion Deadline shall be thirty (30) Days after the Objection and Opt-Out deadline, such date being subject to approval or modification by the Court.

2.19. "Defense Counsel" means the law firm of K&L Gates LLP.

2.20. "Final" with respect to the Final Approval Order, the Judgment, and any award of Attorneys' Fees and Costs means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Costs) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Final Approval Order and/or Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Final Approval Order and/or Judgment shall not become Final.

2.21. "Final Approval" means the later date on which (1) the Court enters final judgment, (2) the Court enters final approval of attorneys' fees and expenses, and/or (3) all appellate rights with respect to this Settlement Agreement have expired or have been exhausted.

2.22. "Final Approval Order" means the Order Granting Final Approval of Class Action Settlement and Dismissing Class Plaintiff's Claims, to be entered by the Court pursuant to the Settlement, the effect of which is the dismissal with prejudice of the Litigation and release of claims brought therein by Plaintiff and the Settlement Class.

2.23. "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Settlement Agreement are fair,

reasonable, and adequate for the Settlement Class as a whole, and whether the Final Approval Order and the Judgment should be entered. The Parties shall seek to have the Final Approval Hearing on a date not earlier than one-hundred and twenty-five (125) Days after the Notice Deadline, such date being subject to approval or modification by the Court.

2.24.  "Final Settlement Date" means the earliest date on which both the Final Approval Order and the Judgment are Final (as defined in Section 2.20). If no appeal has been taken from the Final Approval Order or the Judgment, the Final Settlement Date means the day after the last date on which either the Final Approval Order or the Judgment could be appealed. If any appeal has been taken from the Final Approval Order or from the Judgment, the Final Settlement Date means the date on which all appeals of either the Final Approval Order or the Judgment, including petitions for rehearing, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Approval Order and the Judgment.

2.25.  "Judgment" means the judgment to be entered by the Court pursuant to Final Approval Order.

2.26.  "Notice" means as follows:

2.26.1.  "Postcard Notice" means the notice that is mailed by the Settlement Administrator to potential Settlement Class Members, in a form

substantially similar to **Exhibit 2** attached to this Settlement Agreement and/or as ultimately approved by the Court. The Postcard Notice will be a double postcard that includes a tear-off Claim Form with prepaid postage.

2.26.2.   "Email Notice" means the notice that is emailed by the Settlement Administrator to potential Settlement Class Members, in a form substantially similar to **Exhibit 3** attached to this Settlement Agreement and/or as ultimately approved by the Court.

2.26.3. "Website Notice" means the long form notice that is available to Settlement Class Members on the Settlement Website, in a form substantially similar to **Exhibit 4** attached to this Settlement Agreement and/or as ultimately approved by the Court.

2.27. "Notice and Administrative Costs" means all reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Relief.

2.28.  "Plaintiff" means Tyler DeSouza.

2.29. "Post-Stop Message" means a text message the AdaptHealth Parties allegedly sent to a Settlement Class Member after the Settlement

Class Member had sent a text to the AdaptHealth Parties saying "stop" or its equivalent.

2.30. "Preliminary Approval Motion" means Plaintiff's motion for the Court to approve the Settlement preliminarily and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.

2.31. "Preliminary Approval Order" means the order entered by the Court that provides for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to potential Settlement Class Members; and a finding that the proposed Class Notice is reasonably calculated to apprise potential Settlement Class Members of the material terms of the proposed Settlement, and potential Settlement Class Members' options and rights with respect thereto.

2.32. "Qualifying Text" means a second Post-Stop Message within a 12-month period.

2.33. "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of this Settlement Agreement.

2.34. "Released Claims" means the claims released as provided for in Section 10 of this Settlement Agreement.

2.35. "Released Persons" means: the AdaptHealth Parties and each of their respective divisions, parents (including AdaptHelath Corp.), subsidiaries, affiliates, predecessors, investors, and parent companies, any direct or indirect subsidiary of the AdaptHealth Parties and their insurers and vendors and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and all of the past or present officers, directors, employees, agents, brokers, distributors, contractors, representatives, owners, and attorneys of all such entities.

2.36. "Releasing Persons" means Plaintiff, all Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

2.37. "Request for Exclusion" means a written request from a potential Settlement Class Member that seeks to exclude the potential Settlement Class Member from the Settlement Class and that complies with all requirements in Section 11 of this Settlement Agreement.

2.38. "Settlement" means the settlement set forth in this Settlement Agreement.

2.39. "Settlement Administrator" or "Claims Administrator" or "Class Administrator" means KCC Class Action Services LLC.

2.40. "Settlement Agreement" means this Settlement Agreement and Release, including all exhibits thereto.

2.41.  "Settlement Class" or "Class" means the class of persons that will be certified by the Court for settlement purposes only, as more fully described in Section 3.1 herein.

2.42.  "Settlement Class Member" means any person who falls within the definition of the Settlement Class and who does not submit a valid Request for Exclusion.

2.43.  "Settlement Relief" means payment by the AdaptHealth Parties to Settlement Class Members who submit Approved Claims.

2.44.  "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section 6.4 of this Settlement Agreement, which shall have the Uniform Resource Locator ("URL") of www.AdaptHealthTCPASettlement.com.

2.45.  "Settling Parties" means, collectively, the AdaptHealth Parties, Plaintiff Tyler DeSouza, and all Releasing Persons.

## 3.  CLASS DEFINITION AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT

3.1.  The Settling Parties agree to seek approval of the following "Settlement Class":

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages

("Class")

The AdaptHealth Parties represent and warrant that there are 32,035 unique telephone numbers contained in the Settlement Class. That number is subject to confirmation through confirmatory discovery.

3.2.    Excluded from the Class are the AdaptHealth Parties and any entities in which they have a controlling interest; the AdaptHealth Parties' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

3.3.    This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below. If the Settlement is not finally approved, and the Parties fail, after good faith efforts discussed in section 14.3 below, to resolve the issues precluding Final Approval, The AdaptHealth Parties shall be refunded any money that has not yet been expended, and the Litigation will resume as if there had been no conditional certification of the Settlement Class and no settlement.

3.4.    <u>Condition No. 1: District Court Approval</u>. The Settlement must be approved by the Court in accordance with the following steps:

3.4.1. <u>Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice</u>. After good-faith consultation with Defense Counsel, Class Counsel will present a Preliminary Approval

Motion to the Court. The Preliminary Approval Motion shall include Class Notice, in forms substantially similar to **Exhibits 1 through 4** attached hereto. The Settling Parties shall, in good faith, take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order.

3.4.2. <u>Settlement Class Conditional Certification</u>. Solely for the purposes of settlement, providing Class Notice, and implementing this Settlement Agreement, Plaintiff shall seek (and the AdaptHealth Parties will not oppose) orders of preliminary and final approval of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Settlement is not finalized or finally approved by the Court for any reason whatsoever and the Parties fail, after good faith efforts discussed in section 14.3 below, to resolve the issues precluding Approval, the certification of the Settlement Class is voidable by any Party, the Litigation will return to its status as it existed prior to this Settlement Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated class certification proceedings or otherwise asserted in any other aspect of the Litigation or in any other proceeding.

