## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TYLER DESOUZA,

        Plaintiff,

v.                                  Case No:   6:22-cv-1047-RBD-LHP

AEROCARE HOLDINGS LLC,

        Defendant

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following

motion filed herein:

| |
|---|
| **MOTION:**  **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS (Doc. No. 56)** |
| **FILED:**    **April 7, 2023** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. |

## I.    BACKGROUND.

On June 14, 2022, Plaintiff Tyler DeSouza instituted this action on behalf of himself and all others similarly situated, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA") and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").    Doc. No. 1.    Plaintiff has filed several amendments to the complaint, Doc. Nos. 9, 15, 28, but the operative pleading is now Plaintiff's fourth amended complaint, filed on April 7, 2023.   Doc. No. 55.   The fourth amended complaint alleges a claim under the FTSA (Count I) and two claims under the TCPA (Counts II and III) against Defendants AdaptHealth Corp. ("AdaptHealth") and AeroCare Holdings ("AeroCare"), for conduct by AdaptHealth on behalf of AeroCare, to include continued text message solicitations after requests to stop; telephone solicitations to phone numbers on the National Do-Not-Call Registry; and telemarketing text messages despite not having the proper policies and procedures in place for honoring do-not-call requests.   *E.g.,* *id.* ¶¶ 1–3.   In sum, the allegations stem from text message solicitations sent to Plaintiff and others by Defendants regarding the purchases of CPAP supplies, after requests to stop.   *E.g., id.* ¶¶ 37–52, 92.[1]

---

[1] In the above-styled motion, Plaintiff explains that he had also filed a state court complaint alleging violations of the TCPA, but as part of the settlement process, Plaintiff filed the fourth amended complaint in this Court to name both settling Defendants and to add the claims that were pending in state court.   Doc. No. 56, at 4.

The parties settled the matter at mediation, prior to class certification or any judicial resolution on the merits of this case.   Doc. No. 43.   To that end, the parties drafted a Class Action Settlement Agreement and Release (the "Settlement" (Doc. No. 56-1)), and Plaintiff now moves for the Court's preliminary approval of the Settlement, and for certification of the class action for settlement purposes.   Doc. No. 56.   Defendants have agreed to provisional certification of the class for purposes of settlement.   *Id.* at 16–17 & n.7;[2]   Doc. No. 56-1 ¶ 3.4.2.

The proposed settlement class is defined as:

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

Doc. No. 56, at 6.   *See also* Doc. No. 56-1 ¶ 3.1.   Plaintiff represents that the settlement class consists of 32,035 persons who received approximately 220,000 text messages meeting this definition.   Doc. No. 56, at 6.   *See also* Doc. No. 56-1 ¶¶ 3.1, 4.1.[3]   Pursuant to the Settlement, Defendants will pay $160 to each settlement class

---

[2] Pinpoint citations to the motion reflect the pagination provided by CM/ECF, rather than the internal pagination provided by Plaintiff.

[3] According to the motion, "Plaintiff's efforts made Defendants aware of the purported glitch causing the Post-Stop Messages at issue, preventing a potentially significant number of Post-Stop Messages from being sent to other persons."   Doc. No. 56, at 3.

member who submits an approved claim, for a total cash value of $5,125,600, with attorneys' fees and costs to be litigated and paid separately from the settlement fund, but equal to up to 25% of the settlement fund.   Doc. No. 56, at 3, 6.   *See also* Doc. No. 56-1 ¶¶ 4.1.1, 15.1.   Plaintiff includes with the motion a copy of the Settlement (Doc. No. 56-1, at 2–55), which also includes as exhibits a Claim Form (Doc. No. 56-1, at 57), and the proposed notice forms to class members (Doc. No. 56-1, at 62, 64, 67–71).   The parties also submit declarations from Plaintiff's counsel, Jeremy M. Glapion, Esq. (Doc. No. 56-2), and Bradford R. Sohn, Esq. (Doc. No. 56-3), in support of the motion, as well as the declaration of Christie K. Reed, Vice President of Legal Notification Services at KCC Class Action Services, LLC (Doc. No. 56-4) the Settlement Administrator for the proposed notice plan for the Settlement.

