# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated,<br><br>              **Plaintiff,**<br>   v.<br><br>**AEROCARE HOLDINGS LLC; ADAPTHEALTH CORP.,**<br><br>              **Defendants.** | Civil Case No.: 22-cv-1047 |

## PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM FOR ATTORNEYS' FEES AND COSTS

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1
II. BACKGROUND ................................................................................................. 2

    A. Plaintiff's Allegations and Procedural History .................................. 2
    B. The Settlement .................................................................................... 3

III. DISCUSSION ..................................................................................................... 4

    A. Legal Standard for Attorneys' Fees ................................................... 4

        1. Class Counsel's fee request is presumptively reasonable. ............... 5
        2. The *Johnson* factors support the requested fee. ............................. 5

          a. Factor 1: Time and labor required. ................................................. 6
          b. Factors 2, 3, and 9: Difficulty of the issues, skill required, and experience of Class Counsel. ............................................................................... 7
          c. Factor 4: Preclusion of other employment. ..................................... 9
          d. Factors 5 and 12: Customary fee and awards in similar cases. ........ 9
          e. Factor 6: Fixed or contingent. ....................................................... 10
          f. Factor 8: Amount involved and results obtained. ......................... 10
          g. Factor 10: Undesirability of the case. ........................................... 12

IV. Class Counsel's costs are reasonable. ................................................................ 12
V. CONCLUSION ................................................................................................. 13

Pursuant to the Court's Order granting Plaintiff's Motion for Preliminary Approval, and adopting the schedule proposed therein, Dkt. 58, Plaintiff respectfully submits this Motion for Attorneys' Fees and Costs. In support, Plaintiff states as follows:

## I.  INTRODUCTION

On August 23, 2023, this Court preliminary approved a class action settlement ("Settlement"), Dkt. 56-1, between Plaintiff Tyler DeSouza ("Plaintiff") and Defendant Aerocare Holdings LLC ("Aerocare") and Defendant AdaptHealth Corp. ("AdaptHealth") (collectively, "Defendants"; collectively with Plaintiff, "Settling Parties") related to Defendants alleged practice of sending text messages to persons after those persons asked Defendants (via text message) to stop ("Post-Stop Messages"). [Dkt. 58.] Under the Settlement, Defendants have agreed to pay $160 to each of 32,738[1] Settlement Class Members[2] who file an Approved Claim ("Settlement Relief"), a total cash value of $5,238,080. In addition, Plaintiff's efforts made Defendants aware of the purported glitch causing the Post-Stop Messages at issue, preventing a potentially significant number of Post-Stop Messages from being sent to other persons. This result is strong and the benefit conferred upon Class Members is substantial and real.

---

[1] Up slightly from the 32,035 submitted in the Motion for Preliminary Approval.

[2] Unless otherwise specified or defined, all capitalized terms have the same meaning as found in the Settlement Agreement. [Dkt. 56-1.]

1

Now, Class Counsel respectfully moves the Court for an award of attorneys' fees of $1,281,400, which is 24.46% of the total cash value of the settlement.[3] This request is appropriate and presumptively reasonable under 11th Circuit guidance on fee awards in consumer class actions. In addition, Class Counsel requests $14,341.83 in costs. Plaintiff does not request any service or incentive award in this matter. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), *rehearing denied en banc*, *Johnson v. NPA Sols. LLC*, 43 F.4th 1138 (11th Cir. 2022).

## II.   BACKGROUND

### A. Plaintiff's Allegations and Procedural History

The Florida Telephone Solicitation Act ("FTSA") prohibits a "telephone solicitor" from initiating telephonic sales calls (which includes text messages) to a consumer who has previously asked the solicitor to stop. Fla. Stat. § 501.059(5). The Telephone Consumer Protection Act ("TCPA") prohibits "telephone solicitations" to a telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). In addition, the TCPA prohibits initiating calls for telemarketing purposes without certain minimum policies and procedures. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).

On June 14, 2022, Plaintiff filed his initial class action complaint against AdaptHealth alleging that AdaptHealth sent text messages to Plaintiff inviting him to

---

[3] At the time of the preliminary approval motion, the $1,281,400 in fees Counsel indicated they would seek constituted 25% of the cash value of the Settlement. While the increase in class size (and therefore total cash value) would support an increase in the fee request, Class Counsel has opted to stand on the originally proposed number.

order supplies for a CPAP machine after he asked Defendant AdaptHealth to stop. [Dkt. 1.] On September 19, Plaintiff filed a Third Amended Complaint ("TAC"). [Dkt. 28.] The TAC plead, on behalf of putative classes, violations of the FTSA § 501.059(5) and of the TCPA, 47 U.S.C . § 227(c) through § 64.1200(c). On October 3, 2022, Defendants moved to dismiss. At the time of the Mediation Report filed on January 12, 2023, this motion to dismiss was pending. It was denied as moot in the Court's sixty-day order issued on January 19, 2023. [Dkt. 44.]

Also pending a state court complaint alleging violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d). [Dkt. 42.] This, combined with the TAC, were the operative complaints until, as part of the settlement process, Plaintiff filed a consolidated Fourth Amended Complaint ("FAC") on April 7, 2023. [Dkt. 55.] The FAC names both settling Defendants and adds the claim under 47 C.F.R. § 64.1200(d) that was pending in state court.

### B. The Settlement

The Settling Parties agreed to mediation with Rodney Max. This mediation was conducted on January 4, 2023. The Settling Parties left the full-day mediation without a deal. Mr. Max continued to communicate with the Parties to facilitate a settlement, and a settlement was reached in principle via mediator's proposal on January 6, 2023. Thereafter, the Parties negotiated the contents of the Settlement Agreement.

As described in more detail in Plaintiff's Motion for Preliminary Approval, Dkt. 56, the Settlement Agreement requires Defendants to pay $160 to each Settlement Class Member who files an Approved Claim, no matter how many of the 32,738 file a

3

claim.[4] The award amount also does not change based on the amount of fees and costs awarded, which are to be paid separately.

The Court preliminary approved the Settlement Agreement and certified the Settlement Class on August 23, 2023. [Dkt. 58.]

### III.   DISCUSSION

#### A. Legal Standard for Attorneys' Fees

"The district court has great latitude in formulating attorneys' fees awards subject only to the necessity of explaining its reasoning…." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999). In the 11th Circuit, "attorneys' feed awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).

"The percentage applies to the total fund created, even where the actual payout following the claims process is lower." *Id.* This covers claims-made settlements such as that here. *See Poertner v. Gillette Co.*, 618 F3d. Appx. 624, 628 n.2 (11th Cir. July 16, 2015) ("No principled reason" counsels against applying the percentage-of-recovery rule to the maximum value of a claims-made settlement); *see also, e.g. Waters*, 190 F.3d at 1295-1298 (11th Cir. 1999) (rejecting, in detail, defendant's argument that fees

---

[4] At the time of this filing, approximately 9% of the class has timely submitted claims (not yet checked for other issues or deficiencies). There have been no objections or opt-outs. There is still approximately one month left in the claims process.

4

should be awarded on the payout rather than the total made available to the class); *Carter v. Forjas*, 701 Fed. Appx. 759, 766-67 (11th Cir. June 29, 2017) (affirming award of fees based on total value in claims made settlement, and rejecting argument to contrary); *Ferron v. Kraft Heinz Foods Co.*, 2021 U.S. Dist. LEXIS 129955, n.5 (S.D. Fla. July 13, 2021) (same, and collecting cases).

### 1. Class Counsel's fee request is presumptively reasonable.

When using the percentage method, the benchmark is 25 percent. *See Camden I Condo Ass'n*; *Benson v. Enter. Leasing Co. of Orlando*, 2022 U.S. Dist. LEXIS 169992, *6 (M.D. Fla. Sept. 20, 2022) (Dalton, J.) Fee requests at or below this benchmark are presumptively reasonable. *See, e.g. Arkin v. Pressman*, 2022 U.S. App. LEXIS 18205, *3 n.3 (11th Cir. June 30, 2022) ("[A]wards of up to 25% of the common fund are presumptively reasonable in this circuit[.]")

Class Counsel's request of 24.46%[5] of the total here is below the 25% benchmark and is therefore presumptively reasonable.[6] The Court may end its inquiry here. *See SEC v. Davison*, 2023 U.S. Dist. LEXIS 71511, *13 (M.D. Fla. Mar. 8, 2023).

### 2. The *Johnson* factors support the requested fee.

---

[5] The math: $1,281,400/(32,738 class members * $160 per class member) = 24.46%.

[6] Notably, for the purposes of this Motion, Plaintiff does not assign value to the prevention of additional texts from being sent. In the TCPA context, courts may consider a "Plaintiff's success in stopping … calls" in considering the reasonableness of an attorneys' fee request, even if no monetary value has been assigned to such relief. *See e.g. Mahoney v. TT of Pine Ridge, Inc.*, 2017 U.S. Dist. LEXIS 217470, *34-35 (S.D. Fla. Nov. 17, 2017). This further supports the reasonableness of Class Counsel's request.

5

Though the Court need not reach the *Johnson* factors applicable to those situations where the fee request exceeds the 25% benchmark, in the interest of thoroughness, those factors will be discussed briefly, as relevant. The factors are:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[7]

*Faught* at 1242-43 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

### a. Factor 1: Time and labor required.

The first factor requires the Court to consider the time and labor required. This case settled relatively early—approximately seven months from initial filing to agreeing in principle to the settlement. This Court noted in a previous TCPA matter that such a quick settlement (seven months and with only documentary discovery taken, like here) justified a downward variance from the 25 percent benchmark. *See Cooper v. Nelnet, Inc.*, 2015 U.S. Dist. LEXIS 100350, *4 (M.D. Fla. July 31, 2015) (Dalton, J.) The Court, however, found the other factors outweighed this, and ultimately awarded 27.78%. *Id.* at *7.

---

[7] To quickly summarize: factors 2, 3, 4, 5, 6, 8, 9 and 12 support the fee request. Factors 1 and 10 support a downward adjustment. Factors 7 (time limitations imposed by client or circumstances) and 11 (duration of relationship with client) seem inapplicable to the case and are therefore neutral. There were no meaningful time limitations imposed by the client, and Class Counsel had no relationship with the client prior to receiving his intake for this particular case.

>b. <u>Factors 2, 3, and 9: Difficulty of the issues, skill required, and experience of Class Counsel.</u>

This Court has previously acknowledged the difficulty of class action TCPA litigation. *See Cooper*, 2015 U.S. Dist. LEXIS 100350 at *5 ("[T]he Court recognizes that it is not easy for consumers to obtain counsel in TCPA actions, especially considering that the work for a class action is typically done on a contingent basis and that TCPA law is relatively new."). While this has changed in the intervening eight years, and many modern TCPA cases are "by-the-numbers", this was not such a by-the-numbers case. As described in Plaintiff's Motion for Preliminary Approval, the issues here were novel and complex, and led to significant uncertainty.

To summarize: first, Defendants' motion to dismiss raised several issues of near-first impression regarding the constitutionality of the FTSA, previously addressed by only a few sister courts. Second, there is mixed authority on whether Defendants' text messages are exempt from the TCPA under the "emergency purposes" exception or any other healthcare exception (including one Defendants suggested should be read into the FTSA). Third, under the TCPA provisions at issue, damages are "up to" $500 per text rather than the $500 *minimum* per text found in other provisions of the statute. *Compare* 47 U.S.C. § 227(c)(5) *with* 47 U.S.C. § 227(b)(3). Defendants' position has been that the text messages at issue were due to an inadvertent software glitch. While the Parties would ultimately disagree about Defendants' level of culpability for such a glitch, the existence of any such "glitch" might seriously curtail any damages award.

7

Class Counsel was able to navigate these hurdles and obtain a strong settlement in part due to their skill and experience in consumer class actions and TCPA litigation in particular. *See* Declaration of Jeremy M. Glapion ("Glapion Decl."), ¶¶ 1-9. Since founding The Glapion Law Firm in May 2015, Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA class action in which the court approved an $8.5 million non-reversionary class action settlement, which was successfully administered. In 2017, Attorney Glapion was appointed as sole lead counsel in *Allard et al. v. SCI Direct, Inc.*, a TCPA class action in which the Court approved a $15 million non-reversionary class action settlement, which was successfully administered. Case No. 17-cv-4692 (N.D. Illinois). In 2018, Attorney Glapion was also appointed co-lead counsel in *Griffith v. ContextMedia, Inc.*, Case No. 16-cv-2900 (N.D. Illinois), a TCPA class action in which the Court approved a $2.9 million non-reversionary settlement, which was successfully administered. In 2022, Attorney Glapion was appointed sole lead counsel in *Walker v. Highmark BCBS Health Options, Inc.*, 2020 U.S. Dist. LEXIS 225998 (W.D. Pa. Dec. 13, 2022), a $1.85m non-reversionary TCPA class action settlement which was successfully administered. Attorney Glapion has also recovered over $1 million for clients in hundreds of individual TCPA cases. Attorney Glapion's familiarity with the underlying law has and will continue to serve the Settlement Class well. *See* Declaration of Jeremy M. Glapion. Attorney Glapion has never been found to be inadequate counsel.

Co-Class Counsel, Attorney Sohn, has been referred to as being part of the "Miami legal Hall of Fame" by the Hon. Michael Hanzman, after he recently served in a leadership role on the Plaintiffs' Steering Committee for the historic *In re Champlain Towers' South Collapse Litig.* Class action settlement, which resolved with $1.2b in wrongful death compensation fund along with a return of 100 percent of unit appraisal value to property owners. Attorney Sohn also serves as part of the leadership committee for the ongoing *In re NFL Players' Concussion Litig.* He is exceptionally experienced in plaintiffs-side litigation and mass- and class-actions. In the aggregate, Attorney Sohn's aggregate class and individual victim recoveries exceed $2 billion. *See* Declaration of Bradford R. Sohn.

These factors support the requested fee award.

### c. Factor 4: Preclusion of other employment.

The fourth factor requires Courts to consider the preclusion of other employment because of the case. Even with such a quick settlement, the nature of class action work precludes other work. Class Counsel are solo practitioners, and class action work takes up a large "chunk" of counsel's workload, both in terms of actual work to be done and in terms of managing and anticipating future workload. This factor minimally weighs in favor of the fee request, or is at worst neutral.

### d. Factors 5 and 12: Customary fee and awards in similar cases.

The fee request here is lower than that awarded in other cases, some of which obtained lesser relief than that obtained here. *See James v. JP Morgan Chase Bank, N.A.*,

9

2017 U.S. Dist. LEXIS (M.D. Fla. June 5, 2017) (awarding 30% in TCPA where "[e]ach claimant will receive approximately $81, which equals or exceeds the recovery in a typical TCPA class action."); *Cooper*, 2015 U.S. Dist. LEXIS at *7 (27.78% on $150 per class member)[8]; *Shelton v. Agentra*, 2021 U.S. Dist. LEXIS 144659 (W.D. Pa. Aug. 3, 2021) (33% award on settlement paying between $48.39 and $145.17 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502-03 (N.D. Ill. 2015) (36% award).

Accordingly, this factor strongly supports the fee request.

### e. Factor 6: Fixed or contingent.

"The inherent risk of a contingency fee arrangement is an important factor in determining the reasonableness of a fee award." *SEC v. Davison*, 2023 U.S. Dist. LEXIS at *13. Class Counsel took this case on a contingency fee arrangement and, to date, has received no compensation for this litigation while incurring significant costs. There was no guarantee of such recovery, and should Plaintiff not have prevailed or obtained a settlement, Class Counsel would have received nothing. Accordingly, this factor supports the reasonableness of the fee requested.

### f. Factor 8: Amount involved and results obtained.

As outlined in the Motion for Preliminary Approval, the results obtained in the Settlement are strong. The relief here of $160 to each of the 32,738 Class Members (totaling up to $5,238,080) who submit a claim, exceeds the relief in many, if not most,

---

[8] The *Cooper* case seems generally comparable to that here. It resulted in an award of $150 per class member with a settlement fund of $4,500,000 and settled after seven months.

other approved TCPA settlements. A sample of such approved settlements is shown here:

| Case | Per Claimant Recovery |
| --- | --- |
| *Couser v. Comenity Bank* 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (collecting other settlements) | $13.75 |
| *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 2016 U.S. Dist. LEXIS 892 (D. Or. Jan. 5, 2016) | $140.86 |
| *Franklin v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) | $71 |
| *Gehrich v. Chase Bank* 316 F.R.D. 215 (N.D. Ill. 2016) | $52.50 |
| *Somogyi v. Freedom Mortg. Corp.,* 495 F. Supp. 3d 337, 345 (D.N.J. 2020) | $75.30 |
| *Lalli v. First Team Real Estate—Orange Cnty*, 2022 U.S. Dist. LEXIS 161756 (C.D. Cal., Sept. 6, 2022) | $110[9] |

As one court has recently noted, most TCPA settlements result in a "range from $20 to $100 per-class member." *Retina Assocs. Med. Group. v. Keeler Instrumenets*, 2019 U.S. Dist. LEXIS 239998, *10 (C.D. Cal. Dec. 13, 2019). Indeed, in a court-created chart in another TCPA settlement, of the 12 cases listed, only one had a higher per-claimant award than the $160 per-claimant award here, and that was on a sub-2% claims rate. *See Ward v. Flagship Credit Acceptance LLC*, 2020 U.S. Dist. LEXIS 25612, Appendix A (E.D. Pa. Feb. 13, 2020). Here, Approved Claimants received $160 no matter the claims rate.

---

[9] Described by the court as a "strong result." *Id.* at *30.

The rare settlement that has resulted in "better" per-claimant relief typically did so only after years of litigation and after the case was all but won for the plaintiff. For example, *Chinitz v. Intero Real Estate Servs.*, 18-cv-5623 (N.D. Cal), upon which this Settlement was structurally modeled, was a TCPA case with a similar class size (37,962 vs 32,738, a similar number of wrongful communications, but which was *much* further along. It had been litigated for over three years at the time of settlement, with a certified a class and favorable-to-the-class rulings on multiple motions for summary judgments. *See Chinitz v. Intero Real Estate Servs.*, 2022 U.S. Dist. LEXIS 196781, *2-5. *Intero* settled for $350 per class member. While the relief per-class member here is approximately half of what was obtained in the *Intero* settlement, considering the efficiency of this Settlement *and* the remaining risks here, the result is strong.

This factor strongly supports the fee request.

### g. Factor 10: Undesirability of the case.

TCPA cases have grown in popularity and tend to be desirable, especially on the set of facts here (i.e. text messages with written stop requests). That said, Class Counsel is aware of no cases filed on this issue versus Defendants prior to reaching the settlement in principle here.[10] Class Counsel believes most competent and capable TCPA attorneys would have taken this case, if given the opportunity. Accordingly, this factor supports a downward adjustment from the fee request.

### IV. Class Counsel's costs are reasonable.

---

[10] Plaintiff has since become aware of one other case filed on a potentially related issue after the Settlement was reached here. *Tessu v. AdaptHealth, LLC*, 23-cv-00364 (D. Md., Filed February 9, 2023).

Class Counsel requests costs of $14,341.83. These costs are:

| Item | Cost |
|---|---|
| Federal Court filing fee | $402.00 |
| *Pro Hac Vice* fee | $150.00 |
| Legal Research (e.g. out-of-plan state court case purchases) | $72.00 |
| Hotel stay for mediation | $375.00 |
| Flight to and from mediation (total) | $598.53 |
| Mediation Fee | $11,300 |
| Secretary of State fee (purchasing business history) | $20.00 |
| State Court case filing fee | $424.30 |
| Contract Paralegal | $1,000 |
| | $14,341.83 |

*See* Glapion Decl., ¶ 10. These costs were "reasonable and necessary … to the prosecution of the case" and directly benefitted Class Members. *Waters*, 190 F.3d at 1298-99; *see also Mahoney*, 2017 U.S. Dist. LEXIS at *41-42.

## V. CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request the Court grant the fee request of $1,281,400 and costs of $14,341.83.

Dated: October 17, 2023

/s/ *Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

13

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiff, through his counsel, has made three attempts (email on October 6; follow-up email on October 16; and telephone call on October 17) to contact Defendants' counsel to obtain Defendants' position on the instant Motion, but has been unable to do so. Pursuant to L.R. 3.01(g)(3), Plaintiff will continue efforts to contact Defendants for the next three days, and will update the Court by no later than close of business on Friday, October 20.

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2023, I caused Plaintiff's MOTION AND SUPPORTING MEMORANDUM FOR ATTORNEYS' FEES AND COSTS to be filed with the Clerk of the U.S. District Court for the Middle District of Florida, using the CM/ECF system, which will send notification of such filing to all filing users.

Dated: October 17, 2023

/s/ *Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com