# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **TYLER DESOUZA,** on behalf of himself and all others similarly situated,<br><br>                   **Plaintiff,**<br>    v.<br><br>**AEROCARE HOLDINGS LLC; ADAPTHEALTH CORP.,**<br><br>                  **Defendants.** | Civil Case No.: 22-cv-1047 |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 1

   A.  Plaintiff's Allegations and Procedural History ............................... 1

   B.  The Settlement .............................................................................. 3

      1.  Defined Class ........................................................................ 3
      2.  Monetary Relief ..................................................................... 3
      3.  Release .................................................................................. 4
      4.  Attorneys' Fees and Costs ..................................................... 4

   C.  Notice .......................................................................................... 4

III.  DISCUSSION ................................................................................... 4

   A.  Legal standard for final approval. ................................................. 4

   B.  The Settlement should be finally approved. .................................. 5

      1.  There was no fraud or collusion in reaching the settlement. ................... 5
      2.  Success at trial is uncertain. ................................................. 6
      3.  The recovery under the settlement is substantial. .................. 8
      4.  Continued litigation would be lengthy, complex, and expensive. .......... 10
      5.  There has been no opposition to the settlement. .................... 11
      6.  The case settled early, but at an "inflection" point. ............... 11

IV.  The Settlement Class should be finally certified. ............................. 12

   A.  Rule 23(a) is Satisfied. ............................................................... 13

      1.  Numerosity. .......................................................................... 13
      2.  Commonality. ....................................................................... 13
      3.  Typicality. ............................................................................ 14
      4.  Adequacy. ............................................................................ 14

   B.  Rule 23(b)(3) is Satisfied. .......................................................... 17

      1.  Predominance. ...................................................................... 18
      2.  Superiority. .......................................................................... 23

V.  CONCLUSION ................................................................................. 24

## I.   INTRODUCTION

On August 23, the Court preliminarily approved a class action settlement ("Settlement" or "Settlement Agreement") between Plaintiff Tyler DeSouza ("Plaintiff") and Defendant Aerocare Holdings LLC ("Aerocare") and Defendant AdaptHealth Corp. ("AdaptHealth"; collectively, "Defendants"; collectively with Plaintiff, "Settling Parties"). [Dkt. 58, adopting Report and Recommendation, Dkt. 57.] The Court also preliminarily certified the proposed Settlement Class.

Since then, notice was successfully disseminated and there has been no opposition to the Settlement.

Plaintiff now respectfully moves the Court for final approval of the Settlement and final certification of the Settlement Class.

## II.   BACKGROUND

### A. Plaintiff's Allegations and Procedural History

The Florida Telephone Solicitation Act ("FTSA") prohibits a "telephone solicitor" from initiating telephonic sales calls (which includes text messages) to a consumer who has previously asked the solicitor to stop. Fla. Stat. § 501.059(5). The Telephone Consumer Protection Act ("TCPA") prohibits "telephone solicitations" to a telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). In addition, the TCPA prohibits initiating calls for telemarketing purposes without certain minimum policies and procedures. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).

1

On June 14, 2022, Plaintiff filed his initial class action complaint against AdaptHealth alleging that AdaptHealth sent text messages to Plaintiff inviting him to order supplies for a CPAP machine after he asked Defendant AdaptHealth to stop. [Dkt. 1.] On August 22, 2022, Plaintiff served his first sets of discovery, consisting of nine interrogatories, 28 requests for admission, and 52 requests for production. On September 19, Plaintiff filed a Third Amended Complaint ("TAC"). [Dkt. 28.] The TAC plead, on behalf of putative classes, violations of the FTSA § 501.059(5) and of the TCPA, 47 U.S.C. § 227(c) through § 64.1200(c). On October 3, 2022, Defendants moved to dismiss. Shortly thereafter, Plaintiff served his second sets of discovery, consisting of two additional requests for production and 31 requests for admission (which included the requests previously withdrawn).

At the time of the Mediation Report filed on January 12, 2023, Defendant's motion to dismiss was still pending. It was denied as moot in the Court's sixty-day order issued on January 19, 2023. [Dkt. 44.]

Based on the discovery conducted and extensive conversations between the Parties, the Parties recognized early on that a settlement was possible given the nature of the core issues. Accordingly, the Parties chose to focus discovery efforts on ascertaining the putative class size and number of text messages at issue, and then, armed with this information, exploring a possible resolution.

To that end, the Settling Parties agreed to mediation with Rodney Max. This mediation was originally scheduled for December 19, 2022, but was rescheduled to and conducted on January 4, 2023. The Settling Parties left the full-day mediation

without a deal. Mr. Max continued to communicate with the Parties to facilitate a settlement, and a settlement was reached in principle via mediator's proposal on January 6, 2023. Thereafter, the Parties negotiated the contents of the Settlement Agreement.

As part of the settlement process, Plaintiff filed a consolidated Fourth Amended Complaint ("FAC") on April 7, 2023. [Dkt. 55.]

The Court preliminarily approved the Settlement Agreement and preliminarily certified the proposed Settlement Class on August 23, 2023. [Dkt. 58.]

### B. The Settlement

The terms of the Settlement Agreement were discussed at length in Plaintiff's Motion for Preliminary Approval. The key terms will be reviewed again here.

### 1. Defined Class

The Settlement Class is defined as follows:

Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages

Settlement Agreement, § 3.1. The Settlement Class consists of 32,738 persons.

### 2. Monetary Relief

The Settlement Agreement requires Defendants to pay $160 to each Settlement Class Member who submits an Approved Claim. Settlement Agreement §§ 2.8; 4.1.1. Defendants have also agreed to separately cover any awarded attorneys' fees and all

costs, including administrative costs and attorneys' costs. *Id.* at §§ 5.2; 15.1.

### 3. Release

Upon Final Approval, members of the Settlement Class who do not opt out will have released all Released Claims against the Released Parties. *Id.* § 10, *et seq.*

### 4. Attorneys' Fees and Costs

Class Counsel has applied to the Court for an award of Attorneys' Fees and Costs in the amounts of $1,281,400 and $14,341.83, respectively. [Dkt. 60.] Any awarded Attorneys' Fees and Costs will be paid separately and will not reduce the amount paid to Settlement Class Members. Settlement Agreement, § 15.1. Defendants reserved the right to object to any petition for Attorneys' Fees and Costs but chose not to do so. [Dkt. 61.]

### C. Notice

As contemplated by the Settlement Agreement, notice was provided by mail and email on September 22, 2023, reaching approximately 32,000 of the 32,738 class members (nearly 98%). [Declaration of Omar Silva ("Silva Decl."), Dkt. 62.]

## III. DISCUSSION

### A. Legal standard for final approval.

"In deciding whether to finally approve a class action settlement, courts must consider the Federal Rule of Civil Procedure 23(e)(2) factors, which assure that the Agreement is 'fair, reasonable, and adequate' based on several factors such as whether the relief is adequate and the settlement treats all members equitably." *Roll v. Enhanced Recovery Co., LLC*, 2023 U.S. Dist. LEXIS 44625, *2 (M.D. Fla. Mar. 16, 2023)

4

(Dalton, J.) (quoting Fed. R. Civ. P. 23(e)(2). Here, as discussed below, the relief was very strong compared to other settlements in this space. Furthermore, the Settlement pays $160 to each Class Member no matter the claims rate, therefore treating all members equitably.

Courts must also consider the factors outlined in *Bennett*, which overlap with the remaining Rule 23(e) factors. *Id.* (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

> (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation, (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved."

*Holman*, 2009 U.S. Dist. LEXIS at *15 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)) (hereinafter, "Bennett Factors"). These factors were discussed at length in Plaintiff's Motion for Preliminary Approval and in the Court's orders granting preliminary approval. [Dkts. 56-58.] These factors will be discussed again here for convenience and updated as necessary (specifically to note the lack of opposition to the Settlement).

### B. The Settlement should be finally approved.

#### 1. There was no fraud or collusion in reaching the settlement.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Hanley v. Tampa Bay Sports & Ent'mt LLC*, 2020 U.S. Dist. LEXIS 89175, *10 (M.D. Fla. Apr. 23, 2020) (citing *Saccoccio v. JP Morgan Chase Bank*, N.A. 297 F.R.D. 683, 691 (S.D. Fla. 2014)). This case was

resolved on a mediator's proposal from an exceptionally well-respected mediator after the Parties failed to reach a resolution during an all-day mediation session. [Dkt. 43.] Accordingly, there was no fraud or collusion in reaching the settlement.[1]

## 2. Success at trial is uncertain.

The "likelihood of success at trial" is "the most important factor in evaluating a class action settlement." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). Here, that success is far from certain on several levels.

First, Defendants' motion to dismiss raised several issues of near-first impression regarding the constitutionality of the FTSA, addressed previously by only a few sister courts. Had this case proceeded, it is very possible that this Court, an intervening opinion from the 11th Circuit, the Supreme Court,[2] or modification to the law would have resulted in the FTSA claim being lost altogether.

Second, there is an open question of whether Defendants' text messages are exempt from the TCPA under the "emergency purposes" exception or any other healthcare exception, whether the FTSA contains such an exception, and how the messages being post "stop" impacts this analysis. Courts have decided related questions with conflicting results. *Compare, e.g. Coleman v. Rite Aid of Georgia, Inc.*, 284

---

[1] This factor overlaps with Fed. R. Civ. P. 23(e)(2)(B), requiring the proposal to be negotiated at arm's length.

[2] At the time the Settlement was reached, there was a pending Supreme Court case that was to address the scope of the Dormant Commerce Clause, which is an area on which Defendants focused on in its motion to dismiss Plaintiff's FTSA claim. *See National Pork Producers Council v. Ross*, 21-cv-468, argued on October 11, 2022.

F. Supp. 3d 1343, 1346-47 (N.D. Ga. 2018) (concluding the emergency purpose exception cannot apply where the recipient has informed the caller it had the wrong number or the calls were unwanted) *with Roberts v. Medco Health Solutions*, 2016 U.S. Dist. LEXIS 97177, *3 (E.D. Mo. July 26, 2016) (applying emergency purpose exception to wrong number calls).

Third, there is an open question about whether cell phone numbers are properly allowed on the Do-Not-Call Registry in the first place. While 11th Circuit courts are presently bound by the Hobbs Act to follow the FCC's determination that they are, several recent Supreme Court and 11th Circuit cases have suggested that the FCC exceeded its authority and that Hobbs Act deference in such situations may be on the way out. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019); *Gross Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1105-12 (11th Cir. 2019) (Pryor, J., concurring); *Turzio v. Subway Franchisee Adver. Fund Trust LTD.*, 2022 U.S. Dist. LEXIS 89622, *27-31 (S.D. Fla. May 18, 2022). Should this come to pass, it is possible Plaintiff and Settlement Class Members lose altogether on the National Do-Not-Call Registry claim.

Fourth, under the TCPA provisions at issue, damages are "up to" $500 per text rather than the $500 minimum per text found in other provisions of the statute. *Compare* 47 U.S.C. § 227(c)(5) *with* 47 U.S.C. § 227(b)(3). Defendants' position has been that the text messages at issue were due to a software glitch. While the Parties strongly disagree (and would continue to disagree) about Defendants' level of culpability for such a glitch, such a "glitch" might result only in nominal damages.

Finally, given the novelty of some of these issues, any success at trial would need to be maintained throughout lengthy appellate litigation.

Accordingly, "the uncertain path to recovery suggests that the Settlement Agreement may represent the better alternative for Plaintiff and the class versus continued litigation."[3] *Hanley*, 2020 U.S. Dist. LEXIS at *11.

### 3. The recovery under the settlement is substantial.[4]

"The second and third considerations of the *Bennett* test are easily combined. A court first determines the range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief." *Saccoccio*, 297 F.R.D. at 593. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542.

The Settlement Agreement here provides excellent recovery to Settlement Class Members, especially in comparison to other TCPA settlements. Damages at trial range from $0 (on a finding of non-liability and/or that no damages were warranted due to the glitch) to more than $100 million, on a finding of full-liability and a full $500 per text. But the $100 million number is almost certainly illusory for two reasons. First, on

---

[3] This factor overlaps with Fed. R. Civ. P. 23(e)(2)(C)(i), requiring the Court to take into account the costs, risks, and delay of trial and appeal.

[4] This factor overlaps with Fed. R. Civ. P. 23(e)(2)(C), requiring the relief to be adequate.

a factual basis, Defendants' text messages appear to be the result of a glitch, and a juries' determination as to Defendants' level of culpability for that glitch would likely drive whether any damages award is nominal or significant. Second, even if damages skewed toward the significant, there remain constitutional concerns about such a large damages award. *See Wakefield v. Visalus*, 51 F.4th 1109, 1120 (9th Cir. 2022) (remanding mandatory nine figure TCPA damages award for consideration of whether those damages violate Due Process).

Despite these concerns, to the best of Class Counsel's knowledge, the relief here exceeds the relief in many other approved TCPA settlements. A sample of such approved settlements is shown here:

| Case | Per Claimant Recovery |
|---|---|
| *Couser v. Comenity Bank* 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (collecting other settlements) | $13.75 |
| *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 2016 U.S. Dist. LEXIS 892 (D. Or. Jan. 5, 2016) | $140.86 |
| *Franklin v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) | $71 |
| *Gehrich v. Chase Bank* 316 F.R.D. 215 (N.D. Ill. 2016) | $52.50 |
| *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 345 (D.N.J. 2020) | $75.30 |
| *Lalli v. First Team Real Estate—Orange Cnty*, 2022 U.S. Dist. LEXIS 161756 (C.D. Cal., Sept. 6, 2022) | $110[5] |

---

[5] Described by the court as a "strong result." *Id.* at *30.

As one court has recently noted, most TCPA settlements result in a "range from $20 to $100 per-class member." *Retina Assocs. Med. Group. v. Keeler Instruments*, 2019 U.S. Dist. LEXIS 239998, *10 (C.D. Cal. Dec. 13, 2019). Indeed, in a court-created chart in another TCPA settlement, of the 12 cases listed, only one had a higher per-claimant award than the $160 per-claimant award here, and that was only because that case had a sub-2% claims rate (whereas here, all claimants receive $160 whether the claims rate is 1% or 100%). *See Ward v. Flagship Credit Acceptance LLC*, 2020 U.S. Dist. LEXIS 25612, Appendix A (E.D. Pa. Feb. 13, 2020).

Settlements that resulted in "better" per-claimant relief typically did so only after years of litigation and after the case was all but won for the plaintiff. For example, *Chinitz v. Intero Real Estate Servs.*, 18-cv-5623 (N.D. Cal), upon which this Settlement was structurally modeled, was a TCPA case with a similar class size (37,962 vs 32,738), a similar number of communications (171,000 vs 220,000), but which was *much* further along. It had been litigated for over three years at the time of settlement, with a certified class and favorable-to-the-class rulings on multiple motions for summary judgments. *See Chinitz v. Intero Real Estate Servs.*, 2022 U.S. Dist. LEXIS 196781, *2-5. *Intero* settled for $350 per class member. While the relief per-class member here is approximately half of what *Intero* obtained, considering the efficiency of the settlement *and* the remaining risks, the result is strong.

Accordingly, the Settlement here is well within the range of reasonableness.

### 4. Continued litigation would be lengthy, complex, and expensive.

As discussed above, this case presented novel—and often near first

10

impression—legal issues that, if resolved in Defendants' favor, would bar recovery altogether, and if resolved in Plaintiff's favor, would nevertheless result in uncertain damages. Furthermore, regardless of which side prevailed, and regardless of any damages awarded, appeals would almost certainly follow, given the ever-shifting TCPA landscape, the novel issues presented, and the scarcity of court decisions on the FTSA.

### 5.   There has been no opposition to the settlement.

There has been no objection to the Settlement, and only a single opt-out (from an individual who has a similar case against Defendants pending). To the contrary, as of this filing, nearly 1,500 Class Members have submitted valid claims. Considering the deficient claims process that is presently ongoing through January 19, the final claims rate will likely end up around seven percent (approximately 2,200 approved claims).

### 6.   The case settled early, but at an "inflection" point.

"The stage of the proceedings at which settlement is achieved is 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Saccoccio*, 297 F.R.D. at 694. "Early settlements are favored", such that "vast formal discovery need not be taken." *Id.*

The case here settled early and before "vast formal discovery" was taken, but it did so at a natural time in the case. The main issues moving forward in this case were the constitutionality of the FTSA, an issue which would almost certainly result in

appeals either way; class certification; and damages under the TCPA.[6] Defendants'
constitutionality arguments were fully briefed and ripe for determination by this Court.
[Dkt. 33.] Discovery was not set to close until December 2023, which means class
certification briefing would likely not occur until early 2024. Damages would, of
course, necessitate a trial. Even at this early stage, there were no secrets as to the
Parties' positions on these issues moving forward. As such, with all Parties' cards
down, it made sense to explore a resolution before significant time and expense was
spent on discovery.

To do so, the Parties attended an all-day mediation with a respected mediator
familiar with the TCPA. After hearing the Parties explain their respective positions
and fail to reach an agreement, the case resolved on the mediator's own proposal.

Accordingly, this factor weighs in favor of final approval.

## IV.    The Settlement Class should be finally certified.[7]

"A class may be certified 'solely for purposes of settlement [if] a settlement is
reached before a litigated determination of the class certification issue." *Borcea v.
Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006). In the settlement context, "the
requirements of Rule 23, Federal Rules of Civil Procedure, that serve 'to protect
absentees by blocking unwarranted or overbroad class definitions []demand undiluted,
even heightened attention in the settlement context." *Amchem Products, Inc. v. Windsor*,

---

[6] This is not to say that there were no other issues, but these issues were the three that the Settling
Parties agreed would drive the future of this case.

[7] The discussion herein is largely identical to that found in Plaintiff's Motion for Preliminary Approval.

521 U.S. 591, 620 (1997). Plaintiff bears "the burden of establishing that each requirement of Rule 23(a) and at least one requirement of Rue 23(b) is satisfied."

Plaintiff respectfully requests that the Court finally certify the class defined in the Settlement Agreement. For reference, the preliminarily certified Settlement Class is defined as:

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

### A. **Rule 23(a) is Satisfied.**

Rule 23(a) requires (i) that the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

### 1. **Numerosity.**

In the 11th Circuit, the numerosity requirement is generally satisfied when the number of class members exceeds 40. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Numerosity is met for the proposed class. Defendants' records indicate that the class has 32,738 members.

### 2. **Commonality.**

Rule 23(a)(2) requires that there be questions of law or fact common to the class.

"What matters to class certification … is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011). Commonality is met for the Settlement Class because there are numerous questions generating common answers, including, but certainly not limited to, (i) whether and why Defendants system was set up to, and did, send text messages to Settlement Class Members after Defendants were asked stop; (ii) whether Defendants text messages were telemarketing; and (iii) whether the "emergency purposes" or another exception still applies to wrong number calls. These questions are all susceptible to generalized proof and would drive the resolution of the matter for the Settlement Class as a whole.

### 3. Typicality.

Rule 23(a)(3) requires that the class representative's claims be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "Typicality 'focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Benson v. Enter Leasing Co.*, 2021 U.S. Dist. LEXS 101057, *13 (M.D. Fla. May 11, 2021) (Dalton, J.) Plaintiff's factual basis and legal theories are identical to that of the rest of the class: that he asked Defendants, via text message, to "stop" texting him, that Defendants continued to do so, and that these post-"stop" messages violate both the TCPA and the FTSA. [Dkt. 55.]

### 4. Adequacy.

14

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named plaintiff and counsel. *Amchem Prods. v. Windsor*, 521 U.S. 591, 626, n. 20 (1997). The adequacy requirement is met here.[8]

With respect to the proposed class representative, this inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Id.* at 625. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26. This requirement tends to merge with the commonality and typicality inquiries, "which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626, n.20 (quotations and citations omitted).

Plaintiff here has remained diligent and involved throughout this litigation. Plaintiff and his counsel are in frequent communication about all aspects of the case. Plaintiff has remained readily available throughout; has asked incisive questions; has reviewed filings; has reviewed, understood, and accepted the class-wide settlement; has promptly responding to any issues or concerns raised; and at all times has acted in the best interest of the Class rather than himself. Plaintiff has fulfilled, and will

---

[8] This factor overlaps with Fed. R. Civ. P. 23(e)(2)(A), requiring that the class representatives and class counsel have adequately represented the class.

continue to fulfill, his duties as representative of the Class.

Proposed Class Counsel also satisfies the adequacy requirement. Attorney Glapion has extensive experience litigating TCPA matters individually and on a class-wide basis. Since founding The Glapion Law Firm in May 2015, Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA class action in which the court approved an $8.5 million class action settlement, which was successfully administered. In 2017, Attorney Glapion was appointed as sole lead counsel in *Allard et al. v. SCI Direct, Inc.*, a TCPA class action in which the Court approved a $15 million class action settlement, which was successfully administered. Case No. 17-cv-4692 (N.D. Illinois). In 2018, Attorney Glapion was also appointed co-lead counsel in *Griffith v. ContextMedia, Inc.*, Case No. 16-cv-2900 (N.D. Illinois), a TCPA class action in which the Court approved a $2.9 million settlement, which was successfully administered. In 2022, Attorney Glapion was appointed sole lead counsel in *Walker v. Highmark BCBS Health Options, Inc.*, 2020 U.S. Dist. LEXIS 225998 (W.D. Pa. Dec. 13, 2022), a $1.85m TCPA class action settlement which was finally approved and successfully administered. Attorney Glapion has also recovered over $1 million for clients in hundreds of individual TCPA cases. Attorney Glapion's familiarity with the underlying law has and will continue to serve the Settlement Class well. *See* Declaration of Jeremy M. Glapion, Dkt. 56-2. Attorney Glapion has never been found to be inadequate counsel.

Co-Class Counsel, Attorney Sohn, has been referred to as being part of the

16

"Miami legal Hall of Fame" by the Hon. Michael Hanzman, after he recently served in a leadership role on the Plaintiffs' Steering Committee for the historic *In re Champlain Towers' South Collapse Litig.* Class action settlement, which resolved with $1.2b in wrongful death compensation fund along with a return of 100 percent of unit appraisal value to property owners. Attorney Sohn also serves as part of the leadership committee for the ongoing *In re NFL Players' Concussion Litig.* He is exceptionally experienced in plaintiffs-side litigation and mass- and class-actions. In the aggregate, Attorney Sohn's aggregate class and individual victim recoveries exceed $2 billion. *See* Declaration of Bradford R. Sohn, Dkt. 56-3.

Attorneys Glapion and Sohn have diligently litigated this case. They identified and thoroughly pleaded viable claims on behalf of Plaintiff DeSouza and the Settlement Class. They served discovery, opposed Defendants' Motion to Dismiss, responded promptly to Court orders and requirements, implemented and handled the strategy that resulted in the strong result here, and participated in the all-day mediation that brought about this settlement.

### B. Rule 23(b)(3) is Satisfied.

To certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In the settlement certification context, manageability of a trial need not be considered. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (writing "a district

court need not inquire whether the case, if tried, would present intractable management problems" in the context of settlement-only class certification.)

### 1. Predominance.

Under Rule 23(b)(3), a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The 'overarching purpose' of the predominance requirement is to ensure 'that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Benson*, 2021 U.S. Dist. LEXIS at *17-18 (quoting *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1235 (11th Cir. 2016)). Predominance requires courts "to consider whether the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof." *Benson*, 2021 U.S. Dist. LEXIS at *18 (quoting *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1040 (11th Cir. 2019). "To determine predominance, courts must: (1) identify the claims and defenses and their elements; (2) classify each as common or individual questions, by predicting how the parties will prove them at trial; and then (3) determine whether the common ones predominate." *Benson*, 2021 U.S. Dist. LEXIS 101057 at *18.

Plaintiff's operative Fourth Amended Complaint has three claims: two under the TCPA and one under the FTSA.

### a. 47 C.F.R. § 64.1200(c)

18

Plaintiff's TCPA claims involve two separate violations of regulations promulgated under § 227(c) of the TCPA. To show a violation of § 227(c), Plaintiff must prove that he received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under § 227(c). *See Hand v. Beach Entm't KC*, 456 F. Supp. 3d, 1099, 1119 (W.D. Mo. 2020). The two regulations at issue are found at 47 C.F.R. § 64.1200(c) (relating to the National Do-Not-Call Registry) and § 64.1200(d) (relating to internal do-not-call policies and procedures).

Section 64.1200(c) prohibits a person or entity from initiating any "telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone on the national do-not-call registry[.]" Combining § 227(c) and § 64.1200(c), Plaintiff must prove that 1) in a 12-month period, he received more than one 2) telephone solicitation 3) which Defendants or someone on their behalf initiated 4) to his telephone number on the National Do-Not-Call Registry.

"Telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). Excluded are calls made to any person with that person's prior express invitation or to any person with whom the caller has an established business relationship.

Whether Defendants' text message invitations "to order CPAP supplies" after being asked to stop qualify as "telephone solicitations" does not change from Settlement Class Member to Settlement Class Member, but is instead a question of

19

generalized applicability.

Identifying which post-stop text messages were sent to numbers on the National Do-Not-Call Registry would be a simple matter of using an automated process to cross-reference the entire class list against the National Do-Not-Call Registry.

Finally, there is no predominance issue regarding which Class Members received more than one message, as the Class definition is limited to such persons, and such persons can be readily ascertained from Defendants' records. Common issues thus predominate.

> b.  TCPA § 64.1200(d)

Section 64.1200(d) requires that companies implement minimum policies and procedures for maintaining an internal do-not-call list prior to making any telemarketing call. 47 C.F.R. § 64.1200(d). The rule, as currently codified, states:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber[9] unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

For Plaintiff to prevail on a claim under § 64.1200(d), he must show 1) he received from or on behalf of Defendants 2) more than one call in a 12-month period 3) that constitutes telemarketing. Whether Defendants had the required policies and procedures in place is an affirmative defense, given the introduction of those requirements with an "unless" clause, which is considered to be "telltale language …

---

[9] In 2003, this was expanded to include calls to cellular telephones. 47 C.F.R. § 64.1200(e).

indicative of an affirmative defense." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015). Nevertheless, it will be discussed.

There is no predominance issue regarding whether a message was from or on behalf of Defendants, as all messages in the class definition were for the purpose of ordering CPAP supplies from Defendants and Defendants do not contest that those messages were sent by them or on their behalf.

As discussed above, there is no predominance issue regarding which Class Members received more than one message, as the Class definition is limited to such persons and such persons can be easily identified from Defendants' records.

"Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). As with telephone solicitation, this does not change from member-to-member.

Finally, whether Defendants had the required policies and procedures in place is an issue relevant to the class as a whole: Defendants either had them or they did not. This existence or adequacy of these policies and procedures does not change from Class Member to Class Member.

### c.  FTSA § 501.059(5)

The FTSA § 501.059(5) prohibits a "telephone solicitor" from initiating "telephonic sales call" to a consumer who previously asked it to stop. Accordingly,

Plaintiff would need to show that (1) Defendants were "telephone solicitors",[10] (2) that their text messages were "telephonic sales calls",[11] and (3) that each class member asked Defendants to "stop" prior to the messages.

The first two issues are indisputably subject to generalized proof. Whether Defendants were telephone solicitors does not change from Settlement Class Member to Settlement Class Member. Similarly, whether Defendants' text messages were "telephonic sales calls" also does not change from member to member. All text messages to putative Class Members were sent for the purpose of "inviting recipients to order CPAP supplies." Whether such messages are "telephonic sales calls" would thus be resolved on a class-wide basis.

The final issue, that each member asked Defendants to "stop", is ostensibly individualized but trivial, relative to the other issues. Defendants maintain records of all inbound and outbound text messages, as well as the names and addresses associated with corresponding phone numbers. Identifying those who received an invitation "to order CPAP supplies" after that person asked Defendants to stop is a simple matter of extracting from Defendants' database all telephone numbers which sent to Defendants

---

[10] Defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." FTSA, 501.059(1)(i).

[11] Defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."

a stop message and then further identifying which of those numbers continued to receive text messages *after* the stop text. This process could easily be automated and completed with minimal work. Indeed, Defendants have already done so, which is how the Parties arrived at the 32,738 Settlement Class size.

## 2. Superiority.

Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Absent class treatment in this case, each individual member of the proposed class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings across the country, the result of which would be a multiplicity of proceedings conducted at significant expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendants. Moreover, there is no indication that class members have a strong interest in individual litigation, let alone any incentive to pursue their claims individually. The potential economic payout is small, limited to $500 per text message (with seven being the average number of text messages per class member). *See Benson*, 2021 U.S. Dist. LEXIS 101057 at *23 (noting a small economic payout of less than $6,000 on average supports the superiority of a class action). Indeed, no one else has sued Defendants over their calling practices. There are no manageability issues either—the individual questions are manageable and will not result in mini-trials. On the other hand, permitting this Settlement Class will allow all such persons to obtain compensation in one fell swoop. Fairness, efficiency, and finality favor treating this as

23

a class action.

## V.     CONCLUSION

Plaintiff respectfully requests that the Court 1) finally approve the proposed Settlement; 2) finally certify the Settlement Class; 3) finally appoint Attorneys Jeremy M. Glapion of Glapion Law Firm and Brad Sohn of Brad Sohn Law, PLLC as Class Counsel; 4) grant Plaintiff's Motion for Attorneys' Fees and Costs [Dkt. 60]; and 5) grant any other relief this Court deems necessary, just, and proper.

Dated: December 21, 2023                    */s/ Jeremy M. Glapion*
                                            Jeremy M. Glapion
                                            **THE GLAPION LAW FIRM, LLC**
                                            1704 Maxwell Drive
                                            Wall, New Jersey 07719
                                            Tel: 732.455.9737
                                            Fax: 732.709.5150
                                            jmg@glapionlaw.com

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), on December 20, 2023, the Parties conferred in good faith regarding the instant Motion. Defendants, through their counsel, informed Plaintiff's counsel that they consent to the relief sought herein.

Dated: December 21, 2023

*/s/ Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com