# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TYLER DESOUZA,

    Plaintiff,

v.                                Case No:   6:22-cv-1047-RBD-LHP

AEROCARE HOLDINGS LLC,

    Defendant

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM FOR ATTORNEYS' FEES AND COSTS (Doc. No. 60)**
>
> **FILED:** October 17, 2023
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. BACKGROUND.

On June 14, 2022, Plaintiff Tyler DeSouza instituted this action on behalf of himself and all others similarly situated, alleging violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA") and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"). Doc. No. 1. The operative pleading (fourth amended complaint) alleges a claim under the FTSA (Count I) and two claims under the TCPA (Counts II and III) against Defendants AdaptHealth Corp. ("AdaptHealth") and AeroCare Holdings ("AeroCare"), which, in sum, stem from text message solicitations sent to Plaintiff and others by Defendants regarding the purchases of CPAP supplies, after requests to stop. Doc. No. 55.

The parties settled the matter at mediation, prior to class certification or any judicial resolution on the merits of this case. Doc. No. 43. Plaintiff thereafter, without opposition from Defendant, filed a motion for preliminary approval of the settlement and for certification of the class action for settlement purposes. Doc. No. 56. The Court granted the motion, preliminarily certified this matter as a class action, appointed Plaintiff as class representative and Jeremy M. Glapion, Esq. and Bradford R. Sohn, Esq. as class counsel, preliminarily approved the parties' settlement and proposed notice, adopted the parties' proposed schedule, and set this matter for a final fairness approval hearing. Doc. No. 58. *See also* Doc. No. 57. The final fairness approval hearing is currently scheduled for February 13, 2024. Doc. No. 64.

Now before the Court is Plaintiff's Motion and Supporting Memorandum for Attorneys' Fees and Costs, which was timely filed on October 17, 2023 pursuant to

the parties' proposed schedule. Doc. No. 60. *See also* Doc. No. 56, at 30, Doc. No. 58, at 2 ¶ 7. Defendants do not oppose the motion. Doc. No. 61; Local Rule 3.01(b), (c). The motion has been referred to the undersigned, and the matter is ripe for review.

**II.   ANALYSIS.**

   A.   <u>Common Fund v. Fee Shifting</u>.

As an initial matter, in the motion, Plaintiff provides an analysis as to the reasonableness of the attorneys' fees "awarded from [the] common fund." Doc. No. 60, at 6–15.[1] However, upon review, the parties' settlement agreement indicates that the fee award is *not* part of a common fund, and the fees will be determined and awarded wholly separate and apart from the payment of any awards to class members. Doc. No. 56-1 ¶ 15. The settlement agreement provides:

> Class Counsel will petition the Court for an award of Attorneys' Fees and Costs for all attorney services and expenses related to this Litigation, including but not limited to, services rendered and to be rendered in connection with the Settlement Agreement and its implementation. The amount of Attorneys' Fees and Costs to be awarded to Class Counsel and payable in accordance with Sections 4.1.1 and 7.5, unless otherwise agreed, shall be determined by the Court. Class Counsel agree they will not seek or accept Attorneys' Fees exceeding 25 percent of the amount calculated by multiplying the Cash Award ($160) by the number of Settlement Class Members

---

[1] Pinpoint citations to the motion reflect the pagination provided by CM/ECF, rather than the internal pagination provided by Plaintiff.

>    (currently understood to be 32,035) ("Fee Calculation"), plus their actual costs.   The AdaptHealth Parties reserve the right to object to the petition for Attorneys' Fees and Costs, or any part thereof.   Under no circumstances may Plaintiff, the Class, or Class Counsel seek or accept Attorneys' Fees that exceed the Fee Calculation.   The Attorneys' Fees and Costs shall be awarded in addition to the amounts paid to the Settlement Class.   In other words, the amounts paid to the Settlement Class will not be reduced by the amount of Attorneys' Fees and Costs awarded.

*Id.* ¶ 15.1.

"[T]he key distinction between common fund and fee-shifting cases is whether the attorney's fees are paid by the client (as in common-fund cases) or by the other party (as in fee-shifting cases)."   *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019); *see also Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("[A] key element of the common fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from the fund or damage recovery (fee spreading).").   "Courts will award fees based on a reasonable percentage of the fund by applying the *Johnson* fact[ors].   Whereas, with fee-shifting cases, courts apply the 'lodestar method' by which a reasonable fee award is derived by multiplying counsel's reasonable hourly rate by the number of hours counsel reasonably expended."   *Roll v. Enhanced Recovery Co., LLC*, No. 6:20-cv-212-RBD-EJK, 2023 WL 2919839, at *2 (M.D. Fla. Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 2535081 (M.D. Fla. Mar. 16, 2023) (first citing

*Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), then citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Nonetheless, "[w]here class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately." *In re Home Depot Inc.*, 931 F.3d at 1080. "The rationale for the constructive common fund is that the defendant negotiated the payment to the class and the payment to counsel as a 'package deal.'" *See id.* (collecting cases and explaining: "The defendant is concerned, first and foremost, with its total liability. Thus, courts have recognized that, as a practical matter, defendants undoubtedly take into account the amount of attorney's fees when they agree on an amount to pay the class. By taking the amount of attorney's fees into account, the defendant effectively reduces the class' recovery accordingly." (citations omitted)). The constructive common fund analysis does not apply, however, where the amount of attorneys' fees is "completely undetermined." *Id.* at 1081.

Here, a review of the settlement agreement compels the undersigned to conclude that the constructive common fund analysis should apply. Specifically, the settlement agreement provides that the attorneys' fee award is capped at 25% of the total cash value of the settlement. Doc. No. 56-1 ¶ 15.1. The settlement agreement further states: "The cap on Attorneys' Fees described herein is a material

aspect of this Agreement. In the event Plaintiff, the Settlement Class, or Class Counsel accept any amount of Attorneys' Fees (exclusive of costs) that, in total, exceeds the Fee Calculation, the AdaptHealth Parties shall have the right [to] terminate this Agreement." *Id.* ¶ 15.2. Thus, a negotiated cap on the total fee award and indication that this cap is an integral part of the settlement renders a constructive common fund analysis appropriate. *See In re Home Depot Inc.*, 931 F.3d at 1081 ("In th[is] scenario, the constructive common fund makes more sense because the defendant used the cap to determine its total exposure and (theoretically) limited the class' recovery accordingly."). *See also Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-cv-891-RBD-LHP, 2022 WL 4354846, at *2 (M.D. Fla. Sept. 20, 2022) ("If the settlement agreement provides that fees will be paid separately, courts may classify the fee arrangement as a 'constructive common fund' governed by common-fund principles." (citing *In re Home Depot Inc.*, 931 F.3d at 1080)).

Accordingly, the undersigned will respectfully recommend that the Court classify the fee arrangement in this case as a "constructive common fund" and apply a common fund analysis in determining the reasonableness of the requested fee award.

B.  Reasonableness of Fee Request.

As the presiding District Judge has previously explained:

"Attorneys who represent a class, and achieve a benefit for the class members, are entitled to be compensated for their services." *Ressler v. Jacobson,* 149 F.R.D. 651, 653 (M.D.Fla.1992) (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)). When the parties to a class action reach a settlement agreement whereby a "common fund" is created for the benefit of the class, an award of attorneys' fees is governed by the common fund doctrine. *See id; Stahl v. MasTec, Inc.,* Case No. 8:05–cv–1265–T–27TGW, 2008 WL 2267469, at *1 (M.D.Fla. May 20, 2008). Under this doctrine, class counsel is entitled to a reasonable percentage of the class settlement fund, subject to Court approval. *Camden I Condo. Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 773–74 (11th Cir. 1991).

"The majority of common fund fee awards fall between 20% and 30% of the fund." *Id.* at 774. Thus, the "bench mark" percentage fee award is 25%, which "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. In considering an adjustment, the Court should consider the following twelve "*Johnson* factors":

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

> attorneys; (10) the "undesirability of the case"; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.
>
> *Id.* at 772 n.2 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).  Additionally, the Court should consider "whether there are any substantial objections . . . to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class . . ., and the economics involved in prosecuting a class action," along with any factors unique to the particular case that would be relevant to the Court's consideration.  *Id.* at 775.
>
> The U.S. Court of Appeals for the Eleventh Circuit requires that the district court "articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based.  The district court's reasoning should identify all factors upon which it relies and explain how each factor affect its selection of the percentage of the fund award as fees."  *Id.* (citations omitted).

*Cooper v. Nelnet, Inc.*, No. 6:14-cv-314-Orl-37DAB, 2015 WL 4623700, at *1 (M.D. Fla. July 31, 2015).

Here, pursuant to the parties' settlement, Defendants have agreed to pay $160 to each of the 32,738 class members who file an approved claim, for a total settlement cash value of $5,238,080.  Doc. No. 60, at 3.  *See also* Doc. No. 56-1, at 3; Doc. No. 62 ¶ 6.  Class counsel seeks an award of attorneys' fees of $1,281,400, which would equate to 24.46% of the total cash value of the settlement.  Doc. No. 60, at 2, 5.  *See also* Doc. No. 56-1 ¶ 15 (limiting fees to 25% of the settlement

- 8 -

amount).² Class counsel also requests $14,341.83 in costs. Doc. No. 60, at 4. *See also* Doc. No. 56-1 ¶ 15 (providing that counsel will seek actual costs).

As an initial matter, counsels' request to use the total cash value of the settlement to calculate the percentage of the common fund is appropriate. Doc. No. 60, at 6–7. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999); *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 766–67 (11th Cir. 2017); *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015); *see also Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *18 & n.5 (S.D. Fla. July 13, 2021) (collecting authority for proposition that "in the Eleventh Circuit, class counsel is awarded a percentage of the funds made available through a settlement, not the amount of funds actually paid out").

And attorneys' fees of $1,281,400, which would equate to 24.46% of the total cash value of the settlement, is presumptively reasonable under Eleventh Circuit precedent. *See In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1100 (11th Cir. 2023) (in applying the percentage-of-the-fund doctrine, "[i]f a fee award falls between 20 and 25 percent, it is presumptively reasonable.").

---

² At the time of the motion for preliminary approval of the settlement, the proposed class had 32,035 members, and class counsel intended to seek 25% of the total value of the settlement at that time. Doc. No. 56, at 8. Since that time, it appears that additional potential class members have been identified, rendering the total number 32,738. Doc. No. 60, at 3; Doc. No. 62 ¶ 6. However, class counsel has elected not to seek an increased fee award, and has stood on the amount initially quoted in their motion for preliminary approval. *See* Doc. No. 60, at 4 & n.3.

Moreover, on balance, upon consideration of the *Johnson* factors, the undersigned otherwise finds the requested fees reasonable in this case.[3]

As Plaintiff acknowledges, the first factor—time and labor required—actually weighs against the requested fee in this case, as this case settled relatively early, approximately seven months after the case was initiated. Doc. Nos. 1, 43–44. *See Cooper*, 2015 WL 4623700, at *2 (finding that the first *Johnson* factor supported a downward adjustment from the 25% benchmark percentage where the case was only pending for a year and a half, and the parties notified the Court of the settlement only seven months into the litigation). And Plaintiff says that the tenth factor (undesirability of the case) also weighs against the requested fee, as class counsel "believes most competent and capable TCPA attorneys would have taken this case." Doc. No. 60, at 14. In addition, the seventh and eleventh *Johnson* factors (time limitation imposed by client or circumstances; nature and the length of the professional relationship with the client), do not appear to be relevant, and are not addressed in Plaintiff's motion. *See* Doc. No. 60.

---

[3] Given that the fee award is presumptively reasonable, it does not appear that the Court need go further in its analysis. *See Sec. & Exch. Comm'n v. Davison*, No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641, at *3 (M.D. Fla. Mar. 8, 2023), *report and recommendation adopted,* 2023 WL 3995481 (M.D. Fla. June 1, 2023) ("An attorney's fee request that amounts to 25% percent of the common fund total is presumptively reasonable. Accordingly, the Court may award these fees without further consideration." (first citing *Arkin v. Pressman, Inc.*, 38 F.4th 1001, 1006 n.3 (11th Cir. 2022), then citing *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011)). For the sake of completeness, however, the undersigned addresses the *Johnson* factors.

However, the undersigned agrees with Plaintiff that the remaining *Johnson* factors weigh in favor of the requested fee. *See* Doc. No. 60, at 9–14. As to the second, third, and ninth *Johnson* factors (novelty and difficulty of the questions involved, the requisite legal skill required, and experience, reputation, and ability of the attorneys), Plaintiff explains that this was not an average TCPA/FTSA case, as the case raised several issues regarding the constitutionality of the FTSA, exemptions under the TCPA, and the amount of damages available on the TCPA claims. *Id.* at 9. *See also* Doc. Nos. 19, 33. Class counsel "was able to navigate these hurdles and obtain a strong settlement in part due to their skill and experience in consumer class actions and TCPA litigation in particular." Doc. No. 60, at 10–11; *see also* Doc. No. 60-1 (declaration of Attorney Glapion); Doc. No. 60-2 (declaration of Attorney Sohn). Class counsel has extensive experience, in particular in class action cases and settlements. *See id.* These factors weigh in favor of the requested fee award. *See Cooper*, 2015 WL 4623700, at *2 ("[T]he Court recognizes that it is not easy for consumers to obtain counsel in TCPA actions, especially considering that the work for a class action is typically done on a contingent basis and that TCPA law is relatively new. . . . The skill and experience of the lawyers involved, particularly Class Counsel, is likely responsible, at least in part, for the early and efficient resolution of the claim.").

As to the fifth and twelfth factors (customary fee and awards in similar cases), Plaintiff provides authority demonstrating that the fee request here is lower than fee awards in other similar cases. *See* Doc. No. 60, at 11–12 (citing *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding fees in total of 30% of the settlement fund where "[e]ach claimant will receive approximately $81, which equals or exceeds the recovery in a typical TCPA class action."); *Cooper*, 2015 WL 4623700, at *3 (27.78% fee award on $150 per class member in TCPA case); *Abramson v. Agentra, LLC*, No. CV 18-615, 2021 WL 3370057, at *14, 18 (W.D. Pa. Aug. 3, 2021) (fees of one-third of the total settlement on TCPA settlement paying between $48.39 and $145.17 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (approving fee of 36% of the TCPA settlement fund)). Thus, this factor also weighs in favor of the fee request. *See also Sec. & Exch. Comm'n v. Davison*, No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641, at *4 (M.D. Fla. Mar. 8, 2023), *report and recommendation adopted*, 2023 WL 3995481 (M.D. Fla. June 1, 2023) (approving fee "within the realm of reasonableness when considered against other attorney's fee awards in similar litigation").

The fourth and sixth factors (preclusion of other employment and whether the fee is fixed or contingent) also weigh in favor of the fee request. According to Plaintiff, the nature of a class action precludes other work, class counsel are solo practitioners, and class actions constitute much of counsels' workload. Doc. No.

60, at 11. In addition, class counsel took this case on a contingency fee arrangement, and to date, has received no compensation for this litigation and has incurred significant costs without guaranteed recovery. *Id.* at 12. The undersigned agrees with Plaintiff that these factors weigh in favor of the fee request. *See Davison*, 2023 WL 2931641, at *4, *report and recommendation adopted*, 2023 WL 3995481 (M.D. Fla. June 1, 2023) ("The inherent risk of a contingency fee arrangement is an important factor in determining the reasonableness of a fee award." (citing *Ressler v. Jacobson*, 149 F.R.D. 651, 653 (M.D. Fla. 1992))); *Roll*, 2023 WL 2919839, at *3, *report and recommendation adopted*, 2023 WL 2535081 (M.D. Fla. Mar. 16, 2023) (considering counsels' representations that the case required a significant amount of time and that class counsel was limited in how much time could be devoted to other matters).

In addition, the eighth *Johnson* factor (amount involved and results obtained) also strongly weighs in favor of the requested fee. As discussed above, pursuant to the settlement agreement, each qualifying class member who submits a claim will receive $160, resulting in a total cash value of the settlement of $5,238,080. Doc. No. 56-1. Plaintiff cites authority suggesting that the individual class member relief exceeds that received in other approved settlement agreements resulting from a similar case posture. *See* Doc. No. 60, at 12–13 (citing, *inter alia*, *Retina Assocs. Med. Grp., Inc. v. Keeler Instruments, Inc.*, No. SACV 18-01358-CJC (DFMx), 2019 WL

13043767, at *3 (C.D. Cal. Dec. 13, 2019) ("[M]ost TCPA settlements . . . usually range from $20 to $100 per-class member."); *see also Cooper*, 2015 WL 4623700, at *2 (finding class counsel obtained significant benefits for the TCPA class, where each class member would receive the maximum proposed benefit—$150.00).[4]

Finally, the undersigned notes that the parties' settlement "including the negotiation of the attorneys' fees, was reached in mediation with a skilled mediator. Thus, there is a presumption that the [a]greement is fair, negotiated at arm's length and without collusion."  *See Cooper*, 2015 WL 4623700, at *2.

In light of these considerations, the undersigned finds the requested attorneys' fee award to be reasonable.

C. Costs.

Class counsel seeks to recover its reasonable costs for this litigation in the total amount of $14,341.83, and counsel submits with the motion the declaration of Attorney Glapion providing a line-item breakdown for the costs actually incurred. Doc. No. 60, at 15; Doc. No. 60-1 ¶ 10.

---

[4] In addition to the monetary relief, Plaintiff also notes that his "efforts made Defendants aware of the purported glitch causing the Post-Stop Messages at issue, preventing a potentially significant number of Post-Stop Messages from being sent to other persons."  Doc. No. 60, at 3.  Although Plaintiff has not assigned value to the prevention of additional texts, Plaintiff notes that it is a proper consideration on the reasonableness of a fee request in a TCPA settlement.  *Id.* at 7 n.6 (citing *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *10 (S.D. Fla. Nov. 20, 2017)).

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citations omitted). Here, because the costs are adequately supported, and notably constitute less than 1% of the total cash value of the settlement, and given the lack of any opposition from Defendants, the undersigned will recommend that the Court approve the costs. *See id.* at *6–7 (awarding actual costs and expenses equating to approximately 1.2% of the settlement fund as considered "in line with normal expenditure amounts as a percentage of the total recovery amount" (citing *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012) (citing cases approving provision of costs in the 2% of the total recovery range); *James*, 2017 WL 2472499, at *2 (in connection with TCPA settlement, approving expenses to include mediation, pro hac vice admission fees, and travel expenses incurred)).

### III. RECOMMENDATION.

For the reasons discussed herein, the undersigned respectfully **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion and Supporting Memorandum for Attorneys' Fees and Costs (Doc. No. 60), and **APPROVE** the request for $1,281,400 in attorneys' fees and $14,341.83 in costs.

**NOTICE TO PARTIES**

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 22, 2024.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy