UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TYLER DESOUZA,

    Plaintiff,

v.                                       Case No. 6:22-cv-1047-RBD-LHP

AEROCARE HOLDINGS LLC,

    Defendant.
_____

**ORDER**

Before the Court are Plaintiff's unopposed motions for: (1) final approval of the class action settlement and certification of the settlement class (Doc. 63); and (2) attorney's fees and costs (Doc. 60). The motions are due to be granted.

**BACKGROUND**

This is a class action suit in which Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"). Plaintiff has been on the National Do-Not-Call Registry since November 6, 2015. (Doc. 55, ¶¶ 28–29.) While Plaintiff tried to get a replacement CPAP machine, Defendant solicited him to buy additional CPAP supplies via email and phone. (*Id.* ¶¶ 31–35.) Plaintiff tried to unsubscribe from these communications (as well as other unprompted text messages) but despite text confirmations that his unsubscribe attempts were successful, Plaintiff kept

receiving texts from Defendant. (*Id.* ¶¶ 36–50.) Plaintiff alleges this conduct violated the TCPA and FTSA. (*Id.* ¶¶ 53–91.) So Plaintiff sued under Federal Rule of Civil Procedure 23 on behalf of a class defined as:

> Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

(*Id.* ¶ 92.) On behalf of the class, Plaintiff asserts one cause of action under the FTSA and two under the TCPA. (*Id.* ¶¶ 112–52.)

Framed by the proposal of their mediator, Rodney Max, the parties drafted a settlement agreement (Doc. 56-1 ("Agreement")). (Doc. 63, pp. 4–5.) Under the Agreement, Defendant agreed to pay $160 to each class member who submits an approved claim. (Doc. 56-1, pp. 21–22.) Defendant also agreed to separately cover attorney's fees and costs. (*Id.* at 25, 44–45.) In exchange, members of the class who do not opt out will release all claims against Defendant. (*Id.* at 34–38.)

Plaintiff moved unopposed for conditional certification of the class and preliminary approval of a class settlement. (Doc. 56.) U.S. Magistrate Judge Leslie Hoffman Price recommended that the Court grant the motion (Doc. 57), and the Court adopted her recommendation (Doc. 58). After the Court preliminarily approved the Agreement and preliminarily certified the class, Plaintiff sent notice under the agreement via both email and regular mail to about 98% of the 32,738

putative class members. (*See* Doc. 62; Doc. 63, p. 6.)

Plaintiff then moved unopposed for final approval of the settlement and certification of the class (Doc. 63). Plaintiff also moved unopposed for $1,281,400 in attorney's fees and $14,341.83 in costs. (Doc. 60; *see also* Doc. 61.) On referral, Judge Hoffman Price recommended that the Court grant the fee motion. (Doc. 65 ("R&R").) The Court then held a final fairness hearing. (Doc. 66 ("Hearing").) Both parties' counsel attended the Hearing, and no class members raised objections either before or at the Hearing. (*See id.*) After the Court held the Hearing, these matters became ripe.

## STANDARDS AND ANALYSIS

### I. Class Certification

To certify a class, the Court must find that all four requirements of Federal Rule of Civil Procedure 23(a) are met: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). Additionally, the Court must find that one of the three requirements of Federal Rule of Civil Procedure 23(b) are met. Fed. R. Civ. P. 23(b). Of the three Rule 23(b) requirements, the one most relevant here is the requirement that the Court find that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for

3

resolving the case. Fed. R. Civ. P. 23(b)(3). The Court addresses each in turn.

      **a.**      **Rule 23(a) Factors**

Here, all four Rule 23(a) factors are met. First, numerosity is met because the class of 32,738 members is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (class larger than forty members is sufficiently numerous); *see also Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 314 (M.D. Fla. 2018) (Dalton, J.). Next, commonality is met because there are questions of law or fact common to the class: all claims concern the functionality of Defendant's text message and telemarketing systems. Fed. R. Civ. P. 23(a)(2); *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (commonality requires "at least one issue whose resolution will affect all or a significant number of the putative class members"); *Andreas-Moses*, 326 F.R.D. at 315. Next, typicality is met because the class representative's claim arises from the same event and is based on the same legal theory as those of the class— that Plaintiff suffered the same FTSA and TCPA violations as those of the other class members. *See* Fed. R. Civ. P. 23(a)(3); *Williams*, 568 F.3d at 1357; *Andreas-Moses*, 326 F.R.D. at 309. Finally, adequacy is met because there are no substantial conflicts of interest and the parties raise no issues of class counsel's adequate representation. *See* Fed. R. Civ. P. 23(a)(4); *Busby v. JRHBW Realty*, 513 F.3d 1314, 1323 (11th Cir. 2008); *Andreas-*

*Moses*, 326 F.R.D. at 316.

      **b.**    **Rule 23(b)(3)**

Rule 23(b)(3) has two prongs: predominance and superiority. Fed. R. Civ. P. 23(b)(3). The Court addresses each in turn.

          **i.**    **Predominance**

"To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements. The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016); *see also Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-cv-891, 2021 WL 2138781, at *9 (M.D. Fla. May 11, 2021) (Dalton, J.). Questions are "common questions" if the same evidence will suffice for each class member. *Brown*, 817 F.3d at 1234. The common questions will "predominate" over the individual questions if the addition or subtraction of plaintiffs from the class will not impact the substance or quantity of evidence offered. *See Vega*, 564 F.3d at 1270.

That is the case here. The operative Complaint alleges three claims: two under the TCPA and one under the FTSA. (Doc. 55, ¶¶ 112–52.) All the claims stem from Defendant sending telemarketing messages to each of the class members after the members asked for the messages to stop, which means the same evidence

5

per class member will suffice. *See Brown*, 817 F.3d at 1234. And at the Hearing, both parties explained that the facts here are the same across all class members and are undisputed because they can be readily determined from Defendant's records. (*See* Doc. 66.) In light of this, removing or adding members to the class would not impact the substance of the evidence. *See Vega*, 564 F.3d at 1270. Further, there were no objections and only one opt-out from the class. (Doc. 63, p. 13; *see also* Doc. 66.) The only points of uncertainty that counsel pointed out here are the unresolved legal issues involving the FTSA and TCPA, which are not individualized per class member. (*See* Doc. 66; *see also* Doc. 63, pp. 20–25.) So not only do common issues "predominate" over individual issues, but neither party has identified any individual issues of note,[1] nor is the Court aware of any. Thus, the predominance factor weighs in favor of final class certification.

### ii. Superiority

As for superiority, "the more common issues predominate over individualized issues, the more desirable a class action lawsuit will be . . . ." *Williams*, 568 F.3d at 1358 (cleaned up). The Court should consider:

(1) The class members' interests in individually controlling the prosecution or defense of separate actions;
(2) The extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[1] Plaintiff concedes that the question of whether and how each class member asked Defendant to "stop" sending messages is necessarily individualized, but the Court agrees that this is trivial compared to other issues. (*See* Doc. 63, p. 22.)

6

>   (3) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>   (4) The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Benson*, 2021 WL 2138781, at *10. This list is non-exhaustive. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997).

Not only do common issues predominate over individual issues, but neither party has identified any individual issues of note other than the one opt-out. (*See* Doc. 66; *see also* Doc. 63, p. 13.) Given the strong similarity of each claim, the small payout per class member, and the fact that there is no indication any other plaintiff has pursued an individual action against Defendant, the parties have shown that a class action is the superior method of adjudicating these claims. *See Benson*, 2021 WL 2138781, at *10.

With the Rule 23(a) and Rule 23(b)(3) factors met, the class is due to be finally certified.

## II. Settlement Approval

A class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate" based on several factors. *Equifax,* 999 F.3d at 1273 (citing Fed. R. Civ. P. 23(e)(2)). To approve a settlement, the Court must hold a hearing and make this "fair, reasonable, and adequate" finding after considering whether: (1) the class representative and counsel have adequately represented the class; (2) the proposal was negotiated at

arm's length; (3) the relief for the class is adequate; and (4) the proposal treats class members equitably to each other. Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit also requires district courts to consider the "*Bennett* factors," which include:

(1) The likelihood of success at trial;
(2) The range of possible recovery;
(3) The point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
(4) The complexity, expense and duration of litigation;
(5) The substance and amount of opposition to the settlement; and
(6) The stage of proceedings at which the settlement was achieved.

*Equifax*, 999 F.3d at 1273 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The Court addresses the Rule 23(e)(2) and *Bennett* factors in turn.[2]

### a.     Rule 23(e)(2) Factors

All four of the Rule 23(e)(2) factors are met here. First, Defendant stated at the Hearing that there are "no questions whatsoever" that Plaintiff DeSouza and Attorneys Glapion and Sohn have adequately represented the class, and the Court sees no evidence to the contrary. (*See* Doc. 66); Fed. R. Civ. P. 23(e)(2)(A). Next, the proposal was negotiated at arm's length because there is no evidence of fraud or collusion and this is presumed because the agreement was reached assisted by a skilled mediator. Fed. R. Civ. P. 23(e)(2)(B); *see, e.g., Ponzio v. Pinon*, 87 F.4th 487, 507–08 (11th Cir. 2023); *Cooper v. Nelnet, Inc.*, No. 6:14-cv-314, 2015 WL 4623700,

---

[2] Plaintiff points out that the *Bennett* factors substantially overlap with the Rule 23(e)(2) factors, but the Court will address them separately for comprehensiveness. (*See* Doc. 63, pp. 5–15); *see also Equifax*, 999 F.3d at 1273 (district courts must "consider several *additional* factors" called the *Bennett* factors when approving a settlement (emphasis added)).

at *2 (M.D. Fla. July 31, 2015) (Dalton, J.). Third, the relief for the class is adequate at $160 per class member because Plaintiff has shown that the per-claimant recovery exceeds that of similar approved TCPA settlements and is substantial, given the uncertain trial outcomes (*see* Doc. 63, p. 9). Fed. R. Civ. P. 23(e)(2)(C); *see also Bermudez v. CFI Resorts Mgmt.*, 576 F. Supp. 3d 1099, 1104 (M.D. Fla. 2020) (Dalton, J.). Finally, the proposal treats class members equitably because each will receive the same payout no matter the claims rate. (*See* Doc. 56-1, p. 22.)

      b.    ***Bennett* Factors**

All of the *Bennett* factors weigh in favor of settlement approval. Factor 1 weighs in favor because the parties have identified legal issues of near-first impression related to the FTSA and TCPA claims. *Cf. Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-cv-550, 2020 WL 2517766, at *4 (M.D. Fla. Apr. 23, 2020) (in TCPA case, that there were open legal questions weighed in favor of settlement approval). Factors 2 and 3[3] weigh in favor of settlement approval because, as discussed above, the $160 per-claimant recovery is both adequate and above the range of recoveries in similar settlements and there is a real risk of the class members not recovering if the case went to trial. *Cf. Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (range of recovery should account for "all the

---

[3] "The second and third considerations of the *Bennett* test are easily combined." *Hanley*, 2020 WL 2517766, at *4 (cleaned up).

risks of litigation"). Factor 4 weighs in favor of approval because of the novel and potentially complex issues of first impression this litigation would present. *Cf. Hanley*, 2020 WL 2517766, at *4. Factor 5 weighs strongly in favor because there has been no objection to the settlement and only one class member opted out. (Doc. 66; *see* Doc. 63, p. 13); *cf. Hanley*, 2020 WL 2517766, at *4. And Factor 6 weighs in favor because even though the parties settled early in their litigation, they have shown that between knowing the novel legal issues for the Court's determination, the factual issues being largely undisputed, and the parties' positions being clear early on, they had "sufficient information to adequately evaluate the merits of the case" and weigh the benefits of settlement. *See Hanley*, 2020 WL 2517766, at *5.

As both the Rule 23(e)(2) and *Bennett f*actors weigh in favor of settlement, the Agreement is due to be finally approved.

### III.    Attorney's Fees and Costs

On referral, Judge Hoffman Price recommends that the Court grant Plaintiff's unopposed motion for attorney's fees and costs (Doc. 60). (Doc. 65.) Defendant does not oppose (Doc. 61), so the Court examines the R&R for clear error only. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Finding none, the R&R is due to be adopted.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

10

1. The R&R (Doc. 65) is **ADOPTED AND CONFIRMED** and made a part of this Order in its entirety.

2. The motions (Doc. 60, 63) are **GRANTED**.

3. The Court **FINALLY CERTIFIES** the following class:

   Since November 23, 2018, all persons to whose telephone number the AdaptHealth Parties initiated, or had initiated on their behalf, more than one text message in a 12-month period for the purpose of inviting the recipient to order CPAP supplies, after the recipient had replied "stop" or its equivalent to one of the AdaptHealth Parties' text messages.

4. The Court **FINALLY DESIGNATES** Plaintiff Tyler DeSouza as Class Representative.

5. The Court **FINALLY APPOINTS** Attorneys Jeremy M. Glapion and Bradford Rothwell Sohn as Class Counsel.

6. The Court **FINALLY APPROVES** the Agreement (Doc. 56-1) as fair, reasonable, and adequate.

7. The parties and the Settlement Administrator are **DIRECTED** to implement the Agreement (Doc. 56-1) in accordance with its terms and provisions.

8. Plaintiff's request for $1,281,400 in attorney's fees and $14,341.83 in costs is **APPROVED**.

9. This action is **DISMISSED WITH PREJUDICE**.

10. The Court **RETAINS** jurisdiction over this action, the parties, class

counsel, and the settlement class to enforce the terms of the Agreement.

11. The Clerk is **DIRECTED** to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 25, 2024.

ROY B. DALTON, JR.
United States District Judge