3.4.3. <u>CAFA Notice</u>. The AdaptHealth Parties shall be responsible for timely compliance with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b). The mailings required by CAFA will be performed by the Class Administrator. No later than fifteen (15) days after

Plaintiff files his Motion for Preliminary Approval, the Class Administrator shall file with the Court one or more declarations stating that the Class Administrator has complied with the mailings required by the CAFA notice obligations.

  3.4.4. <u>Entry of Preliminary Approval Order</u>. The Parties will request that the Court enter a Preliminary Approval Order, which shall, among other things:

    (a) Certify for purposes of settlement a nationwide Settlement Class, approving Plaintiff as class representative, and appointing Class Counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

    (b) Preliminarily approve the Settlement as fair, reasonable and adequate;

    (c) Order the issuance of Class Notice to the Settlement Class, and determine that such Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

    (d) Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

    (e) Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for

exclusion by the Opt-Out Deadline, as directed in this Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

        (f)      Require Settlement Class Members who wish to object to this Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in this Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

        (g)      Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement this Settlement Agreement; and

        (h)      Issue related orders to effectuate the preliminary approval of this Settlement Agreement.

        3.4.5. <u>Issuance of Class Notice</u>. Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

        3.4.6. <u>Final Approval Hearing</u>. In connection with the Preliminary Approval Motion, the Parties shall request that the Court schedule and conduct a hearing at least 125 days after the Notice Deadline, at which time it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically,

Plaintiff, after good faith consultation with Defense Counsel, shall request that, on or after the Final Approval Hearing, the Court: (i) enter the Final Approval Order and the Judgment; and (ii) determine the Attorneys' Fees and Costs that should be awarded to Class Counsel as contemplated in this Settlement Agreement. The Settling Parties agree to support entry of the Final Approval Order and the Judgment. The Settling Parties will reasonably cooperate with one another in seeking entry of the Final Approval Order and of the Judgment.

3.5.   <u>Condition No. 2: Finality of Judgment</u>. The Court shall enter the Final Approval Order and the Judgment. The Final Approval Order and the Judgment must become Final in accordance with Section 2.20 above, and shall, among other things:

(a)     Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in the Litigation; and (3) venue is proper;

(b)     Finally approve this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as fair, reasonable, and adequate;

(c)     Finally certify the Settlement Class for settlement purposes only;

(d)     Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

(e)     Enter the Final Approval Order and the Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members with prejudice;

(f)     Make the Releases in Section 10 of this Settlement Agreement effective as of the date of Final Approval;

(g)     Permanently bar Plaintiff and all Settlement Class Members who have not opted out of the Settlement from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

(h)     Find that, by operation of the entry of the Judgment, Plaintiff and all Settlement Class Members who have not opted out of the Settlement shall be deemed to have forever released, relinquished, and discharged the Released Persons from any and all Released Claims;

(i)     Authorize the Settling Parties to implement the terms of this Settlement Agreement;

(j)     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of this Settlement Agreement,

the Final Approval Order, and the Judgment, and for any other necessary purpose; and

(k)     Issue related orders to effectuate the Final Approval of this Settlement Agreement and its implementation.

## 4.     SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

In consideration for the Releases set forth in Section 10:

4.1.   The AdaptHealth Parties represent that there are 32,035 telephone numbers meeting the criteria set forth in the Settlement Class definition, and these numbers received a total of approximately 220,000 text messages meeting the definition set forth in the Settlement Class definition. These representations are subject to confirmatory discovery.

4.1.1. Upon Final Approval of the Settlement, and after receiving specific payment instructions and all required tax information from the Class Administrator and all information needed to determine the identities of Claimants, the AdaptHealth Parties will deposit the sum of any awarded Attorneys' Fees and Costs, plus $160 per Approved Claim, into an interest-bearing escrow account maintained by the Class Administrator. The Class Administrator will hold these amounts until such time as the Parties authorize the distribution of the funds to Claimants. Unless otherwise ordered by the

Court, the timing of this distribution shall follow the timing found in section 7.5.

4.1.2. All Cash Awards issued to Claimants via check will state on the face of the check that the check will expire and become null and void unless cashed within one hundred and eighty (180) Days after the date of issuance. Cash Awards can be made via other means as well, such as electronic deposit, Paypal, Venmo or other electronic payment options, subject to the capabilities of the Class Administrator.

4.1.3. If any such payment is returned by the U.S. Postal Service as undeliverable, or is not negotiated before it expires, neither the AdaptHealth Parties, the Settlement Administrator, nor Class Counsel shall have any further obligations to any of the Settlement Class Members as to these payments, except that:

4.1.3.1.    For any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will mail the check to the forwarding address;

4.1.3.2.    If any of the Settlement Class Members contacts the Settlement Administrator or Class Counsel to request a replacement check, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check, but the replacement check shall

expire on the same date as the original check and the replacement check will state this on its face;

4.1.3.3.    For any digital payment that fails or is otherwise rejected, the Settlement Class Payment for which the payment was intended will be provided the opportunity to select a new digital payment method *or* to receive a physical check; and

4.1.3.4.    It is the Parties' intent to distribute all Cash Awards for Approved Claims to Settlement Class Members. If, after distributing the Cash Awards for Approved Claims as set forth in this Section 4, any cash remains from uncashed checks, the Parties will jointly select a *cy pres* recipient, and Plaintiff will move the Court for the Court's approval to have such cash from uncashed checks paid to the *cy pres* recipient. Under no circumstances shall any cash that was intended to be distributed as a Cash Award on an Approved Claim revert or otherwise be returned to the AdaptHealth Parties.

4.2    In addition to the payment of Cash Awards to Claimants, the AdaptHealth Parties agree and acknowledge that the actions of Plaintiff and Class Counsel made them aware of the Post-Stop Messages, causing them to take the steps to correct the cause of the Post-Stop Messages and to ensure that Post-Stop Messages will not continue, thereby preventing an unknowable but significant number of additional Post-Stop Messages from being sent.

5.      **RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS**

5.1.    The parties agree that the Settlement Administrator will be responsible for all matters relating to the administration of this Settlement, as set forth herein. Those responsibilities include, but are not limited to, giving notice to the class, mailing the CAFA notices, obtaining updated addresses for Settlement Class Members, obtaining email addresses for Settlement Class Members,  setting up and maintaining the Settlement Website and toll-free telephone number with interactive voice response ("IVR") technology, fielding inquiries about the Settlement, processing claims, acting as a liaison between Settlement Class Members and the Parties regarding claims information, approving Claims, rejecting any Claim Form where there is evidence of fraud (as determined by the Claims Administrator under policies and procedures developed by the Claims Administrator and approved by the Parties), directing the mailing or electronic distribution of Cash Awards to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing. The Claims Administrator will provide weekly updates on the claims status to counsel for all Parties.

5.2.    All Notice and Administrative Costs will be paid by the AdaptHealth Parties.

5.3.    The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner. Without limiting any of its other

obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, Email Notice, Website Notice, the Settlement Website, administration of Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Settlement Agreement.

5.4.    Both parties will coordinate with the Settlement Administrator to provide Notice to the Settlement Class, as provided in this Settlement Agreement.

5.5.    W9 Forms. The Settlement Administrator shall complete and provide to the AdaptHealth Parties any W9 forms necessary for the AdaptHealth Parties to implement this Settlement.

## 6.    NOTICE TO THE SETTLEMENT CLASS

6.1.    <u>Sources of Settlement Class Data</u>. AdaptHealth maintains name, address, and email address information that is or was previously associated with Settlement Class Member telephone numbers. AdaptHealth will provide this information to the Settlement Administrator within five (5) days of any order granting Preliminary Approval.

6.2.    <u>Email Notice</u>. The Settlement Administrator will send Email Notice of the Settlement to any email addresses provided to it no later than thirty (30) days after the Court's Preliminary Approval Order, in a form substantially similar to **Exhibit 3** to this Settlement Agreement or as ultimately approved by the Court. The Email Notice shall detail how

Settlement Class Members may make a Claim for Settlement Relief, may opt out of the Settlement (as described in Section 11), or object to the Settlement (as described in Section 12). The Email Notice shall also include the Settlement Class Member's Unique Identification Number; a link to the Settlement Website (as described in Section 6.4), at which copies of the Settlement Agreement, Website Notice, Claim Form, and other relevant case filings may be downloaded, and where Claims may be submitted; and the Toll-Free Settlement Hotline (as described in Section 6.5)

6.3. <u>Mail Notice</u>. The Settlement Class Administrators shall mail Postcard Notice to any physical mailing addresses provided to it (collectively, "Mailing List"), in a form substantially similar to **Exhibit 2** to this Settlement Agreement or as ultimately approved by the Court. The Postcard Notice will be mailed no later than thirty (30) days after the Court's Preliminary Approval Order. The Settlement Administrator shall check the Mailing List against the National Change of Address database ("NCOA") before mailing.

6.3.1 The Postcard Notice shall detail how Settlement Class Members may make a Claim for Settlement Relief, may opt out of the Settlement (as described in Section 11), or object to the Settlement (as described in Section 12). The Postcard Notice shall also include the Settlement Class Member's Unique Identification Number; a link to the Settlement Website (described in Section 6.4) at which copies of the Settlement

Agreement, Website Notice, Claim Form, and other relevant case filings may be downloaded, and where Claims may be submitted; and the Toll-Free Settlement Hotline (as described in Section 6.5)

6.3.2 For any Postcard Notice returned as undeliverable, the Settlement Administrator shall attempt to obtain an updated or correct address using TransUnion Reverse Lookup Data or similar and will attempt one (1) re-mailing of the Postcard Notice to the newly identified address;

6.3.3 For any Email Notices that are returned as undeliverable, the Settlement Administrator will make two more attempts to deliver the Email Notice.

6.4.    Settlement Website. No later than the deadline to send Email and Postcard Notice, the Settlement Administrator shall establish a Settlement Website, which shall contain the Website Notice, in a form substantially similar to **Exhibit 4**, copies of the Settlement Agreement, Claim Form, and other relevant case filings which may be downloaded. The Settlement Website shall require Settlement Class Members input their Unique Identification Number. The Settlement Website shall contain instructions and allow Settlement Class Members to submit a Claim, which will include inputting their telephone number to determine if, in fact, they are a member of the Settlement Class. The Settlement Website shall have a URL which identifies the Settlement Website as www.AdaptHealthTCPASettlement.com.

6.4.1.     The Settlement Website shall remain open and accessible for not less than thirty (30) Days after the last day to cash any check mailed to Settlement Class Members.

6.4.2. All costs associated with the Settlement Website will be paid by the AdaptHealth Parties.

6.5.     <u>Toll-Free Settlement Hotline</u>. The Settlement Administrator will establish and maintain an automated toll-free telephone line with IVR technology for persons in the Settlement Class to call for information regarding the Settlement, which will include instructions for how Settlement Class Members can submit a Claim, consistent with the terms of this Settlement Agreement. The Parties will mutually approve of scripts used by the Settlement Administrator in connection with the IVR process.

## 7.     CLAIM FILING, REVIEW, AND APPROVAL PROCESS

7.1.     <u>Claim Filing Process</u>. Settlement Class Members shall be permitted to make a Claim for Settlement Relief in one of two ways:

(a)     By completing an online Claim Form available on the Settlement Website and submitting that Claim Form online or by mail; or

(b)     By mailing the tear-off double sided prepaid postcard claim form.

7.2.     Any Settlement Class Member who does not submit a completed Claim Form on or before the Claim Deadline shall be deemed to have waived any claim to Settlement Relief and any such Claim Form will be rejected.

7.3.   <u>Claim Review Process</u>. As soon as practicable, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form was submitted in a timely fashion, and that the person submitting the Claim is a member of the Settlement Class. The Settlement Administrator shall employ reasonable audit procedures and may request additional information from Claimants as appropriate for verification purposes. In the event that more than one person submits a valid Claim with respect to the same telephone number, the Settlement Administrator shall send a follow-up Notice to each such persons requesting the time period during which they were a user of the telephone number. For any persons who providethe time period during which they were a user of the telephone number to the Settlement Administrator, the Settlement Administrator will compare that information with the dates of the texts to the number in AdaptHealth's records and the date of the Post-Stop text message. The Settlement Administrator will pay a Cash Award to each person who provides a date range that would place that person within the Settlement Class definition.

7.4.   <u>Notification</u>. Within thirty (30) Days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and the AdaptHealth Parties with a list of all Settlement Class Members who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason

it was rejected. The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

7.5.   <u>Timing of Distributions.</u> <u>Settlement Relief amounts and Attorneys'</u> <u>Fees and Costs shall be distributed within the time periods set forth below:</u>

7.5.1.   Within thirty (30) Days after the Final Settlement Date, the Settlement Administrator shall pay to Class Counsel any Attorneys' Fees and Costs awarded by the Court;

7.5.2.   Within thirty (30) days after the Final Settlement Date, the Settlement Administrator shall remit the appropriate Settlement Relief amounts by check or other electronic means as set forth in paragraph 4.1.2 to Claimants.

7.5.3.   Within sixty (60) days after the Final Settlement Date, the Settlement Administrator shall be paid for any unreimbursed costs of administration.

## 8.   COVENANTS

The Settling Parties covenant and agree as follows:

8.1.   <u>Covenant Not to Sue.</u> Plaintiff and Settlement Class Members covenant and agree not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims against any of the Released Persons. The foregoing covenant and this Settlement Agreement shall be a complete defense

to any of the Released Claims against any of the Released Persons. However, this Settlement Agreement is not intended to and does not prohibit a Settlement Class Member from responding to inquiries from federal, state or local agencies and/or law enforcement, even if the inquiries relate to the Released Claims. Similarly, this Settlement Agreement is not intended to and does not prohibit a Settlement Class Member from bringing his or her concerns to federal, state or local agencies and/or law enforcement, even if those inquiries relate to the Released Claims.

8.2.   <u>Cooperation</u>. The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of the Final Approval Order and the Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all Class Notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court.

## 9.     REPRESENTATIONS AND WARRANTIES

9.1.   Plaintiff's Representations and Warranties.

9.1.1. Plaintiff represents and warrants that he is the sole and exclusive owner of all his own Released Claims and has not assigned or

otherwise transferred any interest in any of his Released Claims against any of the Released Persons, and further covenant that he will not assign or otherwise transfer any interest in any of his Released Claims.

      9.1.2.  Plaintiff represents and warrants that he has no surviving claim or cause of action against any of the Released Persons with respect to any of the Released Claims.

    9.2.   The AdaptHealth Parties' Representations and Warranties.

      9.2.1.  The AdaptHealth Parties represent and warrants that there are 32,035 telephone numbers contained in the Settlement Class.

      9.2.2.  The AdaptHealth Parties represent and warrant that they have provided Plaintiff with true and accurate information as to the Settlement Class size and number of text messages.

    9.3.   The Settling Parties' Representations and Warranties. The Settling Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing this Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as provided herein, they

have not been influenced to any extent whatsoever in executing this Settlement Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party to this Settlement Agreement. Each of the Settling Parties assumes the risk of mistake as to facts or law.

**10.    Releases.**

10.1.  <u>Released Claims of Settlement Class</u>. Upon Final Approval, each member of the Settlement Class shall, by operation of the Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons in all capacities, including individual and trustee capacities, from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of the Post-Stop texts that were sent during the Class Period, the records of which AdaptHealth maintains. This release includes any

and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder, and any and all claims for violation of any laws of any state, including the Florida Telephone Solicitation Act, § 501.059 *et seq.*, that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of texts to persons who asked not to be called or to be placed on an internal do-not-call list.

10.2.  Without in any way limiting their scope, the Released Claims cover by example and without limitation, any and all claims for attorneys' fees or costs incurred by Class Counsel, Plaintiff, or any Settlement Class Members in connection with or related in any manner to this Settlement, the administration of this Settlement, and/or the Released Claims, except to the extent otherwise specified in this Settlement Agreement.

10.3.  In connection with the Releases in Section 10.1 and 10.2, and without expanding their scope in any way, Plaintiff and each Settlement Class Member shall be deemed, as of the date of Final Approval, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, which if known by him or her, would have materially affected his or her settlement with the debtor or released party.

10.4.  This Settlement Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.5. The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement this Settlement Agreement, including, but not limited to, enforcement of the Releases contained in this Settlement Agreement. The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of this Settlement Agreement.

10.6.  Upon entry of the Final Approval Order and the Judgment: (i) this Settlement Agreement shall retain exclusive jurisdiction to enforce the Settlement, and shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s) except as set forth in this Settlement Agreement; and (iii) Settlement Class Members who have not opted out shall be permanently barred from filing, commencing, prosecuting, intervening in, or

participating in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims.

10.7.  Nothing in this Settlement Agreement or Release is intended to abrogate or limit the use, as evidence, of any "stop" request made prior to the Final Settlement Date, should subsequent text messages be sent to any Settlement Class Member. For example, in the event a Settlement Class member receives two or more text messages after the Final Settlement Date, that Settlement Class Member is not barred from using evidence of a "stop" request made prior to the Final Settlement Date to indicate the date on which that Settlement Class Member asked the AdaptHealth Parties to "stop".

10.8.  Nothing in this Settlement Agreement shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth herein are not intended to include the release of any rights or duties of the Settling Parties arising out of this Settlement Agreement, including the express warranties and covenants contained herein.

10.9.  In the event the AdaptHealth Parties discover, after the Notice Deadline, more than forty (40) additional telephone numbers meeting the Settlement Class definition, the Parties may agree to enter into an additional supplemental settlement agreement, on the same terms as set forth herein (as applicable), to cover those additional telephone numbers. No telephone number

(or associated person) identified after the Notice Deadline shall be subject to any Release or obligations contained herein.

## 11.   OPT-OUT RIGHTS.

11.1.   A potential Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a Request for Exclusion that is postmarked no later than the Opt Out Deadline. The Request for Exclusion must: (a) identify the name and address of the potential Settlement Class Member requesting exclusion; (b) provide the phone number at which that potential Settlement Class Member was sent a Qualifying Text by the AdaptHeath Parties, or someone acting on their behalf, during the Class Period; (c) be personally signed by the potential Settlement Class Member requesting exclusion; and (d) contain a statement that reasonably indicates a desire to be excluded from the Settlement.

11.2.   Any potential member of the Settlement Class who properly opts out of the Settlement Class by complying with all the requirements set forth in the preceding paragraph shall: (a) not be bound by any orders or judgments relating to the Settlement; (b) not be entitled to relief under, or be affected by, this Settlement Agreement; (c) not gain any rights by virtue of this Settlement Agreement; and (d) not be entitled to object to any aspect of the Settlement.

11.3.  The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests for Exclusion within seven (7) Days after the Opt Out Deadline.

11.4.  Except for those potential members of the Settlement Class who timely and properly file a Request for Exclusion in accordance with Section 11, all other potential members of the Settlement Class will be deemed to be Settlement Class Members for all purposes under this Settlement Agreement, and upon Final Approval, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.   OBJECTIONS.

12.1.  Overview. Any potential Settlement Class Member who does not opt out of the Settlement will be a Settlement Class Member and may object to the Settlement. To object, the Settlement Class Member must comply with the procedures and deadlines in this Settlement Agreement.

12.2.  Process. Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order. The written objection must be filed with the Clerk of Court no later than the Objection Deadline.

12.2.1.     The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be

valid, the written objection must include: (a) the name, address, and telephone number of the Settlement Class Member objecting and, if different, the telephone number at which the Settlement Class Member was sent a Qualifying Text by the AdaptHealth Parties during the Settlement Class Period; (b) if represented by counsel, the name, address, and telephone number of the Settlement Class Member's counsel; (c) the basis for the objection; and (d) a statement of whether the Settlement Class Member objecting intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2.    Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with all of the requirements of this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of this Settlement Agreement by appeal or other means.

12.3.  <u>Appearance</u>. Subject to approval of the Court, any Settlement Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court

a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1.    The Notice of Intention to Appear must include the Settlement Class Member's full name, address, and telephone number, as well as copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2.    Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in this Settlement Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing or raise any objections.

## 13.    SETTLEMENT APPROVAL.

13.1. Plaintiff shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2. Not later than seven (7) Days before the Final Approval Motion Deadline, the Settlement Administrator will provide the Parties with a declaration that the Class Notice has been disseminated in accordance with the Preliminary Approval Order. The declaration shall identify the number of

Requests for Exclusion to the Settlement, along with the number of claims received to date.

## 14. CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT PURPOSES.

14.1. The Parties entered this Settlement Agreement solely for the purposes of fully and finally resolving the Litigation along the lines and terms set forth herein. Nothing in this Settlement Agreement shall be construed as an admission by the AdaptHealth Parties or the Released Parties of any wrongdoing as asserted in the Litigation, or that this Litigation or any similar case is amenable to class certification for purposes of trial, or that any of the Released Claims are meritorious in any respect.

14.2. The Parties agree, for the sole purpose of effecting a settlement, and upon the express terms and conditions set out in this Settlement Agreement, Plaintiff shall seek, and the AdaptHealth Parties will not oppose, certification of the Settlement Class defined above. Plaintiff, on behalf of themselves and the Settlement Class, acknowledge and agree that if this Settlement Agreement is not fully and finally approved by the Court without material change, the settlement is voidable at the election of either Party and, if voided, that the AdaptHealth Parties have not waived and has expressly reserved the right to challenge the certification of the Settlement Class and the substantive merits of Plaintiff's claims in the Litigation, and to object to

and appeal any order entered in any of the cases that comprise the Litigation. Nothing in this Settlement Agreement may be used in any judicial or administrative proceeding regarding the propriety of class certification outside of settlement. The Court's certification of the Settlement Class is not and shall not be deemed to be the adjudication of any fact or issue for purpose other than the accomplishment of the Settlement.

14.3. If this Settlement is not approved by the Court for any reason, or is modified by the Court (including change to the release provided herein), or is otherwise terminated, then the Parties agree to attempt in good faith to resolve any resolvable issues leading to the lack of approval or modification, including, if the issue cannot be resolved between the Parties, through an additional mediation with Rod Max. In the event these good faith efforts fail, (1) this Settlement Agreement shall have no legal or persuasive effects and shall immediately become null and void, and the Parties expressly agree to do whatever is necessary legally and procedurally to return this Litigation to its pre-settlement status, including filing all necessary joint motions; (2) this settlement and all aspects of it, including but not limited to, all negotiations, terms and documents created as a result of negotiations or the proposed settlement may not be used for any purpose in this or any other legal action unless the subject of that legal action is the settlement of the Litigation; (3) the Litigation shall revert to the same procedural and legal status existing prior

to the Parties entering into this Settlement Agreement; (4) the Settlement Class shall be automatically decertified, and the Parties shall take whatever action is appropriate so that the Parties can be restored to their pre-settlement positions, and (5) all monies paid to the Settlement Administrator that had not been used at that time shall be returned to the AdaptHealth Parties within fourteen (14) days.

## 15.   ATTORNEYS' FEES AND COSTS.

15.1.  Class Counsel will petition the Court for an award of Attorneys' Fees and Costs for all attorney services and expenses related to this Litigation, including but not limited to, services rendered and to be rendered in connection with the Settlement Agreement and its implementation. The amount of Attorneys' Fees and Costs to be awarded to Class Counsel and payable in accordance with Sections 4.1.1 and 7.5, unless otherwise agreed, shall be determined by the Court. Class Counsel agree they will not seek or accept Attorneys' Fees exceeding 25 percent of the amount calculated by multiplying the Cash Award ($160) by the number of Settlement Class Members (currently understood to be 32,035) ("Fee Calculation")[1], plus their actual costs. The AdaptHealth Parties reserve the right to object to the petition for Attorneys' Fees and Costs, or any part thereof. Under no circumstances may Plaintiff, the

---

[1] The Fee Calculation for purposes of paragraph 15.2 and the AdaptHealth Parties right to terminate the agreement shall be the greater of 25% of $160 * 32,035, or 25% of $160 * the actual number of Settlement Class Members.

Class, or Class Counsel seek or accept Attorneys' Fees that exceed the Fee Calculation. The Attorneys' Fees and Costs shall be awarded in addition to the amounts paid to the Settlement Class. In other words, the amounts paid to the Settlement Class will not be reduced by the amount of Attorneys' Fees and Costs awarded.

15.2.   The cap on Attorneys' Fees described herein is a material aspect of this Agreement. In the event Plaintiff, the Settlement Class, or Class Counsel accept any amount of Attorneys' Fees (exclusive of costs) that, in total, exceeds the Fee Calculation, the AdaptHealth Parties shall have the right terminate this Agreement. If the AdaptHealth Parties elect to exercise its right of termination, they shall have no obligation to make any further payments required by this Agreement, and any money held in escrow by the Settlement Administrator shall be returned to the AdaptHealth Parties with five (5) days.

15.3. The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Costs are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Costs and Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Final Approval Order or Judgment approving

this Settlement Agreement and the Settlement, except as provided for in Section 15.2.

## 16. TERMINATION AND EFFECT THEREOF.

16.1. This Settlement Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied unless the relevant conditions are waived in writing signed by authorized representatives of Plaintiff and the AdaptHealth Parties.

16.2. This Settlement Agreement shall also terminate at the discretion of Plaintiff or the AdaptHealth Parties if, in the good faith exercise of discretion: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the Final Approval Order or Judgment, or any of the Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur. Prior to terminating the Agreement on any of the aforementioned grounds, however, the Parties shall first follow the good faith resolution procedures outlined in section 14.3 to determine if and how any of the

- 45 -

identified issues can be resolved. Disagreements about "materiality" will be submitted to the Court for a binding determination prior to engaging in the process described in section 14.3.

16.3.  If the Settlement Agreement is terminated as provided herein, the Settlement shall be null and void from its inception, and the Settling Parties will be restored to their respective positions in the Litigation as of the day prior to the date of the Preliminary Approval Order. In such event, the Parties shall move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Settlement Agreement, including any order certifying the Settlement Class for settlement purposes. Further, in such event, the terms and provisions of this Settlement Agreement will have no further force and effect with respect to the Settling Parties and will not be used in the Litigation, or in any other proceeding for any purpose, shall not be deemed or construed to be an admission or confession by the Parties of any fact, matter, or proposition of law, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, nunc pro tunc.

## 17.  MISCELLANEOUS PROVISIONS

17.1. The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of

this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

17.2. The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The amounts paid are to compromise the Claimants' claims for damages and the amounts paid represent the Claimants' compensation for such alleged damages.

17.3. Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of the AdaptHealth Parties.

17.4. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

17.5.  All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

17.6.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of Plaintiff and the AdaptHealth Parties or their respective successors-in-interest. Any material changes must be approved by the Court.

17.7.  This Agreement and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein. Except as otherwise provided herein, no Settling Party shall be responsible for paying fees, expenses, or other costs incurred by any other Settling Party.

17.8.  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

17.9.  No party shall file any materials with the Court in support of the settlement that are inconsistent with the terms of this Settlement Agreement.

17.10.    The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

17.11.     None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

17.12.     The Settlement shall be governed by the laws of the State of Florida, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

17.13.     The following principles of interpretation apply to the Agreement: (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successors-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

17.14.     The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Final Approval Order and Judgment are entered.

17.15.     The Parties may execute this Settlement Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument. Electronic copies of the

executed Settlement Agreement shall be considered an original and may be relied upon as such.

17.16.    All members of the Settlement Class shall be responsible for paying any and all federal, state, and local taxes, if any, due on the payments made to them under this Settlement Agreement. No opinion concerning the tax consequences of the proposed settlement to members of the Settlement Class or anyone else is given or will be given by the Parties or the Parties' counsel.

17.17.    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties to this Settlement Agreement, Class Counsel, and the members of the Settlement Class, and their respective heirs, predecessors, successors, and assigns. Nothing herein shall prevent the AdaptHealth Parties from assigning their rights and obligations.

17.18.    All notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by email and mail to the following addresses:

17.19.    All notices to Class Counsel shall be sent to Class Counsel, c/o:

Jeremy Glapion
Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Counsel for Plaintiff Tyler DeSouza and the Class

17.20.    All notices to Defense Counsel shall be sent to Defense

Counsel, c/o:

Joseph Wylie
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
joseph.wylie@klgates.com

Counsel for the AdaptHealth Parties

17.21.    The notice recipients and addresses designated above may

be changed by written agreement of Plaintiff and the AdaptHealth Parties.

17.22.    Upon request, the Parties agree to promptly provide each

other with copies of objections, Requests for Exclusion, or other similar

documents received from Settlement Class Members in response to the Class

Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and

caused this Settlement on the dates set forth below.

**On Behalf of Defendant AeroCare Holdings, LLC:**

Dated:  April 6, 2023                    By: _____

                                          Name:    Christopher Joyce

                                          Title:    Vice President


On Behalf of Defendant AdaptHealth Corp.

Dated:  April 6, 2023                    By: _____

                                          Name:    Christopher J. Joyce

                                          Title:    General Counsel


On Behalf of Plaintiff and the Settlement Class:

Dated: _____          By: _____

                                          Name: _____

## On Behalf of Defendant AeroCare Holdings LLC:

Dated:_____   By:_____

                                  Name:_____

                                  Title:_____

On Behalf of Defendant AdaptHealth Corp.

Dated:_____   By:_____

                                  Name:_____

                                  Title:_____

On Behalf of Plaintiff and the Settlement Class:

Dated: Apr 6, 2023                By: Tyler DeSouza (Apr 6, 2023 19:05 EDT)

                                  Name: Tyler DeSouza

**Approved as to form and content:**

| For Plaintiff Tyler DeSouza and the Class: | For AeroCare Holdings LLC: |
|---|---|
| GLAPION LAW FIRM | K&L Gates LLP |

By: s/ Jeremy M. Glapion

    Jeremy M. Glapion
    1704 Maxwell Drive
    Wall, New Jersey 07719
    jmg@glapionlaw.com
    P.: 732-455-9737
    F.: 732-965-8006

    Bradford R. Sohn
    Brad Sohn Law
    2990 Ponce DeLeon Boulevard
    Suite 300
    Coral Gables, Florida 33134
    P.: 786-708-9750
    F.: 305-397-0650

By:

    Joseph Wylie
    K&L Gates LLP
    70 West Madison Street, Suite 3100
    Chicago, Illinois 60602
    P: 312.372.1121
    joseph.wylie@klgates.com

# EXHIBIT 1

*DeSouza v. AeroCare Holdings, LLC*
Settlement Administrator
P.O. Box XXX
City, ST 00000-0000

**XXX**

*DeSouza v. AeroCare Holdings, LLC; AdaptHealth Corp.*

United States District Court for the Middle District of Florida
Case No. 22-cv-1047

**Must be Postmarked No Later Than**
**Month 00, 2023**

## Claim Form

### CLAIMANT INFORMATION

_____   _____   _____
First Name                                          M.I.     Last Name

_____
Primary Address

_____
Primary Address Continued

_____   _____   _____-_____
City                                               State     Zip Code

(This Claim Form should be used only if a claim is being mailed in and not being filed online at
www.[website].com.)

### APPLICABLE TELEPHONE NUMBER

Telephone Number(s) at which you received text messages from the AdaptHealth Parties:

__ __ __ - __ __ __ - __ __ __ __         __ __ __ - __ __ __ - __ __ __ __

(Your telephone number(s) must be listed in our records as having received a text message from the AdaptHealth
Parties and included in the Settlement. If you are not certain which of your telephone numbers may have received a
text message, you may submit each of them separately.)

### CERTIFICATION

By submitting this Claim Form, I certify that, by submitting this Claim Form, I received more than one text message
from the AdaptHealth Parties inviting me to order CPAP supplies, after I had replied "stop" or its equivalent to one
of the AdaptHealth Parties' text messages.

_____        __ __ / __ __ / __ __ __ __
Signature                                                 Dated

_____
Print Name

**Please submit your completed Claim Form, postmarked no later than Month 00, 2023, to:**
*DeSouza v. AeroCare Holdings, LLC* **Settlement Administrator, P.O. Box XXX, City, ST 00000-0000**

# EXHIBIT 2

LEGAL NOTICE

**If you received a text message from AeroCare inviting you to order CPAP supplies, you may qualify for a $160 payment from a class action settlement.**

**1-000-000-0000**
**www.[website].com**



*DeSouza v. AeroCare Holdings, LLC*
Settlement Administrator
P.O. Box XXX
City, ST 00000-0000

First-Class
Mail
US Postage
Paid
Permit #__

«Barcode»

Postal Service: Please do not mark barcode

Claim#: XXX-12345678901-1

«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»

A proposed settlement has been reached with AeroCare Holdings LLC and AdaptHealth Corp. (together the "AdaptHealth Parties" or "Defendants") claiming the AdaptHealth Parties initiated telemarketing text messages to persons who previously sent the AdaptHealth Parties a message saying "stop" or its equivalent, in violation of federal and state laws.

**Who's included?** The Settlement includes: since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages ("Settlement Class Members").

**What does the Settlement provide?** If the proposed Settlement is approved and becomes final, the AdaptHealth Parties will pay $160 to each Settlement Class Member who submits a valid Claim Form.

**How do I get a payment?** You must submit a valid Claim Form by **Month XX, 2023**. Use the attached Claim Form or submit your claim online at www.[website].com.

**What are my other options?** If you do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **Month XX, 2023**. Unless you exclude yourself, you won't be able to sue or continue to sue Defendants or the Released Persons for any claim made in this lawsuit or released by the Class Action Settlement Agreement and Release. If you stay in the Settlement (*i.e.*, don't exclude yourself), you may object to it and ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections are due by **Month XX, 2023**.

**The Court's Fairness Hearing.** The Court will hold a Final Approval Hearing in this case (*Tyler DeSouza v. AeroCare Holdings, LLC; AdaptHealth Corp.*, Case No. 22-cv-1047) on Month XX, 2023 to consider whether to approve: the Settlement; a request for attorneys' fees not to exceed 25% of the amount calculated by multiplying $160 by the number of Settlement Class Members (currently understood to be 32,000), and costs.

**Want more information?** Call 1-   -   -    ; visit www.[website].com; or write to *DeSouza v. AeroCare Holdings, LLC*, Attn: Settlement Administrator, P.O. Box XXX, City, ST 00000-0000.

*DeSouza v. AeroCare Holdings, LLC*
United States District Court for the Middle District of Florida, Case No. 22-cv-1047

**CLAIM FORM**

**You must submit a completed Claim Form on or before Month 00, 2023 to receive a payment from the Settlement. Mail this postcard, postmarked on or before Month 00, 2023, or submit a Claim Form online at www.[website].com.**

Claim#: XXX-12345678901-1

**CLAIMANT INFORMATION** (Complete this section only if submitting a Change of Address request)

First Name_____   Last Name_____

Address_____

City_____   ST_____   Zip Code_____

**CERTIFICATION**

Telephone Number at which you received text messages from the AdaptHealth Parties: (___) ___-____

☐ I certify that, by submitting this Claim Form, I received more than one text message from the AdaptHealth Parties inviting me to order CPAP supplies, after I had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

☐ I agree that, by submitting this Claim Form, the information in this Claim Form is true and correct to the best of my knowledge.

Your Signature_____   Dated_____

First-Class Mail
US Postage
Paid
Permit #__

*DeSouza v. AeroCare Holdings, LLC*
Attn: Settlement Administrator
P.O. Box XXX
City, ST 00000-0000



# EXHIBIT 3

To:
From:
Subject:

Claim#: XXX-12345678901-1

## If you received a text message from or on behalf of AeroCare inviting you to order CPAP supplies, you may qualify for a $160 payment from a class action settlement.

A proposed settlement has been reached with AeroCare Holdings LLC and AdaptHealth Corp. (together the "AdaptHealth Parties" or "Defendant") claiming the AdaptHealth Parties initiated telemarketing text messages to persons who previously sent the AdaptHealth Parties a message saying "stop" or its equivalent to one of the AdaptHealth Parties' text messages, in violation of federal and state laws.

**Who's included?** Included in the Settlement are: since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages ("Settlement Class Members").

**What does the Settlement provide?** If the proposed Settlement is approved and becomes final, the AdaptHealth Parties will pay $160 to each Settlement Class Member who submits a valid Claim Form.

**How do I get a payment?** You must submit a valid Claim Form by **Month XX**, **2023**. Claim Forms may be submitted online or printed from www.[website].com.

**Your other options.** If you do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **Month XX**, **2023**. Unless you exclude yourself, you won't be able to sue or continue to sue Defendant or the Released Persons for any claim made in this lawsuit or released by the Class Action Settlement Agreement and Release. If you stay in the Settlement (*i.e.*, don't exclude yourself), you may object to it and ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections are due by **Month XX**, **2023**.

**The Court's Fairness Hearing.** The Court will hold a Final Approval Hearing in this case (*Tyler DeSouza v. AeroCare Holdings, LLC; AdaptHealth Corp.*, Case No. 22-cv-1047) on **Month XX**, 2023 to consider whether to approve: the Settlement; a request for attorneys' fees not to exceed 25% of the amount calculated by multiplying $160 by the number of Settlement Class Members (currently understood to be 32,000), and costs.

**Want more information?** Visit www.[website].com; call 1-___-___-____; or write to *DeSouza v. AeroCare Holdings, LLC*, Attn: Settlement Administrator, P.O. Box XXX, City, ST 00000-0000.

# EXHIBIT 4

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA

# If you received a text message from or on behalf of AeroCare inviting you to order CPAP supplies, you may qualify for a $160 payment from a class action settlement.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- A proposed settlement has been reached with AeroCare Holdings LLC and AdaptHealth Corp. (together the "AdaptHealth Parties" or "Defendants") claiming the AdaptHealth Parties initiated telemarketing text messages to persons who previously sent AeroCare a message saying "stop or its equivalent to one of the AdaptHealth Parties' text messages, in violation of the Telephone Consumer Protection Act ("TCPA"), Florida Telephone Solicitation Act ("FTSA"), and other federal and state laws.

- You may qualify for a $160.00 payment if you received more than one text message from the AdaptHealth Parties inviting you to order CPAP supplies after you had sent the AdaptHealth Parties a message saying "stop" or its equivalent ("Post-Stop Messages") from November 23, 2018 through the date notice is provided to the Settlement Class (the "Class Period").

- The Settlement, if it is finally approved, will provide benefits to those who qualify. You will need to submit a valid Claim Form to receive benefits from the Settlement.

- Your legal rights are affected whether you act, or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY MONTH XX, 2023** | Submit a Claim Form online or by mail. Receive a $160.00 payment for submitting an Approved Claim. |
| **EXCLUDE YOURSELF BY MONTH XX, 2023** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against the AdaptHealth Parties related to the legal claims this Settlement resolves. If you exclude yourself, you will no longer be eligible to receive a payment from this Settlement. |
| **OBJECT BY MONTH XX, 2023** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | You may ask to appear and speak to the Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no benefits. Give up any rights you might have to sue the AdaptHealth Parties about the legal claims made in this case and resolved by the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The deadlines may be moved, canceled, or modified. Check the Settlement Website at www.[website].com regularly for updates.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made only if the Court approves the Settlement and after any appeals are resolved. Please be patient.

# BASIC INFORMATION

### 1.   Why is there a notice?

The Court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

Judge Roy Dalton, Jr. of the United States District Court for the Middle District of Florida is overseeing this case. The case is titled *Tyler DeSouza v. AeroCare Holdings, LLC; AdaptHealth Corp.* Case No. 22-cv-1047 (the "Action"). This Notice explains the lawsuit, the Settlement, and your legal rights. The person who filed this lawsuit is called the Plaintiff and the companies he sued, AeroCare Holdings LLC and AdaptHealth Corp., are called the Defendants or the AdaptHealth Parties.

### 2.   What is this lawsuit about?

The lawsuit claims the AdaptHealth Parties initiated telemarketing text messages to persons who previously sent AeroCare a message saying "stop or its equivalent to one of the AdaptHealth Parties' text messages, in violation of the TCPA, FTSA, and other federal and state laws. The AdaptHealth Parties deny all allegations made in the lawsuit.

More information about the lawsuit can be found in the Fourth Amended Complaint, available at www.[website].com.

### 3.   Why is there a class action?

In a class action, one or more people called "Named Plaintiffs" or "Class Representatives" (in this case, Tyler DeSouza) sue on behalf of themselves and other people who have similar claims. Together, all the people with similar claims (except those who exclude themselves) are members of a "Settlement Class."

### 4.   Why is there a settlement?

The Court did not decide in favor of the Plaintiff or the Defendant. Instead, both sides agreed to a settlement. The Settlement allows the Plaintiff and Defendants to avoid the risks and costs of litigation and the uncertainty of trial and appeals. The Class Representative and his attorneys believe this Settlement is in the best interests of the Settlement Class.

# WHO IS INCLUDED IN THE SETTLEMENT?

### 5.   How do I know if I am included in the Settlement?

The Settlement includes, since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages ("Settlement Class Members").

### 6.   Are there exceptions to being included?

Yes, excluded from the Class are the AdaptHealth Parties and any entities in which they have a controlling interest; the AdaptHealth Parties' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 7.   What does the Settlement provide?

If the proposed Settlement is approved and becomes final, the AdaptHealth Parties will pay $160.00 to each Settlement Class Member who submits a valid claim.

### 8.   What can I get from the Settlement?

Settlement Class Members who submit an Approved Claim will receive a Cash Award payment of $160.00.

| **9.   What am I giving up to receive a payment or stay in the Settlement Class?** |

Unless you exclude yourself, you are choosing to stay in the Settlement Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any other lawsuit against the AdaptHealth Parties and the Released Persons. The rights you are giving up are called Released Claims.

| **10.   What are the Released Claims?** |

Generally, if and when the Settlement becomes final, each member of the Settlement Class shall, by operation of the Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons (AdaptHealth Parties and each of their respective divisions, parents (including AdaptHelath Corp.), subsidiaries, affiliates, predecessors, investors, and parent companies, any direct or indirect subsidiary of the AdaptHealth Parties and their insurers and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and all of the past or present officers, directors, employees, agents, brokers, distributors, contractors, representatives, owners, and attorneys of all such entities) in all capacities, including individual and trustee capacities, from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of the Post-Stop texts that were sent during the Class Period, the records of which AdaptHealth maintains. This release includes any and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder, and any and all claims for violation of any laws of any state, including the Florida Telephone Solicitation Act, § 501.059 *et seq*., that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of texts to persons who asked not to be called or to be placed on an internal do-not-call list.

Complete details regarding the Released Claims can be found in the Class Action Settlement Agreement and Release, available at www.[website].com.

# HOW TO GET A PAYMENT

| **11.   How do I get a payment from the Settlement?** |

To receive a payment, you must submit a valid Claim Form. If you received a Notice in the mail, simply tear-off the double-sided prepaid postcard Claim Form, complete it, and place it in the mail. Claim Forms may also be submitted online at www.[website].com or printed from the website and mailed to the address on the form. Claim Forms must be submitted online or postmarked by **Month 00**, **2023.**

| **12.   When will I receive my payment?** |

The Court will hold a Fairness Hearing on [Month __, 2023] to decide whether to grant final approval to the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Payments will be distributed to Settlement Class Members who submit valid Claim Forms if and when the Court grants final approval to the Settlement and after any appeals are resolved. Please be patient.

# THE LAWYERS REPRESENTING YOU

| **13.   Do I have a lawyer in this case?** |

Yes, Jeremy Glapion of Glapion Law Firm and Bradford R. Sohn of Brad Sohn Law Firm PLLC have been

appointed as "Class Counsel" to represent you and other Settlement Class Members. You will not be personally charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 14.  How will the lawyers be paid? |
|---|

Class Counsel will ask the Court for attorneys' fees and expenses of not more than 25% of the amount calculated by multiplying the Cash Award ($160) by the number of Settlement Class Members (currently understood to be 32,025), plus their actual costs. If approved, these amounts, as well as the costs of notice and administration, will be paid separately by the AdaptHealth Parties and not reduce the amount of money available to Settlement Class Members.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue the Defendants or the Released Parties about the legal claims resolved by this Settlement, and you do not want to receive a Settlement payment, you must take steps to get out of the Settlement. This is called excluding yourself or opting out of the Settlement.

| 15.  How do I exclude myself from the Settlement? |
|---|

To exclude yourself from the Settlement, you must mail a letter to the Settlement Administrator that includes the following information:

- Your name and address;
- The phone number at which you were sent a Qualifying Text by the AdaptHealth Parties, or someone acting on their behalf, during the Class Period;
- The name of the case (*Tyler DeSouza v. AeroCare Holdings, LLC; AdaptHealth Corp.*, Case No. 22-cv-1047);
- A statement indicating (a) you want to be excluded from this Settlement, and by excluding yourself, you understand that you will not receive any money from this Settlement; or (b) "I request to be excluded from the Settlement in the *DeSouza* action and understand that, by doing so, I will not be entitled to receive any of the benefits from the Settlement."; and
- Your signature.

You must mail your exclusion request, postmarked no later than <mark>Month __, 2023</mark>, to:

<mark>*DeSouza v. AeroCare Holdings, LLC*
Attn: Settlement Administrator
P.O. Box XXX
City, ST 00000-0000</mark>

| 16.  If I ask to be excluded from the Settlement, can I still get a payment? |
|---|

No, you will not receive a payment from the Settlement if you exclude yourself.

# OBJECTING TO THE SETTLEMENT

| 17.  How do I tell the Court if I do not like the Settlement? |
|---|

If you do not submit a timely and proper request for exclusion and you wish to object to the fairness, reasonableness, or adequacy of the Settlement, you must timely file a written objection with the Court and send a copy of that written objection by mail to Class Counsel and Defense Counsel at the addresses provided below.

To be valid, your objection must include:

- Your name, address, and telephone number and, if different, the telephone number at which you were sent a Qualifying Text by the AdaptHealth Parties during the Settlement Class Period;
- The reasons for your objection and any evidence supporting those reasons;

- Copies of any other documents you wish to submit in support of your position;
- The name, address, email address, and telephone number of your lawyer, if you have one;
- A statement regarding whether you and/or your lawyer intend to appear at the Final Approval Hearing; and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be received by the Court with a copy sent to Class Counsel and Defense Counsel postmarked no later than **Month 00**, **2023** at the following addresses:

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>George C. Young Federal Annex Courthouse<br>401 West Central Boulevard<br>Orlando, FL 32801 | Jeremy Glapion<br>Glapion Law Firm<br>1704 Maxwell Drive<br>Wall, NJ 07719 | Joseph Wylie<br>K&L Gates LLP<br>70 West Madison Street<br>Suite 3100<br>Chicago, IL 60602 |

### 18.  What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you remain a member of the Settlement Class (that is, do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself, you cannot object because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 19.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on Month __, 2023 at __:__ __.m. at the George C. Young Federal Annex Courthouse, 401 West Central Boulevard, Orlando, Florida 32801.

At this hearing, the Court will determine whether the Settlement is fair, reasonable, and adequate and whether to approve Class Counsel's request for attorneys' fees and litigation expenses. If there are objections, the Court will consider them. Judge Dalton will listen to people who have asked to speak at the hearing.

### 20.  Do I have to come to the hearing?

No. Class Counsel will answer any questions that the Court may have, but you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you delivered and mailed your written objection on time to the proper addresses, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 21.  May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing by including a statement in your objection indicating that you intend to appear at the Final Approval Hearing (*see* Question 17). You cannot speak at the hearing if you exclude yourself from the Settlement Class.

## IF YOU DO NOTHING

### 22.  What happens if I do nothing at all?

If you do nothing, you will not receive a payment from the settlement and you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants or the Released Parties about the Released Claims.

# GETTING MORE INFORMATION

**23.  How do I get more information?**

This Notice summarizes the proposed Settlement. More details are in the Class Action Settlement Agreement and Release. The Class Action Settlement Agreement and Release and other related documents are available at www.[website].com. If you have additional questions, you may call the Settlement Administrator at 1-xxx-xxx-xxxx, or write to:

*DeSouza v. AeroCare Holdings, LLC*
Attn: Settlement Administrator
P.O. Box XXX
City, ST 00000-0000

**PLEASE DO NOT CONTACT THE COURT, CLERK OF THE COURT OR DEFENDANT CONCERNING THIS CASE.**