The motion has been referred to the undersigned, and the matter is ripe for review.   Upon consideration, the undersigned will recommend that the motion be granted.

## II.    CLASS CERTIFICATION.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."   *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (quotation marks and citations omitted).   "Whether a class is certified for settlement or for trial, the Court

must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met." *Id.*   In order to grant final approval of a settlement class, the Court must perform a "rigorous analysis" to ensure that the movant meets the requirements of Federal Rule of Civil Procedure 23.   *Gen. Tel. Co. of S.w. v. Falcon*, 457 U.S. 147, 161 (1982).   *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . . .   But other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.").

The class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable.   *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim").   *See also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).   Rule 23(a) requires the movant to demonstrate that:   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or

defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.   Fed. R. Civ. P. 23(a).

After meeting the requirements of Rule 23(a), the movant must satisfy the requirements of Rule 23(b), here Rule 23(b)(3).   *See* Doc. No. 56, at 21.   First, the movant must show that the questions of law or fact common to the class members predominate over any questions affecting individual members.   Fed. R. Civ. P. 23(b)(3).   Second, the movant must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   *Id.*

Notice must be provided to all class members if a party attempts to certify a class under Rule 23(b)(3).   *See Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001).   Under Rule 23(c)(2), the notice should be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   *Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)).   When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class[.]"   *Fam. Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016).

The Court must also "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."   *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (citation

omitted).   In doing so, the Court must decide whether the proposed settlement "is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement."   *Id.* (citations and quotation marks omitted).   "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."   *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citation omitted).   Thereafter, the Court must "communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and . . . authorize the manner and form of dissemination of the notice."   *Fam. Med. Pharmacy*, 2016 WL 7320885, at *5 (citation omitted).

  A. <u>Standing</u>.

  A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint.   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).   Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'"   *Mills*

*v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Here, the allegations of the fourth amended complaint are sufficient to demonstrate that Plaintiff suffered an injury in fact—receiving multiple unsolicited text messages from Defendants despite having had replied "stop." *See Drazen v. Pinto*, No. 21-10199, ___ F.4th ___, 2023 WL 4699939, at *5-7 (11th Cir. July 24, 2023). This is fairly traceable to conduct by Defendants, and is likely to be redressed by a favorable decision.   Thus, Plaintiff has sufficiently established standing.

B.   <u>Ascertainability</u>.

A class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).   This requires the plaintiff to show that the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (citation omitted).[4]   "Identifying class members is administratively feasible when it is a manageable process that does not require much, if any, individual inquiry." *Id.* (citation and quotation marks omitted).

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1354 n.7 (11th Cir. 2007).

Here, the Settlement defines the settlement class as:

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

Doc. No. 56, at 6.  *See also* Doc. No. 56-1 ¶ 3.1.  The undersigned finds that the definition of the class contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the class.  *See Karhu*, 621 F. App'x at 946.

  C. <u>Rule 23(a) Requirements</u>.

    1. *Numerosity.*

  The first requirement Plaintiff must satisfy under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Defendants represent, and the Settlement indicates, that there are 32,035 telephone numbers meeting the criteria set forth in the Settlement class definition. Doc. No. 56-1 ¶ 4.1.  This satisfies the numerosity requirement.  *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (finding that the district court did not abuse its discretion in finding that numerosity requirement was met where thirty-one individual class members from wide geographical area were identified).

2.     *Commonality.*

Plaintiff must next demonstrate that "there are questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   Commonality "does not require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact 'predominate' over individual issues.   *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citation and quotation marks omitted).   Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Falcon*, 457 U.S. at 157).   "This does not mean merely that they have all suffered a violation of the same provision of law."   *Id.* at 350.   Rather, the claims must depend upon a common contention, "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id.*   Thus, the plaintiff has a relatively low burden in demonstrating commonality, *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009), because "even a single common question will do."   *Dukes*, 564 U.S. at 359 (citation, quotation marks, and alterations omitted).

Plaintiff submits that the commonality requirement is satisfied "because there are numerous questions generating common answers, including, but certainly not limited to, (i) whether and why Defendants system was set up to, and did, send

text messages to Settlement Class Members after Defendants were asked stop; (ii) whether Defendants text messages were telemarketing; and (iii) whether the "emergency purposes" or another exception still applies to wrong number calls." Doc. No. 56, at 18.   Plaintiff contends that these questions are all susceptible to generalized proof and apply to the entire settlement class.   *Id.*   The undersigned agrees, and therefore finds that the commonality requirement is satisfied.

    3. *Typicality.*

   Plaintiff must also show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."   *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008) (citation omitted).   "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"   *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)).

   In the fourth amended complaint, Plaintiff alleges that he and the proposed class all received multiple text message solicitations from Defendants after requests to stop, in violation of the TCPA and FTSA.   Doc. No. 55 ¶¶ 37–52, 92.   Because Plaintiff alleges that he suffered the same injury as the class he seeks to represent,

the undersigned finds the typicality requirement satisfied.   *See, e.g.*, *Parker v. Universal Pictures*, No. 6:16-cv-1193-Orl-41DCI, 2019 WL 1521708, at *5 (M.D. Fla. Feb. 28, 2019), *report and recommendation adopted*, 2019 WL 1518958 (M.D. Fla. Apr. 8, 2019).

4.      *Adequacy of Representation.*

The fourth and final requirement Plaintiff must satisfy under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quoting *In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. 447, 460–461 (N.D. Ala. 2003)).   The requirement applies to both the named plaintiff and counsel.   *Amchem Prods.*, 521 U.S. at 626, n.20.

The inquiry into the class representative(s) considers the existence of substantial conflicts of interest between the class representatives and the class: "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Co.*, 350 F.3d at 1189 (citations omitted).   "A

fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*

The inquiry into class counsel considers whether counsel will adequately prosecute the case. The Court must consider the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition, the Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiff explains that he has remained diligent and involved throughout this litigation, and has been in frequent contact with his counsel about all aspects of this case. Doc. No. 56, at 19. He has reviewed filings, participated in discovery and mediation, promptly responded to issues or concerns, acted in the best interest of the class, and accepted the class-wide settlement. *Id.* at 19–20. And there is no claim or evidence in this case of any conflict of interest between Plaintiff and the class he seeks to represent. Accordingly, the undersigned finds that Plaintiff satisfies the adequacy requirement. *See, e.g.*, *Parker*, 2019 WL 1521708, at *6, *report and recommendation adopted*, 2019 WL 1518958 (M.D. Fla. Apr. 8, 2019).

As for class counsel, Plaintiff requests that the Court appoint attorneys Jeremy M. Glapion, Esq. and Bradford R. Sohn, Esq.   Doc. No. 56, at 20–21. Attorneys Glapion and Sohn both have significant experience in litigating class actions.   *Id.   See also* Doc. Nos. 56-2, 56-3.   Attorney Glapion has extensive experience litigating TCPA matters individually and on a class-wide basis, and Attorney Sohn has litigated several previous individual and putative class TCPA actions with Attorney Glapion's firm.   *See* Doc. Nos. 56-2, 56-3.   Attorneys Glapion and Sohn have litigated this case, including serving discovery, responding to Defendants' motion to dismiss, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement.   Doc. No. 56, at 20–21.   Accordingly, the undersigned finds that Attorneys Glapion and Sohn will adequately serve as class counsel.   *See, e.g.*, *Clark v. FDS Bank & Dep't Stores Nat'l Bank*, No. 6:17-cv-692-Orl-78EJK, 2020 WL 11233523, at *5 (M.D. Fla. Sept. 2, 2020), *report and recommendation adopted in relevant part*, 2021 WL 4318340 (M.D. Fla. Aug. 31, 2021).

D.   <u>Rule 23(b) Requirements</u>.

If the four prerequisites of Rule 23(a) are satisfied, the Court must consider the relevant Rule 23(b) requirements.   *Vega*, 564 F.3d at 1265.   Here, Plaintiff relies on Rule 23(b)(3).   Doc. No. 56, at 21.   There are two inquiries under Rule 23(b)(3): whether "questions of law or fact common to class members predominate over any

questions affecting only individual members, and [whether] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).

     *1.    Predominance.*

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted).   The Court must carefully review the relationship between common and individual questions in a case.   *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).   An individual question requires evidence that is different from one class member to another, but a common question can be resolved by the same evidence for each class member, or it can be proven by generalized, class-wide proof.   *Id.*   In reviewing predominance, the Court must determine whether the common issues are more prevalent or important than the individual issues.   *Id.*   If the central issues are common to the class and predominate, then the predominance inquiry is satisfied. *Id.*

In this case, the common questions include whether Defendants are "telephone solicitors" that engaged in "telephone solicitations" by sending text

messages to the class members regarding purchase of CPAP supplies after requests to stop; whether these solicitations were sent to numbers on the do-not-call registry; and whether Defendants had the required policies and procedures in place under the TCPA. *See* Doc. No. 56, at 23–27. The undersigned agrees with Plaintiff that the individualized issues, such as confirming whether a class member was registered for the do-not-call registry or whether the class member responded "stop" to an unsolicited text, do not predominate over these overarching issues. Thus, the undersigned finds the predominance inquiry satisfied. *See, e.g.*, *Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443Orl-41GJK, 2018 WL 3151673, at *8 (M.D. Fla. Apr. 12, 2018), *report and recommendation adopted*, 2018 WL 2126957 (M.D. Fla. May 9, 2018) (finding that the settlement class members met the predominance requirement where the central issue was whether the defendant had violated the TCPA by sending text messages to the settlement class members without their consent). *See also Bouaphakeo*, 577 U.S. at 453 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (citations and quotation marks omitted)).

    2.      *Superiority.*

The last requirement for class certification under Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   A finding of predominance weighs in favor of finding that a class action would be superior to resolving each member's claim individually.  *See Williams*, 568 F.3d at 1358.

In this case, Plaintiff is ably prosecuting this action, and it would result in judicial inefficiency for over 32,035 of the same claims against Defendants to be prosecuted separately.   There are no apparent difficulties in managing this case as a class action.   Therefore, Plaintiff meets the superiority requirement under Rule 23(b)(3).   *See, e.g.*, *Youngman v. A&B Ins. and Fin. Inc.*, No. 6:16-cv-1478-Orl-41GJK, 2018 WL 1832992, at *6 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (finding that it would be judicially inefficient to try over 300,000 TCPA claims separately).   *See also Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-cv-891-RBD-LRH, 2021 WL 2138781, at *10 (M.D. Fla. May 11, 2021) (finding that because the potential individual economic payout was small (less than $6,000, on average), and there was no indication any other plaintiff had begun an individual action raising the same claims, the plaintiff had shown a class action was the superior method of adjudicating the claims).

E.     <u>Summary</u>.

In light of the foregoing, the undersigned recommends that this matter be conditionally certified for settlement purposes.   Additionally, the undersigned recommends that Plaintiff be appointed as class representative, and that attorneys Jeremy M. Glapion, Esq. and Bradford R. Sohn, Esq. be appointed as class counsel.

## III.   PRELIMINARY APPROVAL OF SETTLEMENT.

"The claims, issues, or defenses of a . . . class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."   Fed. R. Civ. P. 23(e).   The first step in the approval process is a preliminary finding that the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."   *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)).   *See also Nolan v. Integrated Real Estate Processing*, No. 3:08-cv-642-J-34HTS, 2009 WL 10670779, at *6 (M.D. Fla. Sept. 9, 2009) ("[T]he Court must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members.").   In determining the fairness, adequacy, and reasonableness of a class settlement, the Court considers the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation;

(5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) (citation omitted).   In addition, the Court may also consider:   (1) the burdensomeness of the claims procedure; (2) the treatment of the class representative; (3) the terms of settlement in similar cases; (4) the attorneys' fees award; and (5) the scope of the release.   *Palmer v. Dynamic Recovery Sol., LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016).   "Although class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms."   *Id.* at *3.   However, if the proposed settlement falls within the range of possible approval, then the settlement should be preliminarily approved.   *See Fresco*, 2007 WL 2330895, at *4.

Here, Plaintiff contends that many of the factors weigh in favor of preliminary approval of the Settlement.   This matter resolved on a mediator's proposal shortly following mediation, and thus, the parties submit that there was no fraud or collusion in reaching the settlement.   Doc. No. 56, at 10.   *See also* Doc. No. 43.   In addition, Plaintiff acknowledges that success at trial is uncertain, given the arguments Defendants made in their motion to dismiss, which was pending at the time of settlement, and the lack of clarity in the law regarding certain requirements under the TCPA and/or FTSA and applicable here.   Doc. No. 56, at

10–12.   *See also Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *4 (M.D. Fla. Apr. 23, 2020) ("The uncertain path to a recovery suggests that the Settlement Agreement may represent the better alternative for Plaintiff and the class versus continued litigation.").

Further, Plaintiff contends that class recovery under the Settlement is substantial, given the uncertainty regarding the success of the claims, because the text messages at issue were sent as a result of a glitch, and given that the settlement amount exceeds the relief in many other approved TCPA settlements.   Doc. No. 56, at 12–14.   *See also, e.g., Preman*, 2018 WL 3151673, at *9, *report and recommendation adopted*, 2018 WL 2126957 (M.D. Fla. May 9, 2018) (preliminary approval of TCPA settlement where class members would receive $50 per phone number, which was within the range of possible recovery, should they lose at trial ($0) or prevail ($1,500)).   Moreover, continued litigation would be lengthy, complex, and expensive, given novel issues presented in this case, and the likelihood of appeals regardless of which side ultimately prevailed.   Doc. No. 56, at 14–15.   At this stage, there is no opposition to the Settlement, and although this case settled on the earlier side, before "vast formal discovery," both parties agreed that the central issues in this case involved the constitutionality of the FTSA, class certification, and the measure of damages, with the constitutional issue having been fully briefed before the Court at the time of settlement.   *Id.* at 15–16.   *See also* Doc. Nos. 33, 37, 39.

The undersigned also notes that Plaintiff does not request a service or incentive award in this matter.   Doc. No. 56, at 7–8.   And while class counsel intends to separately file a motion for attorneys' fees and costs, with fees up to 25% of the value of the settlement, the parties' Settlement is not contingent on Court-approval of the fees or costs, the notice to the Settlement class will explain that counsel intends to separately seek such an award, and any award of fees and costs will be paid separately and will not reduce the amount paid to Settlement class members.   *Id.* at 8.   *See also* Doc. No. 56-1 ¶ 15.1.[5]   Moreover, the release of claims by the settlement class is limited to those "that relate to or arise out of the Post-Stop texts that were sent during the Class Period."   Doc. No. 56-1 ¶ 10.1.

Upon review, the undersigned finds that these factors weigh in favor of preliminary approval of the Settlement, and the undersigned will recommend that the Court grant preliminary approval of same.   *See, e.g.*, *Preman*, 2018 WL 3151673, at *10, *report and recommendation adopted*, 2018 WL 2126957 (M.D. Fla. May 9, 2018) (preliminarily approving TCPA settlement under similar circumstances).

## IV.   CLASS NOTICE.

Rule 23 provides that the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal."   Fed. R. Civ. P.

---

[5] In the Settlement, Defendants reserve their right to object to a motion for fees and costs.   Doc. No. 56-1 ¶ 15.1.

23(e)(1)(B).   For a class to be certified for purposes of settlement under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   The notice must clearly and concisely include the following information in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).   Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).   Rule 23 requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).   Additionally, due process requires that the "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Id.* at 174 (citation and quotation marks omitted).

The parties include a copy of their proposed notice with the Settlement, which complies with each of the requirements of Rule 23(c)(2)(B).   *See* Doc. No. 56-1, at 59–62, 64, 66–71.   AdaptHealth maintains the name, address, and email

address information that is or was previously associated with Settlement class members' telephone numbers.   Doc. No. 56-1 ¶ 6.1.   The Settlement provides that within five (5) days of preliminary approval of the Settlement, AdaptHealth will provide the Settlement Administrator a list of the names, email addresses, and mailing addresses associated with all phone numbers meeting the class definition. *Id.   See also* Doc. No. 56-4 ¶ 8.   Within thirty (30) days of approval, the Settlement Administrator will send notice via U.S. mail to the class members (Doc. No. 56-1, at 59–61), as well as via email (Doc. No. 56-1, at 64).   Doc. No. 56-1 ¶¶ 6.2, 6.3.   *See also* Doc. No. 56-4 ¶¶ 8–9.   By the deadline to send the U.S. mail and email notice, the Settlement Administrator will establish a website posting copies of the Settlement, the claim form, and other relevant case filings, along with instructions on how to submit a claim.   Doc. No. 56-1 ¶¶ 6.4, 6.4.1.   *See also id.* at 66–71; Doc. No. 56-4 ¶ 12.

This method of providing notice to the class members pursuant to Rule 23—mailing/emailing the notice in conjunction with establishing a website—has been deemed an appropriate method of notice by courts in this District.   *See Clark*, 2020 WL 11233523, at *7, *report and recommendation adopted in relevant part*, 2021 WL 4318340 (M.D. Fla. Aug. 31, 2021); *Iverson v. Advanced Disposal Servs., Inc.*, No. 3:18-cv-867-BJD-JBT, 2021 WL 4943585, at *7 (M.D. Fla. Aug. 6, 2021), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021).   *See also*

*Poertner v. Gilette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (per curiam) (finding that a claim process that involved "completing a one-page form and submitting it either online or by mail" is not "particularly difficult or burdensome").

Therefore, the undersigned recommends that the Court approve the manner in which notice will be served on the class members.

## V.   FINAL APPROVAL SCHEDULE.

Plaintiff proposes the following schedule regarding the remaining processes for final approval of the settlement:

- Deadline for Notice:   30 days after Order granting preliminary approval.

- Deadline for fee petition:   25 days after Notice deadline.

- Deadline for class member objections or exclusion requests:   60 days after Notice deadline.

- Deadline for class members to submit claim:   60 days after Notice deadline.

- Deadline for final approval motion and memorandum:   90 days after Notice deadline.

- Final approval hearing:   125 days after Notice deadline.

Doc. No. 56, at 30.   Upon review, the undersigned finds the proposed schedule reasonable, and will recommend that the Court adopt it.

## VI.   RECOMMENDATION.

For the reasons discussed herein, it is respectfully **RECOMMENDED** that the Court:

1.      **GRANT** Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Doc. No. 56).

2.      **PRELIMINARILY CERTIFY** the following class for purposes of the Settlement:

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

3.      **APPOINT** Plaintiff as class representative and Jeremy M. Glapion, Esq. and Bradford R. Sohn, Esq. as class counsel.

4.      **PRELIMINARILY APPROVE** the parties' Settlement (Doc. No. 56-1).

5.      **APPROVE** the parties' proposed Notice (Doc. No. 56-1, at 59–61, 64, 66–71).

6.      **ADOPT** the parties' proposed schedule (Doc. No. 56, at 30), and set this matter for a final fairness hearing.

## **NOTICE TO PARTIES**

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's

factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.   **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection**.

       Recommended in Orlando, Florida on August 7, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy